JOHN L. BURRIS Esq., SBN 69888
BENJAMIN NISENBAUM, Esq., SBN 222173
JAMES COOK Esq., SBN 300212
**BURRIS, NISENBAUM, CURRY & LACY, LLP**
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
John.Burris@johnburrislaw.com
James.Cook@johnburrislaw.com
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

IVAN GUTZALENKO, Deceased, through his
Co-Successors in Interest, N.G. and N.I.G.,
minors through their mother and Next Friend,
Honey Gutzalenko, individually and as Co-
successors in Interest for IVAN
GUTZALENKO, Deceased,

              Plaintiffs,

vs.

CITY OF RICHMOND, a public entity;
RICHMOND CHIEF OF POLICE BISA
FRENCH, in her individual and official
capacities; TOM TRAN, individually and in his
official capacity as a police officer for the City
of Richmond; MARK HALL, individually and
in his official capacity as a police officer for the
City of Richmond; CEDRIC TAGORDA
individually and in his official capacity as a
police officer for the City of Richmond;
AMERICAN MEDICAL RESPONSE WEST, a
corporate entity; DAMON RICHARDSON; and
DOES 1-10, Jointly and Severally,

              Defendants.

CASE NO.: 3:22-cv-02130-CRB

**SECOND AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1.        This is an action for damages brought pursuant to Title 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, under California Civil Code Section § 52.1, and under the common law of California, for the defendants' use of force against Decedent IVAN GUTZALENKO.

## JURISDICTION

2.        This action arises under Title 42 of the United States Code, § 1983. Title 28 of the United States Code, §§ 1331 and 1343 confers jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in the City of Richmond, California, which is within the judicial district of this Court. This Court also has supplemental jurisdiction over Plaintiffs' state law causes of action under 28 U.S.C. § 1367.

## PARTIES

3.        Plaintiff N.G., a minor, is the son of IVAN GUTZALENKO, Deceased, and a resident of the State of California. Plaintiff, by and through their mother and Guardian ad Litem, Honey Gutzalenko, brings these claims individually for wrongful death and violation of their personal rights, and as co-successors in interest for their father, Decedent IVAN GUTZALENKO, asserting survival claims for IVAN GUTZALENKO, Deceased.  They bring these claims under state and federal law.

4.        Plaintiff N.I.G., a minor, is the daughter of IVAN GUTZALENKO, Deceased, and a resident of the State of California. Plaintiff, by and through their mother and Guardian ad Litem, Honey Gutzalenko, brings these claims individually for wrongful death and violation of their personal rights, and as co-successors in interest for their father, Decedent IVAN GUTZALENKO, asserting survival claims for IVAN GUTZALENKO, Deceased.  They bring these claims under state and federal law.

5.        Defendant CITY OF RICHMOND ("CITY") is a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs, and controls the Richmond Police Department ("RPD") which employs defendants in this action.

6.      Defendant Richmond Chief of Police BISA FRENCH, at all material times, was employed as Chief of Police of the RPD by Defendant CITY, and she was acting within the course and scope of that employment.  As Chief of Police of the RPD, Defendant FRENCH was a policy-making official for Defendant CITY with the power to make official and final policy for the RPD.  Defendant FRENCH is being sued in her individual and official capacities.

7.      Defendant TOM TRAN, at all material times, was employed as a police officer at RPD and was acting within the course and scope of that employment.  He is being sued in his individual, and official capacities.

8.      Defendant MARK HALL, at all material times, was employed as a police officer at RPD and was acting within the course and scope of that employment.  He is being sued in his individual, and official capacities.

9.      Defendant CEDRIC TAGORDA, at all material times, was employed as a police officer at RPD and was acting within the course and scope of that employment.  He is being sued in his individual, and official capacities.

10.     Defendant AMERICAN MEDICAL RESPONSE WEST (Hereinafter "AMRW"), is a corporate entity, that employed paramedics, including Damon Richardson, who assisted City of Richmond police officers in detaining and arresting Gutzalenko. AMRW was also in charge of company policies and rules regarding their paramedics and technicians.

11.     Defendant DAMON RICHARDSON, at all material times, was employed as a paramedic for AMERICAN MEDICAL RESPONSE WEST, and was acting within the course and scope of that employment to assist the CITY OF RICHMOND police officers in detaining and arresting IVAN GUTZALENKO. He is being sued in his individual and official capacities.

12.     Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1-50, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will

amend this Complaint to state the names and capacities of DOES 1-50, inclusive, when they have been ascertained.

13.     Plaintiffs are informed and believe, and thereon allege that each of the Defendants sued herein was negligently, wrongfully, and otherwise responsible in some manner for the events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiffs and Decedent.  Further, one or more DOE defendants was at all material times responsible for the hiring, training, supervision, and discipline of other defendants, including DOES 1-10.

14.     Plaintiffs are informed and believe, and thereon allege, that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship.  Plaintiffs are further informed and believe, and thereon allege, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged.

15.     At all material times, each Defendant was jointly engaged in tortious activity, and was fundamentally involved in, and an integral participant to, the events and violations of rights described herein, resulting in the deprivation of Plaintiffs' and Decedent's constitutional rights and other harm.

16.     The acts and omissions of all Defendants as set forth herein were at all material times pursuant to the actual customs, policies, practices, and procedures of Defendant CITY.

17.     At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of California.

18.     Plaintiffs timely and properly filed a tort claim pursuant to Cal. Gov. Code § 910 et seq., and this action is timely filed within all applicable statutes of limitation.

19.     This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2).

**GENERAL ALLEGATIONS**

20.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

21.     On March 10, 2021, the Richmond Police Department received a call for service about a man causing a disturbance in a local furniture store on the 12600 block of San Pablo Avenue.  The man was described as a white man in a black hoodie and jeans.  Defendant RPD Officer Tom Tran arrived at the scene first and, from his patrol car, saw a man matching that description walking down San Pablo Avenue.  That man was IVAN GUTZALENKO. Defendant TRAN requested via radio that an ambulance stage nearby, then approached IVAN GUTZALENKO on foot.  Immediately upon making verbal contact with IVAN GUTZALENKO, Defendant TRAN realized that IVAN GUTZALENKO was in need of medical aid and was possibly intoxicated and/or experiencing a medical or mental health crisis.  IVAN GUTZALENKO had a dark purple mark on his forehead, was bleeding profusely from one of his hands, and had difficulty focusing on and communicating with Defendant TRAN.  As IVAN GUTZALENKO began to walk southbound down San Pablo Avenue, Defendant TRAN followed behind.  IVAN GUTZALENKO was visibly in physical distress and appeared to be having difficulty breathing.  Defendant TRAN questioned IVAN GUTZLENKO about what was wrong, and IVAN GUTZALENKO responded "I can't breathe."  Before making it to the end of the block, MR. GUTZALENKO collapsed and began writhing around on the ground, still breathing in a distressed manner.  As MR. GUTZALENKO shifted around on the ground, Defendant TRAN used his hand to attempt to keep IVAN GUTZALENKO positioned on his side, and verbally encouraged IVAN GUTZALENKO to remain on his side to better effectuate his breathing.

22.     Shortly after IVAN GUTZALENKO fell to the ground, Defendant RPD Officer MARK HALL arrived on the scene.  Defendant HALL joined Defendant TRAN in questioning MR. GUTZALENKO about his identity, what was wrong with him, if he had taken any drugs or

other substances that they should be aware of in order to help him, and other questions.  During this time, IVAN GUTZALENKO continued his labored breathing and Defendant TRAN continued trying to keep IVAN GUTZALENKO on his side in a "recovery" position.  Minutes later, an AMRW ambulance arrived.  As the AMRW responders began to bandage IVAN GUZTALENKO's hands, he became agitated and attempted to keep his hands away from them by moving his hands and body.  Defendants TRAN and HALL then attempted to handcuff IVAN GUTZALENKO in order to gain his compliance with AMRW responders.  As Defendant HALL held IVAN GUTZALENKO's left arm, Defendant TRAN used his body weight to pin IVAN GUTZALENKO to the ground face down in a prone position, by placing his knee into IVAN GUTZALENKO's back and leaning forward onto that knee.  Defendant TRAN placed handcuffs around IVAN GUTZALENKO's right wrist, then handed them off to Defendant HALL, who attempted to place the other end of the handcuffs around IVAN GUTZALENKO's left wrist.  As Defendant HALL tried to complete the handcuffing, Defendant TRAN continued applying his body weight onto IVAN GUTZALENKO's back to keep him pinned in a prone position, and forcibly kept IVAN GUTZALENKO's right arm positioned behind his back.  Around this time, Defendant RPD Officer CEDRIC TAGORDA joined in and held IVAN GUTZALENKO's legs down while Defendants TRAN and HALL tried to handcuff him.  As IVAN GUTZALENKO struggled to breathe in that prone, asphyxiating position, and under Defendants' body weight, he told Defendants "I can't breathe!"  Defendant TRAN continued using his knee to keep IVAN GUTZALENKO pinned down in a prone position, despite understanding that IVAN GUTZALENKO appeared to be experiencing a medical emergency and was struggling to breathe.  Defendant HALL threatened to use a Taser and pepper spray on IVAN GUTZALENKO, despite understanding the same.  Defendants finally handcuffed IVAN GUTZALENKO when he suddenly ceased struggling and went limp, after roughly 2 to 3 minutes.  During that time, IVAN GUTZALENKO was in a prone or modified prone position on the ground and compressed by Defendants' body weight and force.

23.     After handcuffing IVAN GUTZALENKO, the Officers put him into the recovery position. GUTZALENKO was still breathing. He was not resisting, thrashing, or moving in any way. He did not pose any threats to the officers, the paramedics, himself, or the public. While GUTZALENKO was handcuffed, and remaining still on the ground, AMRW paramedic RICHARDSON made the decision to use "Versed," a chemical restraint, on GUTZALENKO. RICHARDSON then injected Gutzalenko with the drug Versed, which is also known as "Midazolam." Contrary to proper medical use, RICHARDSON used Versed on GUTZALENKO while Gutzalenko showed no signs of any behavioral issue or agitation. RICHARDSON also failed to "aspirate" the syringe prior to administering the medication, meaning he did not check to see if the needle had penetrated a vein, which is a critical step since the Midazolam doses permitted to be administered by AMRW depend on whether the dosage is administered intramuscularly (which is taken up of the body much more slowly and in lesser concentration) as opposed to intravenous administration (which is taken up by the body much faster and in much greater concentration, and is much more dangerous to the patient than intramuscular administration). Aspiration is the simple action of pulling the plunger back after the needle is placed in the skin, to determine whether blood flows back into the syringe. If blood flows back in, then the needle is in a blood vessel.  For intramuscular administration, the needle must be withdrawn, re-inserted, and re-aspirated.  All of RICHARDSON's action in administering the Versed are clearly visible on the video, and it is clear from the video that he did not aspirate the syringe. RICHARDSON then administered a dose of versed that was meant for the muscle directly into GUTZALENKO's vein instead. GUTZALENKO stopped breathing with 90 seconds of the dose of Versed, consistent with intravenous administration of an overdose of Versed. The AMRW technicians then took IVAN GUTZALENKO to Summit Hospital in Oakland, where he was pronounced dead.

24.     After an autopsy conducted on March 11, 2021, the Contra Costa County Coroner's Division determined that IVAN GUTZLANEKO's cause of death was prone restraint asphyxia and cardiac arrest while under the influence of methamphetamine.

25.    Despite being disoriented and in a medical emergency, IVAN GUTZALENKO remained non-threatening throughout his encounter with Defendants TRAN, HALL, and TAGORDA, and reasonable officers would have understood that IVAN GUTZALENKO posed no threat to them or others. Similarly, RICHARDSON, as an AMRW paramedic, should have known that it was excessive and unreasonable force to use the chemical restrain Versed to restrain GUTZALENKO while Mr. GUTZALENO was cuffed, in the recovery position, and not resisting in any way. At the time of this death, IVAN GUTZALENKO had a recreational amount of methamphetamine in his system – in an amount too low to cause his death.  Defendants had no knowledge of IVAN GUTZALENKO's use of methamphetamine at the time of this incident.

26.    During substantial periods of time, Defendants TRAN, HALL, and TAGORDA each kept their own body weight on IVAN GUTZALENKO's back, arms, and legs to keep him in a prone position on the ground without objectively reasonable justification.  Reasonable officers would have clearly known that such conduct constituted excessive force under these circumstances, and posed a substantial risk of death or serious injury to IVAN GUTZALENKO as the Ninth Circuit explained in *Drummond v. City of Anaheim*, 343 F.3d 1062 (9th Cir. 2003), *cert. denied*, 542 U.S. 918 (2004).  During those times, reasonable officers, post-*Drummond*, would have understood that they were using deadly force.  Defendants gave no warning that they might use deadly force.  Defendants TRAN, HALL, TAGORDA, and RICHARDSON acting as integral participants, and under the totality of the circumstances, used, caused the use of, and tolerated the use of a high level of excessive and injurious force against IVAN GUTZALENKO that in fact caused his death.  The totality of the force used and tolerated by Defendants TRAN, HALL, TAGORDA, and RICHARDSON was unnecessary, excessive, and deadly.  Further, none of the defendant officers intervened to stop other officers, or RICHARDSON, from using the excessive and illegal force that was evident in front of them.

27.    Defendants TRAN, HALL, TAGORDA, and RICHARDSON chose to restrain IVAN GUTZALENKO in the manner they did ostensibly in order to facilitate medical care.  Yet, Defendants used a level of force so that their restraint of IVAN GUTZALENKO constituted

an arrest.  Defendants lacked probable cause to believe IVAN GUTZALENKO had committed any arrestable crime, and they lacked reasonable suspicion to lawfully detain IVAN GUTZALENKO to investigate any crime.

28.     At all material times, and alternatively, the actions and omissions of each defendant were intentional, wanton and/or willful, conscience shocking, reckless, malicious, purposely harmful and/or deliberately indifferent to IVAN GUTZALENKO's and Plaintiffs' rights, done with actual malice, grossly negligent, negligent, and objectively unreasonable.

29.     Each Defendant's acts and/or omissions as set forth above proximately caused Plaintiffs to sustain the following injuries and damages, past and future, among others:

  a.      Wrongful death of IVAN GUTZALENKO;

  b.      Hospital and medical expenses (Survival claims);

  c.      Coroner's fees, funeral, and burial expenses (Survival claims);

  d.      Loss of familial relationships, including loss of love, companionship, comfort, affection, consortium, society, services, solace, and moral support (based on wrongful death and loss of familial association);

  e.      Violation of constitutional rights;

  f.      Pain and Suffering, including emotional distress (based on individual §1983 claims for loss of familial association);

  g.      IVAN GUTZALENKO's loss of life, pursuant to federal civil rights law (based on Survival claims and Decedent's federal §1983 claims);

  h.      IVAN GUTZALENKO's conscious pain and suffering, pursuant to federal civil rights law (based on Survival claims and Decedent's federal §1983 claims);

  i.      All damages, penalties, and attorneys' fees and costs recoverable under 42 USC §§ 1983, 1988, California Civil Code §§ 52, and 52.1, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

**COUNT ONE**
**42 USC § 1983**
**PLAINTIFFS AGAINST DEFENDANTS TRAN, HALL, TAGORDA, RICHARDSON, and DOES 1-10**

30.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

31.     By the actions and omissions described above, Defendants TRAN, HALL, TAGORDA, RICHARDSON, and DOES 1-10 violated 42 USC § 1983, depriving Plaintiffs N.G., N.I.G., and/or Decedent IVAN GUTZALENKO of the following clearly established and well-settled constitutional rights protected by the First, Fourth, and Fourteenth Amendments to U.S. Constitution:

      a.   IVAN GUTZALENKO's right to be free from unreasonable searches and seizures as secured by the Fourth Amendment (survival and wrongful death claims);

      b.   IVAN GUTZALENKO's right to be free from excessive and unreasonable force in the course of a seizure, including the use of unlawful deadly force, as secured by the Fourth Amendment (survival and wrongful death claims);

      c.   The right to be free from wrongful government interference with familial relationships and Plaintiffs' and Decedent's right to companionship, society, and support of each other, through the use of deadly force that shocks the conscience and that is used without a legitimate law enforcement purpose, and by otherwise interfering with their familial associational rights as secured by the First and Fourteenth Amendments (Plaintiffs' individual Familial Association claims).

32.     Defendants TRAN, HALL, TAGORDA, RICHARDSON, and DOES 1-10 subjected Plaintiffs and Decedent to their wrongful conduct, depriving Plaintiffs and Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs (individually and on behalf of IVAN GUTZALENKO, Deceased) and others would be violated by their acts and/or omissions.

33.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages as set forth at paragraph 26, above.

34.     The conduct of Defendants TRAN, HALL, TAGORDA, RICHARDSON, and DOES 1-10 entitles Plaintiffs to punitive damages and penalties allowable under 42 USC § 1983 and California law.  Plaintiffs do not seek punitive damages against Defendants FRENCH in her official capacity or against Defendant CITY.

35.     Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 USC § 1988 and applicable federal and California codes and laws.

**COUNT TWO**
**42 USC § 1983 (*Monell* - Municipal and Supervisory Liability)**
**PLAINTIFFS AGAINST DEFENDANTS CITY OF RICHMOND; RICHMOND CHIEF OF POLICE BISA FRENCH, AMRW and DOES 1-10**

36.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

37.     On April 27, 2008, Richmond police officers killed a mentally ill man named Alan Arce, who was having a mental health/medical crisis, again by restraint asphyxia effectuated by officers holding Mr. Arce down in a prone position with force and weight on his back until he became unresponsive.  Mr. Arce's family brought a civil rights case against Richmond police officers and the City, and on information and belief, that case was settled for approximately $250,000.  (*Arce v. City of Richmond, et al.*, CAND No. C-09-01168 JCS).

38.     On April 22, 2008, four Richmond police officers including now Assistant Chief of Police Louis Tirona brutally pepper sprayed, beat, kicked, and asphyxiated 26-year-old Uriah Dach, who was mentally ill and in crisis.  In that incident, then-Sergeant Tirona also tased Mr. Dach for 95 out of 99 seconds, including for 72 seconds straight.  Then, all four officers held Mr. Dach down in a prone position with weight on his back until he became unresponsive and died. Mr. Dach's parents were represented in a civil rights case against those officers and the City of Richmond by Plaintiffs' counsel, HADDAD & SHERWIN LLP.  That case settled for $1.5 million in 2011.  (*Dach v. City of Richmond, et al.*, CAND No. C-09-00171 JSC).

39.     In the *Dach* case, Sergeant James Jenkins, the Richmond Police Department's Fed. R. Civ. Proc 30(b)(6) "Person Most Knowledgeable" concerning the RPD's training and procedures relating to use of force and positional asphyxia, testified on August 24, 2011 that the Richmond Police Department, for at least the previous ten years, had been aware of the hazards of restraint-associated asphyxia, or positional asphyxia, which Mr. Jenkins defined as "because of their position, it would inhibit their ability to breathe properly which could result in death."

(Jenkins dep. 69, 70-71).  Despite that, then Richmond Police Chief Christopher Magnus testified on October 3, 2011 that although he was ultimately responsible for the RPD's policies, procedures, and training, he was not familiar with the RPD's training and procedures concerning restraint asphyxia and he did not know whether the RPD had any policies concerning the issue of positional or restraint-associated asphyxia.  (Magnus dep. 22, 24).  In fact, the RPD had no written policy concerning positional or restraint-associated asphyxia.

40.     On information and belief, despite these RPD-caused deaths by restraint asphyxia, and despite *Drummond v. City of Anaheim, supra.,* at the time of IVAN GUTZALENKO's death on March 10, 2021, Defendant RPD still had no written policy or procedure concerning the issue of positional or restraint-associated asphyxia.

41.     In fact, in the year before IVAN GUTZALENKO's death, there is evidence that the RPD was attempting to cover up investigation into its officers' involvement in restraint-associated asphyxia deaths.  On March 19, 2020, an emotionally disturbed man named Jose Luis Lopez Rodriguez died during prolonged prone, weighted restraint by Richmond police officers. Despite this being a clearly law-enforcement related death, the City of Richmond and Contra Costa County Sheriff's Office prevented that matter from going to a Coroner's Inquest as required by law.  Jimmy Lee, a spokesman for the sheriff's office, told the San Jose Mercury News that the responsibility for that decision lies with the Richmond police: "While this case was law enforcement related, RPD declined to invoke protocol, which meant there would be no inquest into the death."  Without the required Coroner's Inquest, the Sheriff-Coroner determined that that in-custody death was the result of "excited delirium," a disputed medical concept that at least three physician groups, including the American Medical Association and Physicians for Human Rights have rejected as an improper means of writing off deaths caused by police violence.  (Nate Gartrell, *A Richmond man died after violent struggle with officers.  Police ruled it an "excited delirium" accident without following protocol*, San Jose Mercury News, March 7, 2022, at https://www.mercurynews.com/2022/03/06/a-richmond-man-died-after-violent-struggle-with-officers-police-ruled-it-an-excited-delirium-accident-without-following-protocol/).

42.     The unconstitutional actions and/or omissions of Defendants TRAN, HALL, TAGORDA, and DOES 1-10, and other officers employed by or acting on behalf of Defendant CITY, on information and belief, were pursuant to the following customs, practices, and/or procedures of Defendant CITY, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officials for Defendant CITY, including Defendants FRENCH and DOES 1-10:

   a.     To use or tolerate the use of unlawful deadly force including permitting and training officers (i) to use deadly force when faced with less than an immediate threat of death or serious bodily injury, (ii) to use deadly force prematurely, or as a 'first resort,' or when facing a mere potential threat; and (iii) to use deadly force without giving a proper warning when one would be feasible;

   b.     To use or tolerate the use of improper prone restraint of non-threatening individuals, increasing the risk of injury and death by restraint-associated asphyxia;

   c.     To fail to follow generally accepted law enforcement procedures and standards concerning handling mentally ill and/or emotionally disturbed persons;

   d.     To tolerate and/or encourage officers to unlawfully seize, detain, and arrest individuals for non-criminal behavior, including mental illness or emotional disturbance;

   e.     To tolerate and/or encourage officers to fail to intervene when they should be aware that another officer is violating a person's rights;

   f.     To cover-up violations of constitutional rights by any or all of the following:

        i.     by failing to properly investigate and/or evaluate complaints or incidents of excessive and unreasonable force, unlawful seizures, and/or handling of mentally ill or emotionally disturbed persons;

        ii.    by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity; and

        iii.   by allowing, tolerating, and/or encouraging police officers to: fail to file complete and accurate police reports; file false police reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or

obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct, by withholding and/or concealing material information;

g.      To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and RPD personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department;

h.      To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in this Complaint and the customs and practices described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of Plaintiffs and the public, and in the face of an obvious need for such policies, procedures, and training programs.

43.      Defendant CITY'S training programs for its officers, including Defendants DOES 1-10 were clearly inadequate to address the obvious need for training concerning the customs and practices in the preceding paragraph that were likely to result in injuries, deaths, and serious violations of rights.

44.      Defendant CITY, through its employees and agents, and through its policymaking supervisors including Defendants FRENCH and DOES 1-10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants DOES 1-10, and other RPD personnel, with deliberate indifference to Plaintiffs' constitutional rights, which were thereby violated as described above.

45.      During all material times, AMERICAN MEDICAL RESPONSE WEST employed Defendant RICHARDSON as a paramedic. AMRW controlled company policy, training, and disciplining of AMRW paramedics and technicians. On the date of the incident, AMRW dispatched Defendant RICHARDSON to assist the Richmond Police Department in detaining and arresting IVAN GUTZALENKO. As such, AMRW and RICHARDSON were acting in a law enforcement manner by administering Versed to IVAN GUTZALENKO as a form of chemical restraint.

46.     AMRW failed to properly train RICHARDSON, and failed to follow an approved procedure for the use of Versed, as set forth below:

a.  AMRW failed to create a physician approved policy for the use of Versed. During the course of the incident, Contra Costa County maintained a mere outline of a flowchart for the use of Versed. However, this outline was not signed and approved by a physician. Further, while the County of Contra Costa maintained this flowchart, AMRW failed to create policy and training around Contra Costa's recommendations for the use of versed.

b.  AMRW did not properly train RICHARDSON in the proper use of Versed. Per Contra Costa County's unapproved medical flowchart outline, Versed should not be administered in situations where a person is calm and not resisting. Further, if a person is resisting, the paramedic should re-evaluate the person immediately before administering Versed. However, due to failed training, or improper practice, RICHARDSON administered Versed to GUTZALENKO after Gutzalenko had already been handcuffed, and while GUTZALENKO was resting in a "recovery" position on his side. Additionally, RICHARDSON, due to a failure to be properly trained, unintentionally administered a high dose of Versed directly into GUTZALENKO'S vein, instead of into GUTZALENKO'S muscle, as he should have done. RICHARDSON's failure to properly aspirate the syringe in part caused him to improperly administer the dose of Versed to GUTZALENKO's vein.

47.     Due to AMRW's failure to properly train their paramedics in the use of Versed, AMRW paramedic RICHARDSON used excessively unreasonable force in the form of a chemical restraint, that was a major contributing factor in GUTZALENKO's death. Versed should not have been administered to GUTZALENKO while he was in handcuffs, and not resisting in any manner. Further, the dose of Versed for an intravenous application should be no

more than 1-3mg per dose, with a maximum administration of 5 mg. However, RICHARDSON applied the maximum administration of Versed all in one dose to GUTZALENKO's vein. This was excessive, and unreasonable, in violation of GUTZALENKO's fourth and fourteenth amendment rights, and was a direct result of the failed training and policies of AMRW.

48.     The unconstitutional actions and/or omissions of Defendants DOES 1-10, as described above, were approved, tolerated, and/or ratified by policymaking officers for Defendant CITY and the RPD, including Defendants FRENCH and DOES 1-10.  Plaintiffs are informed and believe, and thereupon allege, the details of this incident have been revealed to policymakers within Defendant CITY, including through videos, Defendants' statement(s), physical evidence, the Coroner's Inquest, and other information and investigation, and that such policymakers have direct knowledge of the fact that the seizure, uses of force, and killing of IVAN GUTZALENKO were not justified, but represented an unconstitutional use of unreasonable, excessive and deadly force.  Notwithstanding this knowledge, on information and belief, policymakers of Defendant CITY have approved of the actions and/or omissions of Defendants DOES 1-10 that resulted in the death of IVAN GUTZALENKO, and have made a deliberate choice to endorse the actions of those Defendants, and the bases for those actions, that resulted in the death of IVAN GUTZALENKO.  By so doing, policymakers of Defendant CITY have shown affirmative agreement with the individual defendant officer's actions, and have ratified the unconstitutional acts of Defendants DOES 1-10.

49.     Furthermore, on information and belief, after its own administrative investigation the RPD determined that the unlawful conduct of Defendants TRAN, HALL, TAGORDA, RICHARDSON, and DOES 1-10, was consistent with the RPD's actual policies and procedures. On information and belief, that finding was approved and ratified by policymaking supervisors including Defendants FRENCH and DOES 1-10.

50.     Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants FRENCH, DOES 1-10 and other policy-making officers for Defendant CITY including Assistant Chief of Police Louis Tirona were and are aware of a custom and pattern of

misconduct and injury caused by Defendant CITY law enforcement officers similar to the

conduct of Defendants DOES 1-10 described herein, but failed to discipline culpable law

enforcement officers and employees and failed to institute and enforce lawful and proper

training, procedures and policy within the CITY.

51.     Defendant CITY's failure to properly and adequately hire, train, instruct, monitor,

supervise, evaluate, investigate, and discipline, as well as their unconstitutional customs,

practices, orders, approvals, ratification and toleration of wrongful conduct of Defendants DOES

1-10, was a moving force and/or a proximate cause of the deprivations of Plaintiffs' and

Decedent's clearly-established and well-settled constitutional rights in violation of 42 USC §

1983, as more fully set forth above.

52.     As a direct and proximate result of the unconstitutional customs, practices,

deficient training programs, actions, omissions, and deliberately indifferent supervision of

Defendants CITY and FRENCH, as described above, Plaintiffs sustained serious and permanent

injuries and are entitled to damages, costs and attorneys' fees as set forth in paragraphs 29-32

above.

### COUNT THREE
### VIOLATION OF CIVIL CODE § 52.1
### PLAINTIFFS AGAINST DEFENDANTS TRAN, HALL, TAGORDA, RICHARDSON, DOES 1-10, AMRW, AND CITY OF RICHMOND

53.     Plaintiffs reallege each and every paragraph in this Complaint as if fully set forth

here.

54.     By their acts, omissions, customs, and policies, Defendants TRAN, HALL,

TAGORDA, RICHARDSON and DOES 1-10, acting as integral participants as described above,

interfered with, attempted to interfere with, and violated Plaintiffs' and Decedent's rights under

California Civil Code § 52.1, and the following clearly-established rights under the United States

Constitution and the California Constitution (where Decedent's rights were violated, this count is

brought as a survival claim; where Plaintiffs' rights were violated, this count is brought by

Plaintiffs individually):

a. IVAN GUTZALENKO's right to be free from unreasonable searches and seizures as secured by the Fourth Amendment to the United States Constitution and California Constitution, Article 1, Section 13;

b. IVAN GUTZALENKO's right to be free from excessive and unreasonable force in the course of a seizure, including the use of unlawful deadly force, as secured by the Fourth Amendment to the United States Constitution and California Constitution, Article 1, Section 13;

c. IVAN GUTZALENKO's right to be free from the use of force, including deadly force, that shocks the conscience or that is used without a legitimate law enforcement purpose as secured by the Fourteenth Amendment;

d. IVAN GUTZALENKO's and Plaintiffs' right to be free from wrongful government interference with familial relationships, and Plaintiffs' and Decedent's right to companionship and society with each other, as secured by the First and Fourteenth Amendments;

e. IVAN GUTZALENKO's right to protection from bodily restraint, harm, or personal insult, as secured by Cal. Civil Code § 43.

55.     Unlawful deadly force which violates the Fourth Amendment with reckless disregard for rights violates the Bane Act.[1]  Defendants' reckless use of unlawful deadly force against IVAN GUTZALENKO in and of itself constitutes threat, intimidation, or coercion. Additionally, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Plaintiffs' and IVAN GUTZALENKO's rights, Defendants violated Plaintiffs' and IVAN GUTZALENKO's rights by the following conduct constituting threat, intimidation, or coercion:

a. Threatening IVAN GUTZALENKO in the absence of any threat presented by IVAN GUTZALENKO, or any justification whatsoever;

b. Using deliberately reckless and provocative tactics to apprehend IVAN GUTZALENKO in violation of generally accepted law enforcement training and standards, and in violation of IVAN GUTZALENKO's rights;

---

[1] *See Cornell v. City and County of San Francisco*, 17 Cal.App.5th 766 (2017) (review denied); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018); *Rodriguez v. County of L.A.*, 891 F.3d 776, 802 (9th Cir. 2018); *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105–06 (9th Cir. 2014) (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013)).

c. Causing IVAN GUTZALENKO to be asphyxiated, without warning and without justification;

d. Causing the use of conscience-shocking force against IVAN GUTZALENKO, without a legitimate law enforcement purpose, thereby violating his and Plaintiffs' rights to familial association;

e. Threatening violence against IVAN GUTZALENKO, with the apparent ability to carry out such threats, in violation of Civ. Code § 52.1(j);

f. Causing and permitting the infliction of repeated and sustained applications of unnecessary force on IVAN GUTZALENKO, by multiple officers, using force that was severe and/or deadly, over several minutes;

g. Violating IVAN GUTZALENKO's rights to be free from unlawful seizures by both wrongful arrest and excessive force.

h. Using chemical restraints against IVAN GUTZALENKO while GUTZALENKO showed no signs of resistance, and without proper authority to do so.

56.     The threat, intimidation, and coercion described herein were not necessary or inherent to any legitimate and lawful law enforcement activity.

57.     Further, the violations of duties and rights by Defendants TRAN, HALL, TAGORDA, RICHARDSON, and DOES 1-10, and coercive conduct described herein, were volitional acts; none was accidental or merely negligent.

58.     Defendant CITY is vicariously liable for the conduct of its employees and agents described in this Count, pursuant to California Government Code § 815.2.

59.     As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiffs' and Decedent's rights under the United States and California Constitutions, Plaintiffs (individually and for Decedent) sustained injuries and damages, and against each and every Defendant is entitled to relief as set forth above at paragraphs 29-32, including punitive damages against Defendants TRAN, HALL, TAGORDA, RICHARDSON, and DOES 1-10, and including all damages and penalties allowed by California Civil Code §§ 52, 52.1 and California law, not limited to costs, attorneys' fees, three times actual damages, and civil penalties.  Plaintiffs do not seek punitive damages against Defendant CITY.

**COUNT FOUR**
**NEGLIGENCE; PERSONAL INJURIES**
**PLAINTIFFS AGAINST ALL DEFENDANTS**

60.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

61.     At all times, Defendants TRAN, HALL, TAGORDA, and DOES 1-10 owed Plaintiffs and Decedent the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

62.     At all times, Defendants TRAN, HALL, TAGORDA, RICHARDSON, and DOES 1-10 owed Plaintiffs and Decedent the duty to act with reasonable care.

63.     These general duties of reasonable and due care owed to Plaintiffs and Decedent by Defendants TRAN, HALL, TAGORDA, RICHARDSON, and DOES 1-10 include but are not limited to the following specific obligations:

    a.     to refrain from unlawfully seizing, detaining, and/or arresting IVAN GUTZALENKO;

    b.     to refrain from using excessive and/or unreasonable force against IVAN GUTZALENKO;

    c.     to refrain from unreasonably creating and escalating the situation where force, including but not limited to deadly force, was used;

    d.     to refrain from using unreasonable tactics that escalated the situation, created perceived danger, and led to the use of deadly force;

    e.     to refrain from abusing their authority granted them by law;

    f.     to refrain from violating Plaintiffs' rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

64.     Additionally, these general duties of reasonable care and due care owed to Plaintiffs by Defendants FRENCH and DOES 1-10, include but are not limited to the following specific obligations:

    a.     to properly and adequately hire, investigate, train, supervise, monitor, evaluate, and discipline RPD officers under their supervision (including

DOES 1-10) to ensure that those employees/agents/officers act at all times in the public interest and in conformance with law;

b.      to make, enforce, and at all times act in conformance with policies, training, and customs that are lawful, consistent with generally accepted law enforcement standards, and protective of individual rights, including Plaintiffs' and Decedent's rights;

c.      After being informed of officers' conduct causing Decedent's death in this situation, to take proper action to discipline and/or retrain involved officers, and to not ratify such officers' misconduct and violations of generally accepted standards and law;

d.      to refrain from making, enforcing, and/or tolerating the wrongful practices, customs, and deficient training programs set forth in COUNT TWO, above.

65.     Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs.

66.     Defendant CITY is vicariously liable for the conduct of its employees and agents described in this Count, pursuant to California Government Code § 815.2.

67.     As a direct and proximate result of Defendants' negligence, Plaintiffs and Decedent sustained injuries and damages, and against each and every Defendant are entitled to relief as set forth above at paragraphs 29-31, including punitive damages against Defendants TRAN, HALL, TAGORDA, RICHARDSON, and DOES 1-10.  Plaintiffs do not seek punitive damages against Defendant CITY or Defendant FRENCH in her official capacity.

## COUNT FIVE
## ASSAULT AND BATTERY
## PLAINTIFFS AGAINST DEFENDANTS TRAN, HALL, TAGORDA, RICHARDSON, DOES 1-10 AND CITY OF RICHMOND

68.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

69.     The actions and omissions of Defendants TRAN, HALL, TAGORDA, RICHARDSON, and DOES 1-10 as set forth above constitute assault and battery.

70.     Defendant CITY is vicariously liable for the conduct of its employees and agents described in this Count, pursuant to California Government Code § 815.2.

71.     As a direct and proximate result of the assault and battery of by Defendants TRAN, HALL, TAGORDA, RICHARDSON, and DOES 1-10, Plaintiffs sustained injuries and damages, and are entitled to relief as set forth above at paragraphs 29-31, including punitive damages against Defendants TRAN, HALL, TAGORDA, RICHARDSON, and DOES 1-10. Plaintiffs do not seek punitive damages against Defendant CITY.

## COUNT SIX
## FALSE ARREST AND IMPRISONMENT
## PLAINTIFF AGAINST DEFENDANTS TRAN, HALL, TAGORDA, RICHARDSON, DOES 1-10, AMRW, AND CITY OF RICHMOND

72.     Plaintiffs reallege each and every paragraph in this complaint as if fully set forth here.

73.     At no time during the events described above, and at all other pertinent times, did Defendants TRAN, HALL, TAGORDA, RICHARDSON, or DOES 1-10 have a warrant for the arrest of IVAN GUTZALENKO, nor did Defendants have any facts or information that constituted probable cause that IVAN GUTZALENKO had committed or was about to commit a crime.  Defendants also lacked reasonable suspicion to detain IVAN GUTZALENKO once confirming that he had not stolen anything from nearby stores, and Defendants were not engaged in any lawful investigative detention of IVAN GUTZALENKO.

74.     Defendants, and each of them, intentionally and unlawfully exercised force to restrain, detain, and confine IVAN GUTZALENKO, putting restraint on IVAN GUTZALENKO's freedom of movement, and compelled IVAN GUTZALENKO to remain and/or move against his will.  Defendants authorized, directed, and assisted in procuring, without process, IVAN GUTZALENKO's unlawful arrest and imprisonment.

75.     Defendant CITY is vicariously liable for the conduct of its employees and agents described in this Count, pursuant to California Government Code § 815.2.

76.     As a direct and proximate result of IVAN GUTZALENKO'S unlawful arrest and imprisonment by Defendants TRAN, HALL, TAGORDA, RICHARDSON, and DOES 1-10, Plaintiffs sustained injuries and damages, and are entitled to relief as set forth above at paragraphs 29-31, including punitive damages against Defendants TRAN, HALL, TAGORDA, RICHARDSON, and DOES 1–10.  Plaintiffs do not seek punitive damages against Defendant CITY.

WHEREFORE, Plaintiffs respectfully request the following relief against each and every Defendant herein, jointly, and severally:

a.     Declaratory relief, finding that Defendants violated Plaintiffs' and Decedent's rights, to serve the purposes of 42 U.S.C. § 1983, Cal. Code of Civ. Proc. § 1021.5, and Cal. Civil Code §§ 52 and 52.1, including for vindication of Constitutional and other rights as "Private Attorney General," elucidation of those rights for the courts, the public, and government officials, and to deter similar wronging by the Defendants and other officials;

b.     compensatory and exemplary damages in an amount according to proof and which is fair, just, and reasonable;

c.     punitive damages under 42 USC § 1983 and California law in an amount according to proof and which is fair, just, and reasonable (punitive damages are not sought against Defendants CITY or FRENCH in his official capacity);

d.     all other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 USC §§ 1983, 1988, Cal. Code of Civ. Proc. §§ 377.20 et seq., 377.60 et seq., and 1021.5, Cal. Civil Code §§ 52 et seq., 52.1, and as otherwise may be allowed by California and/or federal law;

e.     Injunctive relief, including but not limited to the following:

i.     an order prohibiting Defendants from engaging in the unconstitutional or unlawful customs, policies, practices, procedures, training, and supervision as may be determined and/or adjudged by this case;

ii.     an order requiring Defendants to institute and enforce appropriate and lawful policies and procedures for the use of restraints and deadly force;

iii.    an order prohibiting Defendants and their police officers from engaging in a "code of silence" as may be supported by the evidence in this case;

iv.    an order requiring Defendants to train all RPD officers concerning generally accepted and proper tactics and procedures and this Court's orders concerning the issues raised in Count 2 and injunctive relief requests i-iii, above;

f.    such other and further relief as this Court may deem appropriate.

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial in this action.

## **PRAYER**

WHEREFORE, Plaintiffs pray for relief, as follows:

1.    For general damages according to proof;

2.    For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses, and other special damages in a sum to be determined according to proof;

3.    For punitive damages and exemplary damages in amounts to be determined according to proof as to defendants CITY AND COUNTY OF SAN FRANCISCO, and DOES 1-50 and/or each of them;

4.    Any and all permissible statutory damages;

5.    For reasonable attorney's fees pursuant to 42 U.S.C. §1988;

6.    For cost of suit herein incurred; and

7.    For such other and further relief as the Court deems just and proper.

Dated: August 9, 2023        **BURRIS, NISENBAUM, CURRY & LACY, LLP**

/s/ *John L. Burris*

John L. Burris
Benjamin Nisenbaum

James Cook
Attorneys for Plaintiff