JOHN L. BURRIS, Esq., SBN 69888
BENJAMIN NISENBAUM, Esq., SBN 222173
JAMES COOK, Esq., SBN 300212
**LAW OFFICES OF BURRIS NISENBAUM CURRY & LACY, LLP**
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
John.Burris@johnburrislaw.com
Ben.Nisenbaum@johnburrislaw.com
James.Cook@johnburrislaw.com

Attorneys for Plaintiffs IVAN GUTZALENKO,
Deceased, Successors in Interest N.G. AND N.I.,
minors through their mother and Next Friend,
Honey Gutzalenko, individually and as Co-successors
in Interest for IVAN GUTZALENKO, Deceased

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN GUTZALENKO, Deceased, through his Co- Successors in Interest, N.G. and N.I.G., minors through their mother and Next Friend, Honey Gutzalenko, individually and as Co-successors in Interest for IVAN GUTZALENKO, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF RICHMOND, a public entity; RICHMOND CHIEF OF POLICE BISA FRENCH, in her individual and official capacities; RICHMOND POLICE OFFICERS TOM TRAN, MARK HALL, and CEDRIC TAGORDA; and DOES 1-10, Jointly and Severally,<br><br>Defendants. | Case No.:  3:22-CV-02130-CRB<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS BY DEFENDANTS AMERICAN MEDICAL RESPONSE WEST AND DAMON RICHARDSON; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>**Date: December 1, 2023**<br>**Time: 10:00 a.m.**<br>**Dept. Courtroom 6, 17th Floor,**<br>**450 Golden Gate Avenue, SF, CA**<br>**(Judge  Hon. Charles R. Breyer)**<br>**Trial: Not Yet Assigned**<br><br>Complaint filed: August 9, 2023 |

1
2

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS……………………………………………………………ii

TABLE OF AUTHORITIES…………………………………………………….....iii

MEMORANDUM OF POINTS AND AUTHORITIES……………...…………………...1

I. INTRODUCTION…………………………………………………………….....1

A. Plaintiffs' Section 1983 Claims Are Not Barred by California's Statute of Limitations for Personal Injury Torts……………………………………………………………3

B. Plaintiffs' State Counts Are Not Time-Barred Under C.C.P. section 340.5………………6

C. The Operative Complaint Alleges Facts Sufficient to Support All of Plaintiffs' 42 U.S.C. section 1983 Claims……………………………………………………………7

D.  Defendants AMR West and Richardson are Not Entitled to Immunity……..…………….. 10

E. Plaintiffs Alleged Facts Supporting Count Three Demonstrating Defendants' Violation of the Bane Act…………………………………………………………………...11

F. Plaintiffs' Alleged Facts Supporting Count Five for Assault and Battery Against These Defendants………………………………………………………………………13

G. Plaintiffs' Alleged Facts Supporting Count Six for False Arrest and Imprisonment Against These Defendants……………………………………………………………..13

H. Plaintiffs Sufficiently Pled Facts to Support Awards of Both Punitive Damages and Attorney's Fees…………………………………………………………………...14

II. CONCLUSION……………………………………………………………14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# **TABLE OF AUTHORITIES**

**Cases:**

*Adickes v. S. H. Kress & Co.* (1970) 398 U.S. 144. …………………………………..…………8

*Austin v. Massachusetts Bonding & Insurance Co.*, (1961) 56 Cal.2d 596, 600. ………..……4

*Barry v. Fowler*, 902 F.2d 770, 773 n.5 (9th Cir. 1990).  ………………………………………13

*Breceda v. Gamsby*, 72 Cal.Rptr. 832, 834 (Cal.App.1968). …………………………………5

*Brentwood Acad. v. Tenn. Secondary School Athletic Ass'n.*, 53 U.S. 288, 24 (2007)………...8

*Board of County Com'rs of Bryan County, Okl. v. Brown* (1997) 520 U.S. 397, 405. …………11

*Brozik v. Kalish* (9th Cir. 1991) 942 F.2d 790. ………………………………………………10

*Chaudry v. City of Los Angeles,* 751 F.3d. 1096 (9th  Cir.  2014). ……………………………..12

*City of Revere v. Mass. Gen'l Hosp.*, 463 U.S. 239, 244,

 103 S.Ct. 2979, 77 L.Ed.2d 605(1985) …………………………………………………..…9

*Cornwell v. City of Riverside*, 896 F.2d 398, 399 (9th Cir. 1990),cert. denied, 497 U.S. 1026 (1990). ………………………………………………………………………………....…14

*Daniels v. Williams,* 474 U.S. 327, 330, (1986). …………………………………………..…12

*D*ennis *v. Higgins,* 498 U.S. 439, 445  (1991). ……………………………………………..7

*Drummond v. City of Anaheim*, 343 F.3d 1062 (9th Cir. 2003),

        cert. denied, 542 U.S. 918 (2004). …………………………………………………3, 12

*Fara Estates Homeowners Ass'n v. Fara Estates, Ltd. (*9th Cir. 1998) 134 F.3d 377. ………...5, 6

*Filarsky v. Delia,* (2012) 566 U.S. 377…………………………………………………7, 8

*Franklin v. Fox* (9th Cir. 2002) 312 F.3d 423, 445. …………………………………....…8

*General Motors v. Superior Court,* 55 Cal.Rptr.2d. …………………………………………...5

*Gillette v. Burbank Community Hospital,* 56 Cal.App.3d 430, 434 (1976) ………………………7

*Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 18 (1979). ……………………………....…10

*Hall v. City of Fremont* (9th Cir. 2013) 520 Fed.Appx. 609. …………………………………....…12

*Hutto v. Finney*, 437 U.S. 678, 698 (1978). ……………………………………………………....…10

*Jackson v. Cedars-Sinai Medical Center*, 220 Cal.App.3d ……………………………………..12

*Jensen v. Royal Pools*, (1975) 48 Cal. App.3d 717. ……………..……………………………………5

*Kirtley v. Rainey* (9th Cir. 2003) 326 F.3d 1088. …………………………..…………………7, 8

*Kulas v. Valdez,* 159 F.3d 453, 455–56 (9th Cir.1998). ……………………………………………9

*Lindley v. Gen. Elec. Co.,* 780 F.2d 797, 799 (9th Cir. 1986). …………….…..………………… 6

*Parker v. Robert E. McKee, Inc.,* 4 Cal.Rptr.2d 347. ……………………………………………5

*Pearson v. Callahan*, 555 U.S. at 232-36, 129 S.Ct. 808. …………………………………………10

*Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018). …………..……………12

*Riggins v. Nevada*, 504 U.S. 127, 137, 112 S.Ct. 1810, (1992). ……………………..…………9

*Rodriguez v. County of Los Angeles*, 96 F.Supp.3d 990, 999 (C.D. Cal. 2014). ………………..11

*Rochin v. California* (1952) 342 U.S. 165, 173. ……………………………………… …...……14

*Sell v. United States*, 539 U.S. 166, 123 S.Ct. 2174, 2183, 156 L.Ed.2d 197 (2003)…………9, 10

*Sides v. City of Champaigne*, 496 F.3d 820 (7th Cir. 2007). …………………………………9, 10

*Stewart v. United States,* 620 F.2d 740 (9th Cir. 1980). …………………………………………4

*Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006). …………….…10

*Trevino v. Gates,* 99 F.3d. 911, 921(9th Cir. 1996). …………………………………………14

*United States v. Span*, 970 F.2d 573, 580 (9th Cir.1992). ………………………………………13

*Washington v. Harper*, 494 U.S. 210, 221-22 (1990). …………………………………………9

*Wilson v. Garcia*, 471 U.S. 261, 271–72 (1985). ……………………………………………..7

*Wright v. City of Los Angeles* (1990) 219 Cal.App.3d 318, 345–346. …………………………13

*Youngberg v. Romeo* (1982) 457 U.S. 307. ………………………………….………..……9, 11

*Diekmann v. Superior Court*, 220 Cal.Rptr. 602, 614 (Cal.App.1985). ……………………..………5

**Statutes:**

California Government Code § 910 et seq., ……………………………………………...…………1

California Code Civil Procedure § 355.1………………………………………………………3, 4, 6

California Code Civil Procedure § 411.10 ……………………………………………………..………3

California Civil Code § 474. ……………………………………………………………………... 5, 6

Code of Civil Procedure § 52.1 ……………………………………………………...…11, 12

Federal Rule Civil Procedure 12(b) ………………………………………………………………3

Federal Rule Civil Procure § 15………………………………………………………………..………3

Federal Rule Civil Procedure 15(c) …………………………………………………………………4

Health and Safety Code § 1799.106………………………………………………………...…………10

42 U.S.C. § 1983………………………………………………………………………………*passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## INTRODUCTION

On March 10, 2021, Defendant AMERICAN MEDICAL RESPONSE WEST (Hereinafter "AMRW"), and its employee Damon RICHARDSON, assisted City of Richmond police officers in detaining and arresting Plaintiff Mr. Gutzalenko, who died as a result of the detention.  While Mr. Gutzalenko was handcuffed and still on the ground, AMRW paramedic RICHARDSON made the decision to use "Versed," a chemical restraint, on Mr. Gutzalenko. RICHARDSON injected Gutzalenko even after Mr. Gutzalenko ceased exhibiting any behavioral issue or agitation at that time. (See Doc. 49) Following Mr. Gutzalenko's death, Plaintiffs timely and properly filed a tort claim pursuant to Cal. Gov. Code § 910 et seq., and this Plaintiffs' subsequent civil action was timely filed within all applicable statutes of limitation.

Burris Nisenbaum Curry & Lacy, LLP appeared as counsel for Plaintiffs for the first time in this action on December 23, 2022.  In the original complaint and all subsequent amendments, Plaintiffs' § 1983 claims alleged violations of Mr. Gutzalenko's rights protected under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution, and additional California common laws. In May, 2023 the Contra Costa County District Attorney concluded its investigation into the conduct of the officers involved in Mr. Gutzalenko's death. This caused depositions in the action to be delayed. (See Doc 40). Plaintiffs could not take depositions until this point. Only upon preparing for deposition did the facts tending to demonstrate facts relating to AMRW's and RICHARDSON'S cause of Mr. Gutzalenko's death become clear.

In his initial post-incident interview, Defendant Richardson recounted that Mr. Gutzalenko became unresponsive while on the ground soon after Richardson administered Versed. It wasn't until preparing for the depositions of the officers that Plaintiffs' counsel were

PLFS' RESPONSE TO DEFS' MTN TO DISMISS BY DEFS AMERICAN
MEDICAL RESPONSE WEST AND DAMON RICHARDSON

1

able to determine from context in the defendant-officers' body cam video that the Versed was administered without aspirating the syringe. The discovery of information led Plaintiffs to be able to determine that Richardson had contradicted himself in his coroner's inquest testimony from what he stated in his initial interview by claiming in the inquest that it was only once Gutzalenko was in the ambulance that he had become unresponsive. The police body camera video supported the initial account provided in post-incident interview by Richardson: Gutzalenko had become unresponsive while on the ground before being put in ambulance[1].

Upon discovery of these facts, Plaintiffs sought and obtained leave to amend the complaint, and on August 9, 2023 Plaintiffs filed and properly served on Defendants the Amended Complaint which included the facts necessitating AMRW and RICHARDSON as Defendants to the action. (Doc. 49). The Amended Complaint states factual allegations based upon claims which Plaintiffs learned from newly-available evidence. RICHARDSON failed to "aspirate" the syringe prior to administering the medication he used to subdue Mr. Gutzalenko, meaning he did not check to see if the needle had penetrated a vein – a critical step for the Midazolam doses to be administered by AMRW. All of RICHARDSON's actions in administering the Versed are clearly visible on the Body-cam video, and it is clear from the video that he did not aspirate the syringe. He then administered a dose of Versed that was meant for the muscle directly into GUTZALENKO's vein instead of the muscle. GUTZALENKO stopped breathing within 90 seconds of the dose of Versed, consistent with intravenous administration of an overdose of Versed. (Doc.49).

---

[1] To the extent the foregoing is not pled, Plaintiffs could further amend the Complaint to include these facts, if the Court deems it necessary. The significant point is that Defendant Richardson likely knew that his actions contributed to Mr. Gutzalenko's death, and that he would likely be a defendant in this case, or he would not have changed his account to create further time from his administration of Versed to when Mr. Gutzalenko became unresponsive at the Coroner's Inquest, long after he gave his initial account to in-custody death investigators.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

In the operative Complaints, Plaintiffs pleaded legal claims against the present Defendants including but not exhaustively: Defendants acting under color of law in a law enforcement capacity (Doc. 49); AMRW's failure to properly train and provide physician approved policy for the use of Versed during the course of the incident, as well as improper practice for administering Versed after Gutzalenko had already been handcuffed and resting in a recovery position, (*Id.* at p. 15); and the aforementioned failure to properly administer the doses by not aspirating the syringe, and injecting a likely medically-inappropriate amount in Gutzalenko's vein instead of muscle. *Id.* In addition to the many facts supporting wrongful conduct on the part of these newly-added Defendants, Plaintiffs pled well-established legal standards, including that "Reasonable officers would have clearly known that such conduct constituted excessive force under these circumstances, and posed a substantial risk of death or serious injury to Mr. Gutzalenko, as the Ninth Circuit explained in *Drummond v. City of Anaheim*, 343 F.3d 1062 (9th Cir. 2003), cert. denied, 542 U.S. 918 (2004). During those times, reasonable officers, post-*Drummond*, would have understood that they were using deadly force." (Doc 49, p. 8).  For the reasons discussed in the operative Complaint, related pleadings, and herein, all of the facts presented by Plaintiffs are sufficient to withstand Defendants' immediate 12(b) Motion to Dismiss. Defendants' clumsy attempt to persuade this Court otherwise flies in the face of the public policy granting liberal leave to amend complaints to add necessary defendants so that a case can be justly decided on its merits.

**A. Plaintiffs' Section 1983 Claims Are Not Barred by California's Statute of Limitations for Personal Injury Torts**

Plaintiffs' original Complaint was filed within the two-year time period imposed by Cal. Code Civ. Proc. § 355.1. Given that a civil action is "commenced" by filing a complaint with the court (Cal. Code Civ. Proc., § 411.10) this action was commenced as of that date in compliance

**PLFS' RESPONSE TO DEFS' MTN TO DISMISS BY DEFS AMERICAN MEDICAL RESPONSE WEST AND DAMON RICHARDSON**

with the filing requirements of section 355.1 have been satisfied. When Plaintiffs subsequently

became aware of the culpable conduct by AMRW and Richardson in the circumstances

underlying the original Complaint, Plaintiffs requested and were given leave by this Court to

amend the Complaint to add these parties as defendants. When an amended complaint changes

the party or the naming of the party against whom a claim is asserted, that amendment is deemed

to have been filed on the same date of the original pleading. Fed. Rule Civ. Proc. 15, subd.

(c)(1)(C). Under the Federal Rules, an amended complaint relates back to the filing of the

original and thus avoids the bar of a statute of limitations, so long as recovery is sought in both

pleadings on the same general set of facts. Fed. Rule Civ. Proc. 15 subd. (c). Plaintiffs' Amended

Complaint adding these Defendants sufficiently connects the set of facts pled in their original

Complaint with the newly-discovered basis for asserting a claim against these Defendants.

"[W]hen an amendment is sought after the statute of limitations has run, the amended complaint

will be deemed filed as of the date of the original complaint provided recovery is sought in both

pleadings on the same general set of facts." *Austin v. Massachusetts Bonding & Insurance Co.*,

(1961) 56 Cal.2d 596, 600.

It is the conduct, transaction, or occurrence test of Rule 15(c) which assures that the

relation back doctrine does not deprive the defendant of the protections of the statute of

limitations. *Stewart v. United States,* 620 F.2d 740 (9th Cir. 1980). "Indeed, we have held that

relation back is proper even where the original complaint failed for lack of subject-matter

jurisdiction." *Id.* at 744.  Plaintiffs' First Amended Complaint gave these Defendants adequate

notice of the substance of Plaintiffs' claims, and thus Defendants cannot show prejudice from the

addition of claims arising out of the same facts. *See Santana v. Holiday Inns, Inc.,* 686 F.2d 736,

739 (9th Cir.1982). Nothing in the pleadings suggests that Plaintiffs, after learning of the

**PLFS' RESPONSE TO DEFS' MTN TO DISMISS BY DEFS AMERICAN
MEDICAL RESPONSE WEST AND DAMON RICHARDSON**

application of their causes of action against these now-Defendants, were "dilatory in amending the complaint, or that Defendants suffered prejudice from any such delay." *Jensen v. Royal Pools*, (1975) 48 Cal. App.3d 717, 721-722.

Alternatively, Defendants' Motion to Dismiss relies heavily on the argument that they had been identified in the original complaint as present during the underlying incident, which is imagined to preclude them from liability in the operative Complaint. However, this fact is completely dispositive to these Defendants being brought in validly as doe defendants now identified pursuant to Cal. Civ. Code § 474. Section 474 exists to allow a plaintiff, in good faith, to delay suing particular persons named as defendants in the original complaint until he has knowledge of sufficient facts to cause a reasonable person to believe liability is probable. *Diekmann v. Superior Court*, 220 Cal.Rptr. 602, 614 (Cal.App.1985). A plaintiff does not relinquish their rights under section 474 simply because they had a suspicion of wrongdoing later substantiated by facts they did not know at the time of filing the original complaint. *General Motors v. Superior Court,* 55 Cal.Rptr.2d at 880. Inasmuch as Plaintiffs amended the Complaint upon later discovery of facts demonstrating these Defendants' legal capacity in the circumstances surrounding Mr. Gutzalenko's death, well-established law allows such an amendment under § 474. Any other result would be "contrary to the beneficial purpose of the statute." *Parker v. Robert E. McKee, Inc.,* 4 Cal.Rptr.2d 347, 351. The issue is whether a material question of facts existed concerning what the Plaintiffs knew about their claims against these Defendants and when did they acquire that knowledge, or when they should have known they had a claim. *Fara Estates Homeowners Ass'n v. Fara Estates, Ltd. (*9th Cir. 1998) 134 F.3d 377. Defendants have the burden of proving such awareness existed at the time of the filing original complaint. *Breceda v. Gamsby*, 72 Cal.Rptr. 832, 834 (Cal.App.1968). Aside from the fact that AMRW and

Richardson were acknowledged in the original Complaint, Defendants have not proven or alleged facts from which any reasonable inference could be drawn that Plaintiffs were aware earlier of facts not pleaded and not disclosed prior to the filing of the Amended Complaint.

In *Fara Estates Homeowners Ass'n v. Fara Estates, Ltd.,* the Ninth Circuit was persuaded that plaintiffs were not sufficiently knowledgeable of facts in the original complaint due to multiple extensions of discovery which eventually produced facts showing the involvement of certain defendants, who were originally unnamed. The delay not created by or due to any bad faith belonging to those plaintiffs, the court found defendants were not entitled to a grant of summary judgment in their favor under section 474. *Id.* This analysis is on point with the current action, as delays in the District Attorney's investigation in the incident surrounding Mr. Gutzalenko's death delayed discovery of salient facts giving rise to necessity of joining of these Defendants to the action. When, as here, a Defendant is added to a complaint by amendment substituting his name for a doe defendant, he is considered a party to the action from the time of commencement of the action for purposes of the statute of limitations. *Lindley v. Gen. Elec. Co.,* 780 F.2d 797, 799 (9th Cir. 1986).  AMR West and Richardson are now properly identified as necessary defendants from these facts, and can take the place of the doe defendants under section 474. Following the Federal Rules on point at every step of the lifecycle so far, the statute of limitations in Cal. C.C.P. § 355.1 does not apply to this action.

Certainly, Defendants AMRW and RICHARDSON have suffered no undue prejudice as a consequence of not being named as defendants until now, since discovery is only begun and depositions have not been taken.

**B. Plaintiffs' State Counts Are Not Time-Barred under C.C.P. section 340.5**

Defendants' assertion that Plaintiffs' tort claims are time barred under Cal. Civ. Proc. Section 340.5 fails under the same analysis as above.  Section 1983 was meant to be a remedial

statute and should be "broadly construed" to provide a remedy "against all forms of official violation of federally protected rights." D*ennis v. Higgins,* 498 U.S. 439, 445 (1991) (citation omitted); see also *Wilson v. Garcia*, 471 U.S. 261, 271–72 (1985) ("[Section] 1983 provides a 'uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution' . . . [that] make[s] it appropriate to accord the statute 'a sweep as broad as its language.'" (internal citation omitted)), superseded by statute on other grounds.

Plaintiffs alleged that Defendants should not have administered Versed or at least should have aspirated the syringe to ensure it was not intravenously administered. (Doc 49, ¶23.). Defendants cannot avoid the substantive unreasonableness of their conduct through cherry-picking timing procedure. Viewing the Amended Complaint as the operative pleading – which it is – the "specious nominalism" of Defendants' arguments becomes apparent, and the irrationality of dismissing the action against them on such jurisdictional grounds advanced is "made manifest. Substance controls form, even in procedure." *Gillette v. Burbank Community Hospital,* 56 Cal.App.3d 430, 434 (1976).

**C. The Operative Complaint Alleges Facts Sufficient to Support All of Plaintiffs' 42 U.S.C. section 1983 Claims**

A § 1983 action can lie against a private party when 'he is a willful participant in joint action with the State or its agents. *See Kirtley v. Rainey* (9th Cir. 2003) 326 F.3d 1088, 1092. "Anyone whose conduct is fairly attributable to the State can be sued as a state actor under § 1983." *Filarsky v. Delia* (2012) 566 U.S. 377, 383. Defendants participated in conduct violative of the Fourth Amendment by acting in concert with the police to subdue Mr. Gutzalenko while he was in State custody, physically restrained, and no longer resisting or posing a threat. As such, Defendants jointly engaged with state officials in effectuating state authority and were acting

under color of law. *See Adickes v. S. H. Kress & Co.* (1970) 398 U.S. 144. Indeed, these Defendants increased the State's use of force by chemically restraining Mr. Gutzalenko. The involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of Fourth Amendment rights, whether or not the actions of the Defendant agent were officially authorized or lawful. *Id. at 152.*

The Ninth Circuit has articulated four tests for determining whether a private person acted under color of law: (1) the public function test, (2) the joint action test, (3) the government nexus test, and (4) the government coercion or compulsion test. *Franklin v. Fox* (9th Cir. 2002) 312 F.3d 423, 445. Satisfaction of any one test is sufficient to find state action, "so long as no countervailing factor exists." *Kirtley, supra* at p. 1092. Plaintiffs have sufficiently alleged facts that a reasonable fact-finder would find persuasive to demonstrate that Defendants' conduct satisfies any of those tests in regards to Mr. Gutzalenko's death. As paramedics under contract to provide state-mandated healthcare, Defendants' conduct constituted state action under the Public Function Test. "It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State." *West v. Atkins* (1988) 487 U.S. 42, 55–56; see also *Filarsky v. Dena*, 566 U.S. 377 (2012). When a medical provider aids in the restraint of an arrestee to assist in their capture or to force compliance with the arresting-officer's commands, the medical provider is working in a law-enforcement capacity. *See, e.g.: Cole v. City of Chicago,* (N.D. Ill., Jan 4 2008.);. *C.f. Brentwood Acad. v. Tenn. Secondary School Athletic Ass'n.*, 53 U.S. 288, 24 (2007).

The Constitutional right to personal security constitutes a historic liberty interest, and that right is not extinguished by lawful confinement even for penal purposes. The Supreme Court has been clear that individuals have constitutionally-protected liberty interests to reasonably safe

conditions of confinement, freedom from unreasonable bodily restraints, and such minimally

adequate training as reasonably might be required by these interests. *See, e.g.: Washington v.*

*Harper*, 494 U.S. 210, 221-22 (1990); *See also Youngberg v. Romeo* (1982) 457 U.S. 307.

Moreover, "the Supreme Court has thrice recognized a significant liberty interest in freedom

from administration of unwanted antipsychotic drugs." *Riggins v. Nevada*, 504 U.S. 127, 137,

112 S.Ct. 1810, (1992). Pretrial detainees "possess a significant liberty interest in avoiding the

unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth

Amendment." *Washington v. Harper*, 494 U.S. 210, 221–22, 110 S.Ct. 1028, (1990); *See also*

*Sell v. United States*, 539 U.S. 166, 123 S.Ct. 2174, 2183, 156 L.Ed.2d 197 (2003).

When acting under color of law jointly with or as state actor, the standard of whether

conduct underlying arrest was violative of rights is not mere deliberate indifference, but whether

the seizure was objectively reasonable. *Sides v. City of Champaigne*, 496 F.3d 820 (7th Cir.

2007). Courts generally find constitutional violations in chemical restraint when it is beyond

necessary extent to ensure public health and safety. *See e.g. Kulas v. Valdez,* 159 F.3d 453, 455–

56 (9th Cir.1998). Due process "require[s] the responsible government or governmental agency

to provide medical care to persons ... who have been injured while being apprehended by the

police." *City of Revere v. Mass. Gen'l Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d

605(1985). The facts and inconsistencies on the record, plead here and in the Amended

Complaint, demonstrate the plausibility of Plaintiffs' assertion that Richardson very likely

exceeded the scope of medical care necessary to ensure the safety of Mr. Gutzalenko, the

officers, and the AMRW paramedics at the scene on March 10, 2021.  "If it is cruel and unusual

punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to

confine the involuntarily committed—who may not be punished at all—in unsafe conditions.

*Sides v. City of Champaigne* at 315-316. "Liberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 18 (1979) (POWELL, J., concurring in part and dissenting in part).  "That right is not extinguished by lawful confinement, even for penal purposes." *Hutto v. Finney*, 437 U.S. 678, 698 (1978).

**D.  Defendants AMRW and Richardson are Not Entitled to Immunity**

Defendants asserted entitlement to immunity under the limitations of Cal. Health & Safety Code § 1799.106, which demonstrated their fundamental misunderstanding of the Plaintiffs' claims. Plaintiffs' medical care claims are brought within the course of a Fourth Amendment seizure and are subject to its "reasonableness" standard. *See Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006).  To be entitled to qualified immunity at the motion to dismiss stage, an officer must show that the allegations in the complaint do not make out a violation of a constitutional right or that any such right was not clearly established at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. at 232-36, 129 S.Ct. 808. Injecting antipsychotic drugs without consent in the absence of adequate procedural safeguards and in the absence of an imminent threat to the suspect or to others violates "clearly established law of which a reasonable person would have known."  *Brozik v. Kalish* (9th Cir. 1991) 942 F.2d 790. When viewed in the light most favorable to the non-moving party on the defense of qualified immunity, California case law indicates that courts would find that the Defendants' conduct was unreasonable, precluding their liability.[2]

---

[2] *See Sell v. United States,* 539 U.S. 166, 123 S.Ct. at pp. 2186–2187 (questionable whether government can justify involuntary antipsychotic medication of person neither incompetent nor dangerous.); *Blankenhorn v. City of Orange,* 485 F.3d 463, 481 (9th Cir. 2007) (denying qualified immunity based on a violent arrest of a "relatively calm trespass suspect."); *See also Estate of Lopez by and Through Lopez v. Gelhaus*, 871 F.3d 998, 1021–22 (9th Cir. 2017) (remanding for trial where the facts, viewed in the light most favorable to the non-moving plaintiff in response to defendants' motion for summary judgment on defense of qualified immunity, could show that the force used was unreasonable because the victim never raised the perceived weapon or made a "harrowing gesture" when

Additionally if the 14th Amendment were found to apply, Plaintiffs have sufficiently pled facts which meet that higher "deliberate indifference" standard.  Defendants had the power to make medical care decisions in arrest circumstances, and in a real sense it can be said that Defendants contributed to the tortious conditions under which Mr. Gutzalenko died. "[T]he conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will [also] determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Board of County Com'rs of Bryan County, Okl. v. Brown* (1997) 520 U.S. 397, 405.  Although the state enjoys wide latitude in developing treatment regimens, courts may take action when there is a substantial departure from accepted professional judgment or when there has been no exercise of professional judgment at all. *See Youngberg v. Romeo*, 457 U.S. 307 (1982).

**E. Plaintiffs Alleged Facts Supporting Count Three Demonstrating Defendants' Violation of the Bane Act**

Defendants do not qualify for dismissal of Plaintiffs' Bane Act claims based on excessive force because the elements of such a claim under section 52.1 are the same as under § 1983.[3] Claims under section 52.1 may be brought against public officials who are alleged to interfere with protected rights, and qualified immunity is not available for those claims. *Rodriguez v. County of Los Angeles*, 96 F.Supp.3d 990, 999 (C.D. Cal. 2014) (distinguishing *Shoyoye* by interpreting it to apply only when the constitutional violation is unintentional).

---

he turned toward the officers); *Curnow By and Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 323, 325 (9th Cir. 1991) (affirming district court's denial of officer's motion for summary judgment on qualified immunity grounds where the non-moving plaintiff's evidence showed that the plaintiff had not pointed his gun at officers, his gun was not loaded, and he was not facing the officer who opened fire).

[3] *Boarman v. County of Sacramento*, 55 F.Supp.3d 1271, 1287 (E.D. Cal. 2014) (applying *Chaudhry* and holding that the plaintiff's Bane Act claim based on excessive force survived summary judgment because the elements of such a claim under section 52.1 are the same as under § 1983); *See also Barragan v. City of Eureka*, No. 15-cv-02070-WHO, 2016 WL 4549130, (N.D. Cal. Sept. 1, 2016) at *8 (agreeing with *Chaudhry* that the elements of an excessive force claim under § 1983 establish the elements of a Bane Act claim and that no additional elements are required).

PLFS' RESPONSE TO DEFS' MTN TO DISMISS BY DEFS AMERICAN
MEDICAL RESPONSE WEST AND DAMON RICHARDSON

Elements of an excessive force claim under § 1983 establish the elements of a Bane Act claim and no additional elements are required. *Chaudry v. City of Los Angeles,* 751 F.3d. 1096 (9th Cir. 2014). Section 1983 itself "contains no state-of-mind requirement independent of that necessary to state a violation" of the underlying federal right. *Daniels v. Williams,* 474 U.S. 327, 330, (1986).

As pled in the operative Complaint and herein, Defendants improperly administered Versed in Mr. Gutzalenko's vein instead of muscle; the dose exceeded a safe amount by medical standards, and Mr. Gutzalenko was already in prone position posing no threat to officers or paramedics when Defendants administered the drug. Such "reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018). Even so, section 52.1 "does not require proof of discriminatory intent" and a successful claim for excessive force under the Fourth Amendment "provides the basis for a successful claim under § 52.1." *Chaudhry,* 751 F.3d at 1105. Given the facts discovered by Plaintiffs in discovery and the timely amendment asserting those facts for each element of section 1983 (see Doc. 49, citing *Drummond),* Defendants cannot prematurely escape their obligation to answer for the claims alleged under the Bane Act.

**F. Plaintiffs' Alleged Facts Supporting Count Five for Assault and Battery Against These Defendants**

Contrary to Defendants' assertions, use of force by medical professionals and/or state agents to accomplish an unlawful detention may certainly give rise to liability for assault and battery. *See*, e.g. *Jackson v. Cedars-Sinai Medical Center*, 220 Cal.App.3d; *Hall v. City of Fremont* (9th Cir. 2013) 520 Fed.Appx. 609. Defendants admitted that Mr. Gutzalenko could

1   not consent to the injection of Versed because he needed medical care and already restrained..

2   (Doc. 56, ¶20, line 20-25) This is further acknowledgment of excessive force in that Mr.

3   Gutzalenko was subdued at the time of injection, and Defendants' decision to do so can

4   reasonably be deduced as a violation of the Fourth Amendment, assault, and battery. If a patient

5   "did not respond immediately to the paramedics' questions but had to be asked several times, the

6   paramedics should ask some orientation questions to determine whether or not the patient was

7   thinking clearly; unclear thinking could be a symptom of shock." *Wright v. City of Los Angeles*

8   (1990) 219 Cal.App.3d 318, 345–346. The amount to which Defendants subjectively believed

9   Mr. Gutzalenko was in need of for medical care to justify their application of force on his body is

10  a question of fact, where this Circuit has clearly answered the legal question as to the "limited

11  right to offer reasonable resistance to an arrest that is the product of an officer's personal frolic,"

12  and "that right is not triggered by the absence of probable cause, but rather by the officer's bad

13  faith or provocative conduct." *United States v. Span*, 970 F.2d 573, 580 (9th Cir.1992).

14

15  **G. Plaintiffs' Alleged Facts Supporting Count Six for False Arrest and Imprisonment Against These Defendants**

16          Defendants can neither avoid answering for their involvement in the Count Six claims of

17  false arrest and imprisonment. Such claims focus on the validity of the arrest, not on the validity

18  of each individual charge. *Barry v. Fowler*, 902 F.2d 770, 773 n.5 (9th Cir. 1990).  Plaintiffs

19  have alleged specifically the lack of probable cause underlying the detention of Mr. Gutzalenko

20  by Defendants responding to a "disturbance" in a furniture store and having conclusively

21  determined no crime had occurred prior to the administration of Versed (See Doc 49 ¶73, lines

22  10-17; ¶74, lines 18-22), as well as facts which support the legal assertion (Id. ¶23 lines 5-23)

23  Defendants, acting under color of law by aiding in the detainment of Mr. Gutzalenko, decided to

24  escalate the arrest with egregious and unnecessary application of force through chemical

25

restraint.  Such conduct must be answered for in the arrest setting: "It would be a stultification of the responsibility which the course of constitutional history has cast upon this Court to hold that in order to convict a man the police cannot extract by force what is in his mind but can extract what is in his [body]." *Rochin v. California* (1952) 342 U.S. 165, 173.

**H. Plaintiffs Sufficiently Plead Facts to Support Awards of Both Punitive Damages and Attorney's Fees**

The case law cited in Defendants' Motion to Dismiss do not establish a federal policy prohibiting an agency from paying punitive damages when the agency finds its employees to have acted without malice and when the agency deems it in its own best interest to pay. *Cornwell v. City of Riverside*, 896 F.2d 398, 399 (9th Cir. 1990), cert. denied, 497 U.S. 1026 (1990); *See also Trevino v. Gates,* 99 F.3d. 911, 921(9th Cir. 1996). Attorneys' fees are by statute under 42. U.S.C. section 1988 for plaintiffs Federal claims.

### III.
### CONCLUSION

Given the foregoing, Plaintiffs believe dismissal of the Second Amended Complaint without prejudice is inappropriate. AMRW and RICHARDSON have suffered no undue prejudice as a consequence of not being named as defendants until the SAC was filed, since discovery has only begun and depositions have not been taken.


Dated: October 13, 2023          **BURRIS NISENBAUM CURRY & LACY, LLP**


                                 /s/ *Ben Nisenbaum*
                                 Ben Nisenbaum
                                 Attorney for Plaintiffs