1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6

7    IVAN GUTZALENKO, et al.,              Case No.  22-cv-02130-EMC
8                    Plaintiffs,
9           v.                             **ORDER GRANTING IN PART AND
                                           DENYING IN PART DEFENDANTS'
10   CITY OF RICHMOND, et al.,             MOTION TO DISMISS**
11                   Defendants.           Docket No. 56
12
13                    I.        **INTRODUCTION**
14          This case involves alleged civil rights violations, medical negligence, and wrongful death
15   among other claims against ambulance company AMR West and its paramedic Mr. Richardson
16   (collectively "Defendants") who provided medical assistance to Ivan Gutzalenko ("decedent")
17   shortly before his death.  The City of Richmond and several of its police officers (collectively
18   "City Defendants"), are additional defendants that are not parties to this motion.  After the police
19   arrested the decedent, Mr. Richardson injected a chemical restraint drug into the decedent's body.
20   Shortly after, the decedent died.  Plaintiffs are family members of the decedent and filed their
21   Second Amended Complaint ("SAC") including five federal and state causes of action.
22   Defendants move to dismiss for failure to state a claim under Fed. R. Civ. Pro. 12(b)(6) and move
23   to strike under Fed. R. Civ. Pro. 12(f).  For the reasons stated below, the Court GRANTS in part
24   and DENIES in part Defendants' motion to dismiss.
25                    II.       **FACTUAL BACKGROUND**
26          On March 10, 2021, a Richmond police officer responded to a call for service about a man
27   causing a disturbance in a furniture store on San Pablo Avenue in Richmond, California.  SAC ¶
28   21.  When the police officer arrived at the scene, he saw a man matching the call description and

approached him on foot. *Id.* The man was Mr. Gutzalenko, the decedent. The decedent was "in need of medical aid and was possibly intoxicated and/or experiencing a medical or mental health crisis." *Id.* ¶¶ 21, 23-24. The decedent had a dark purple mark on his forehead, was bleeding profusely from one of his hands, and had difficulty focusing on and communicating with the police officer. *Id.* ¶ 21.

The Defendants, AMR West and the paramedic Mr. Richardson, arrived in an ambulance and attempted to bandage the decedent's hands. Plaintiffs allege that the decedent became agitated and attempted to keep his hands away. *Id.* ¶ 22. Police officers then handcuffed the decedent after a "struggle" for "2 to 3 minutes." *Id.* While the decedent was handcuffed on the ground, Defendant Mr. Richardson injected the decedent with Versed, a chemical restraint. *Id.* ¶ 23. Plaintiffs claim Mr. Richardson did not "aspirate" the syringe when he administered the Versed to ensure it was not in the vein. *Id.* Plaintiffs allege that the decedent stopped breathing within 90 seconds of the Versed administration and that he was pronounced dead after he was taken to Summit Hospital in Oakland. *Id.* An autopsy determined the cause of death was prone restraint asphyxia and cardiac arrest while under the influence of methamphetamine. *Id.* ¶ 24.

In counts one and two, plaintiffs allege 42 U.S.C. Section 1983 causes of action for violation of the First, Fourth and Fourteenth Amendments for unreasonable searches and seizures, excessive and unreasonable force in the course of a seizure, and interference with familial relationships. *Id.* at 9-17. In counts three through six, Plaintiffs allege state law claims for violation of the Bane Act, negligence, "assault and battery," and "false arrest and imprisonment" respectively. *Id.* at 17-24. Plaintiffs also seeks punitive damages and attorney's fees in relation to their Section 1983 claim.

### III.   PROCEDURAL BACKGROUND

Plaintiff filed the original Complaint on April 4, 2022 naming the City Defendants: the City of Richmond, the Chief of Police, and three Police Officers. Docket No. 1. Plaintiff then filed the First Amended Complaint, which named Defendants AMR and Damon Richardson on June 23, 2023. Docket No. 42. Plaintiff filed their Second Amended Complaint ("SAC") on August 9, 2023. Docket No. 49. Now currently before the Court is the Defendants AMR West

and Mr. Richardson's Motion to Dismiss the SAC.  Docket No. 56.  The City Defendants are not involved in this motion.

## IV.     LEGAL STANDARD

A.     Failure to State a Claim (Rule 12(b)(6))

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

B.     Motion to Strike (Rule 12(f))

Before responding to a pleading, a party may move to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to the trial."  *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 624 (N.D. Cal. Oct. 14, 2011) (quoting *Whittlestone, Inc. v.*

United States District Court
Northern District of California

*Handi-Craft Co.s*, 618 F.3d 970, 973 (9th Cir. 2010)).  Motions to strike are generally disfavored. *See Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 879 (N.D. Cal. 2011); *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).  A motion to strike should only be granted if the matter sought to be stricken clearly has no possible bearing on the subject matter of the litigation.  *See Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ("'Immaterial matter' is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.").  Statements that do not pertain to, and are not necessary to resolve, the issues in question are impertinent.  *Id.*  If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the Court should deny the motion to strike.  *Platte Anchor Bolt*, 352 F. Supp. 2d at 1057.  Just as with a motion to dismiss, the Court should view the pleading sought to be struck in the light most favorable to the nonmoving party.  *Id.*

## V.      DISCUSSION

A.      Counts One and Two: Section 1983 Claim

Defendants argue that Plaintiffs fail to state a Section 1983 claim in two ways: first, that Plaintiffs failed to allege that Defendants acted under the color of law; second, Plaintiffs failed to allege a violation of Fourteenth Amendment substantive due process rights.  Motion at 15–16.  Defendants withdrew their statute of limitations argument as to the Section 1983 claims.  Docket No. 67 at 1 (D's Additional Briefing on D's Motion to Dismiss), so the Court does not address this issue.

Section 1983 provides a federal remedy for deprivation of civil rights on unconstitutional state action.  In pertinent part, Section 1983 states as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To plead a cognizable Section 1983 claim, a plaintiff must allege facts from

4

United States District Court
Northern District of California

1  which it may be inferred that (1) he or she was deprived of a federal right, and (2) a person who

2  committed the alleged violation acted under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48

3  (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).  Additionally, a plaintiff must

4  allege that they suffered a specific injury and show a causal relationship between the defendant's

5  conduct and the injury suffered.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).  A person has

6  a liberty interest in being free from unreasonable bodily restraint.  *See, e.g., Washington v. Harper,*

7  494 U.S. 210, 221-22 (1990); *see also Youngberg v. Romeo*, 457 U.S. 307 (1982).  Where a

8  routine arrest results in death, there may be a basis for asserting a claim of an unreasonable bodily

9  restraint.  *See Washington v. Harper,* 494 U.S. at 237 ("Every violation of a person's bodily

10  integrity is an invasion of his or her liberty. The invasion is particularly intrusive if it creates a

11  substantial risk of permanent injury and premature death.").  The issue raised by the instant

12  motion, however, focuses on whether the alleged conduct of the paramedic in injecting Versed

13  was done under color of law – i.e., whether his conduct constituted state action.

14        1.   <u>State Action</u>

15        Defendants assert that Plaintiffs fail to allege facts showing that Mr. Richardson was

16  employed by or acted on behalf of the state, because he was a paramedic for a private emergency

17  ambulance company.  Motion at 15.  Plaintiffs contend that Defendants were "acting in concert

18  with the police to subdue" the decedent.  Opposition at 7.

19        Normally, private parties are not acting under color of state law, and as such, no cause of

20  action under Section 1983 is available.  *Price v. Hawaii*, 707-08 (9th Cir. 1991).  Non-

21  governmental corporations are generally considered not acting under color of state law.  *Lugar v.*

22  *Edmondson Oil Co., Inc.,* 457 U.S. 922, 924 (1982).  However, an action may be brought against a

23  corporation for alleged violations of the Constitution if the corporation's actions were fairly

24  attributable to the federal or state government.  *Id.* at 936.

25        The Ninth Circuit has articulated four tests for determining whether a private person acted

26  under color of law: (1) the public function test, (2) the joint action test, (3) the government nexus

27  test, and (4) the government coercion or compulsion test.  *Franklin v. Fox*, 312 F.3d 423, 445 (9th

28  Cir. 2002); *Lopez v. Dept. of Health Services,* 939 F.2d 881, 883 (9th Cir. 1991) (citing cases and

describing the "joint action test" and the "governmental nexus test.").  Specifically under the joint action test, a Section 1983 action can lie against a private party when "he is a willful participant in joint action with the State or its agents." *See Kirtley v. Rainey* 326 F.3d 1088, 1092 (9th Cir. 2003).

In *Thompson v. Cope*, 900 F.3d 414, 419 (7th Cir. 2018), the trial court found that a paramedic acted in a law-enforcement capacity because he "assisted the officers 'in effectuating [the decedent's] arrest, not rendering emergency medical services.'"  (internal citations omitted). The paramedic arrived while the decedent was "still struggling and fighting the officers who were holding him down" on the ground.  *Id.* at 418.  The paramedic suspected the decedent was on amphetamines and administered Versed.  *Id.*  The medics and the officers then lifted him onto a cot and moved him towards the ambulance.  *Id.*  Once in the ambulance, the decedent was not breathing, did not have a pulse, and remained unconscious; he died eight days later.  *Id.*  The district court concluded that the paramedic "was asked by law enforcement officers to assist them in dealing with a combative, resisting arrestee."  *Id.* at 420.  The Seventh Circuit declined to review the finding, explaining that it could not "revisit the inferences that the district court found could reasonably be drawn."  *Id.* at 420.  *See also McKenna v. Edgell,* 617 F.3d 432, 440 (6th Cir. 2010) ("We stress that whether the officers acted as law enforcement or as medical responders is an objective inquiry.").

Conversely, other courts have found that emergency paramedics do not act under the color of law when they act as private medical responders who do not function as law enforcement officers.  In *Peete v. Nashville and Davidson County*, 486 F.3d 217, 220 (6th Cir. 2007), paramedics physically restrained an unconscious boy who had experienced an epileptic seizure without ensuring he could breathe, resulting in his death.  The Sixth Circuit concluded the paramedics:

> … were not acting to enforce the law, deter, or incarcerate. . . . They were attempting to help him, although they badly botched the job according to the complaint. . . . The plaintiff's excessive force claim thus looks like a medical malpractice claim rather than a Fourth Amendment or Due Process violation.

*Id.* at 222.

1    As *Cope* and *Peete* demonstrate, the issue of state action in situations involving action

2  taken by a medical worker such as a paramedic turns on whether the paramedic acted in a law

3  enforcement capacity when restraining a person or instead acted to provide medical assistance to

4  the detainee.  *See McKenna v. Edgell,* 617 F.3d 432, 441 (6th Cir. 2010) ("The objective character

5  of what role the officers played depends on what actually happened in the early-morning hours of

6  March 18, 2004, and on what a medical-emergency responder would have done under the

7  circumstances."); *cf. McKenna v. Edgell,* 617 F.3d 432, 451 (6th Cir. 2010) (finding that officer's

8  handcuffing of a person in medical need was "more consistent with emergency medical response

9  than with enforcing the law" if the court believes the testimony that the plaintiff "was not posing

10  any threat to the officers at the time they handcuffed [the plaintiff].").

11    Plaintiffs contend that Mr. Richardson acted "in a law enforcement manner" by

12  administering Versed, SAC ¶ 45-46, and "was acting within the course and scope of that

13  employment to assist the City of Richmond police officers in detaining and arresting Ivan

14  Gutzalenko." *Id.* at ¶ 11.  The fact that the decedent was not resisting or thrashing at the time Mr.

15  Richardson injected the decedent with Versed, *see* SAC ¶ 23, begs the question what medical

16  purpose was being fulfilled by the injection.  Might a law enforcement function (instead of

17  medical care) be implied?  On the other hand, the fact that the decedent was already in police

18  custody and control when Mr. Richardson injected Versed could suggest that Mr. Richardson did

19  not act to assist law enforcement in the arrest.[1]

20    At the motion to dismiss stage, all facts alleged in the complaint are taken as true and all

21  reasonable inferences therefrom must be drawn in the plaintiff's favor.  *See Rosenbloom v. Pyott*,

22  765 F.3d 1137, 1156 (9th Cir. 2014).  Although the allegation of the complaint about the purpose

23  of the injection are somewhat conclusory, *cf. Krell v. Gold Cross Ambulance Servs.,* 2019 U.S.

24  Dist. LEXIS 72681 at *4-5 (N. D. Ohio 2019), the facts, viewed in the plaintiff's favor are

25

26  [1] Plaintiffs cite to the out-of-circuit case *Cole v. City of Chi.,* No. 06 C 4704, 2008 U.S. Dist.
LEXIS 92753, at *7 (N.D. Ill. Nov. 14, 2008) to show that a medical provider assisting with police
27  officer arrest is working in a law enforcement capacity.  But this case is not relevant.  There, state
action was not at issue because the paramedic defendants were employees of the Chicago Fire
28  Department, which is a state agency.  *Id.* at *2.  In contrast here, the paramedic defendants are
employees of AMR, which is a private corporation.

1    sufficient to state a claim of state action.  This is, of course, without prejudice to revisiting the

2    question of state action based on discovered facts in future proceedings and motions.

3         The Court denies the motion to dismiss the Section 1983 claims on state action grounds.

4    B.   Count 3: Bane Act

5         The Bane Act provides an individual a cause of action for damages, injunctive and other

6    equitable relief against a person who "whether or not acting under color of law, interferes by

7    threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with

8    the exercise or enjoyment" by another of rights under the constitution or laws of the United States

9    or of California.  Cal. Civ. Code, § 52.1(a).  § 52.1 requires a showing of intentional interference

10   with a constitutional right; incidental interference brought about by negligent conduct is not

11   sufficient.  *Shoyoye v. Los Angeles*, 203 C.A.4th 947, 958, 137 C.R.3d 839 (2012) (finding that a

12   plaintiff who was wrongfully detained in county jail for 16 days due to clerical error needed to

13   prove coercion independent of wrongful detention); *see Allen v. Sacramento* (2015) 234 C.A.4th

14   41, 69, 183 C.R.3d 654 (finding that homeless plaintiffs failed to state claim under C.C. 52.1

15   where allegedly unlawful arrests were not accompanied by coercion other than that inherent in any

16   arrest).

17        1.    Interference with a constitutional right

18        A Fourth Amendment claim of excessive force is analyzed under the framework set forth

19   by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989).  That analysis requires

20   balancing the "nature and quality of the intrusion" on a person's liberty with the "countervailing

21   governmental interests at stake" to determine whether the use of force was objectively reasonable

22   under the circumstances.  *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003)

23   (citing *Graham,* 490 U.S. at 396).  "Determining whether a police officer's use of force was

24   reasonable or excessive therefore re-quires careful attention to the facts and circumstances of each

25   particular case' and a 'careful balancing' of an individual's liberty with the government's interest

26   in the application of force."  *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003)

27   (citation omitted).

28        Here, Plaintiffs has adequately alleged that Defendants have interfered with the Decedent's

8

1  constitutional rights.  Mr. Richardson's failure to aspirate the syringe, therefore improperly

2  injecting Versed into the decedent's vein instead of his muscle which allegedly resulted in or

3  contributed to his death, could constitute excessive force and pose a substantial risk of death or

4  serious injury in violation of the Fourth Amendment.  *See Brower v. County of Inyo*, 489 U.S. 593,

5  599 (1989).

6          2.      <u>Intentional interference</u>

7          However, Plaintiffs failed to adequately allege that Defendants intentionally interfered

8  with the decedent's constitutional rights.  Plaintiffs do not allege that Mr. Richardson intentionally

9  failed to aspirate the syringe, to the contrary, they allege that "due to a failure to be properly

10  trained, [Mr. Richardson] unintentionally administered a high dose of Versed directly into [the

11  decedent's] vein, instead of into [the decedent's] muscle, as he should have done."  SAC ¶ 46.

12  Plaintiffs also do not allege that Defendants intentionally interfered with their right to familial

13  associations.

14          Therefore, the Court dismisses the Bane Act claims against Defendants.

15  C.    <u>Count Four: Negligence</u>

16          Plaintiffs fourth cause of action against Defendants is negligence.  SAC ¶¶ 60-67.

17  Plaintiffs assert that Defendants violated their duty to act with reasonable care.  *Id.* at ¶ 62.

18  Defendants assert that the claim is a medical negligence claim, and therefore the claim is time-

19  barred by the statute of limitations for medical negligence claims.  Motion at 14.  Here, even if Mr.

20  Richardson had functioned to facilitate a law enforcement purpose in injecting the decedent (thus

21  raising a potential Section 1983 claim as discussed above), there is no question that he was

22  administering a medical procedure and employed his medical training in doing so.  Accordingly,

23  medical negligence is the proper framework for this tort claim.

24          1.      <u>Medical Negligence</u>

25          "Professional negligence" means a negligent act or omission to act by a health care

26  provider in the rendering of professional services, which act or omission is the proximate cause of

27  a personal injury or wrongful death, provided that such services are within the scope of services

28  for which the provider is licensed and which are not within any restriction imposed by the

United States District Court
Northern District of California

1   licensing agency or licensed hospital.  Cal. Civ. Code § 3333.2(j)(4).

2          Here, Defendants are emergency paramedics who provided emergency services to the

3   decedent when he was allegedly in need of medical care and experiencing a medical crisis.

4   Therefore, Defendants meet the definition of health care providers rendering professional services.

5   Plaintiffs also allege that Defendants acted negligently and that Mr. Richardson's failure to

6   aspirate the syringe when administering Versed was a proximate cause of the decedent's death.

7   Plaintiffs have sufficiently alleged a claim against Defendants for medical negligence.

8                          a.      Statute of Limitations for Medical Negligence

9          "In an action for injury or death against a health care provider based upon such person's

10  alleged professional negligence, the time for the commencement of action shall be three years

11  after the date of injury or one year after the plaintiff discovers, or through the use of reasonable

12  diligence should have discovered, the injury, whichever occurs first."  Cal. Civ. Proc. Code §

13  340.5.  "The term 'injury' refers to both the physical harm and its negligent cause. An injury

14  occurs when there is appreciable harm. The one-year period of limitations begins to run when a

15  plaintiff is on inquiry notice of negligence." *Id.*

16         Here, the decedent died on March 10, 2021.  However, because the limitation period is the

17  shorter of three years after the date of injury and "one year after the plaintiff discovers, or through

18  the use of reasonable diligence should have discovered, the injury," the Court must consider the

19  latter.  Cal. Civ. Proc. Code § 340.5.

20         Plaintiffs allege that they did not know of Defendants' involvement until around May

21  2023, shortly before they filed the FAC naming Defendant Richardson, after the Contra Costa

22  District Attorney concluded its investigation into the decedent's death.  They argue that this

23  caused the depositions to be delayed, and it was "only upon preparing for the deposition did the

24  facts tending to demonstrate facts relating to [Defendants] cause of Mr. Gutzalenko's death

25  become clear."  Opposition at 1.  However, the key question is when Plaintiffs "*should have*

26  *discovered*" Defendants' involvement in the decedent's death.  Cal. Civ. Proc. Code § 340.5.

27  Even when drawing all reasonable inferences in favor of the Plaintiffs, they have not met their

28  burden of alleging they should not have discovered Mr. Richardson's role of injecting the

*United States District Court*
*Northern District of California*

10

United States District Court
Northern District of California

1  decedent with Versed any earlier than one year prior to the filing of the FAC.  The Plaintiffs

2  opposition brief refers to, for the first time, an initial post-incident interview where Mr.

3  Richardson "recounted that the decedent became unresponsive while on the ground soon after he

4  administered Versed."  Docket No. 57 at 1-2.  It also refers to a coroner's inquest and police body-

5  cam footage that suggest Defendants' involvement in the decedent's death.  However, nothing in

6  their briefing nor in the SAC mentions when Plaintiffs obtained these documents (or in the

7  exercise of diligence should have obtained these documents); in fact, the SAC does not mention

8  any post-incident interview, coroner's inquest, or body-cam video footage.  The SAC fails to

9  establish Plaintiffs' inability to discover the relevant facts earlier than one year before filing of the

10  FAC. *See Czajkowski,* 208 CA 4th 166 at 177-78.

11        The Court dismisses but grants leave to amend the medical negligence claim.

12  D.     Count 5: Assault and Battery

13        Defendants argue that Plaintiffs allege medical battery, as opposed to ordinary battery, and

14  therefore have failed to sufficiently allege the requirement that the person providing medical

15  treatment "clearly and intentionally" deviated from the patient's consent.  Motion at 19; *Cobbs v.*

16  *Grant,* 8 Cal.3d 229, 239-241 (1972).  Plaintiffs argue that their allegations of Defendants' use of

17  force to accomplish unlawful detention are sufficient to state a claim for ordinary assault and

18  battery.  Opposition at 12.

19        Providing medical treatment to a person without their consent constitutes a battery.  *Rainer*

20  *v. Community Memorial Hospital*, 18 Cal. App. 3d 240, 255 (1971).  Defendants thus

21  mischaracterize the standard for medical battery.  In *Cobbs,* the California Supreme Court held

22  that there is a requisite battery element of "deliberate intent to deviate from the consent given"

23  specifically when a patient gives permission to perform one type of treatment and the doctor

24  performs another.  *Cobbs,* 8 Cal.3d at 240.  The Court's finding in *Cobbs* is inapposite given the

25  different circumstance here, where the decedent was unable to consent to any type of treatment.

26  Here, there is no heightened requirement that the medical provider "clearly and intentionally"

27  deviated from the patient's consent.

28        Here, it is undisputed that the decedent was unable to consent to medical treatment.  If the

1  patient is a minor or incompetent, the authority to consent is transferred to the patient's legal

2  representative or closest available relative. *Cobbs v. Grant*, 8 Cal. 3d 229, 244 (1972). The

3  alleged facts do not suggest that the decedent's legal representative or closest available relative

4  gave consent for Mr. Richardson to administer Versed to the decedent. Therefore, Plaintiffs have

5  pled factual allegations supporting the elements of battery in a medical context. Taking the

6  allegations as true, if Mr. Richardson administered Versed into the decedent's body even though

7  the decedent was not resisting arrest and could not consent, thus resulting in the decedent's death,

8  these facts could constitute battery.

9      Defendants argue that in an emergency, there is no duty to obtain consent. Motion at

10  19. This rule statement is correct, as "the law provides that in an emergency consent is implied."

11  *Cobbs v. Grant,* 8 Cal. 3d at 243. They assert that this was an emergency situation because the

12  decedent was in need of medical aid and was experiencing medical or mental health crisis. SAC ¶

13  21. But whether there was a medical emergency here that warranted the injection of Versed is at

14  least a factual question inappropriate for resolution on a motion to dismiss. The Court denies

15  summary judgment and thus cannot dismiss Plaintiff's claim for assault and battery because

16  factual issues remain.

17  E.     Count 6: False Arrest and Imprisonment

18      Defendants move to dismiss the false arrest and imprisonment claims by arguing that they

19  did not deprive the decedent of his freedom of movement as he was already restrained and in

20  custody. Motion at 20.

21      "The statutory definition of false imprisonment, like that of battery… is in the Penal Code:

22  'False imprisonment is the unlawful violation of the personal liberty of another.'" California P.C.

23  236; *see Parrott v. Bank of America*, 97 C.A.2d 14, 22, 217 P.2d 89 (1950) (explaining that the

24  definition of crime and tort are the same). False imprisonment involves the intentional

25  confinement of another against the person's will. (a) [§ 499] Definition and Distinctions., 5

26  Witkin, Summary 11th Torts § 499 (2023). The elements are (1) nonconsensual, intentional

27  confinement of a person, (2) without lawful privilege, (3) for an appreciable period of time,

28  however brief. *See Easton v. Sutter Coast Hosp.*, 80 C.A.4th 485, 496 (2000); Rest.2d, Torts § 35;

United States District Court
Northern District of California

1    on pleading cause of action, *see* 5 *Cal. Proc.* (5th), *Pleading,* § 763 et seq.  A false arrest is one

2    way to commit a false imprisonment; i.e., because the arrest involves detention or restraint, it

3    always involves imprisonment.  False arrest and false imprisonment are therefore not separate

4    torts.  *Moore v. San Francisco* (1970) 5 C.A.3d 728, 735, 85 C.R. 281; *Collins v. San Francisco*

5    (1975) 50 C.A.3d 671, 673, 123 C.R. 525.

6              In alleging false arrest, Plaintiffs argue that Defendants did not have "any facts or

7    information that constituted probable cause" that the decedent committed or was about to commit

8    a crime, and also "lacked reasonable suspicion" to detain the decedent.  SAC ¶ 73.  Because the

9    Court finds that Plaintiffs sufficiently alleged that Mr. Richardson assisted police officers in

10    detaining and arresting the decedent, Mr. Richardson could be liable for the false arrest claim if he

11    acted in a law enforcement rather than medical capacity.

12              As for false imprisonment, Plaintiffs have sufficiently alleged the first element of a claim

13    by asserting that Defendants "exercised force to restrain, detain, and confine [the decedent],

14    putting restraint on [the decedent's] freedom of movement, and compelled [the decedent] to

15    remain and/or move against his well."  SAC ¶ 74.  The decedent was unable to consent to the

16    handcuffing and the Versed injection which left him sedated and unable to move.  Plaintiffs have

17    also sufficiently alleged the third element of a false imprisonment claim because the decedent was

18    confined for an appreciable period.  The second element, whether Defendants acted "without

19    lawful privilege," is at least a disputed issue of fact.  Plaintiffs allege that the decedent was "in

20    need of medical aid" and was "experiencing a medical or mental health crisis."  SAC ¶¶ 21, 23-24.

21    But conversely, they also allege that decedent was not resisting and was calm, and therefore may

22    not have been in need of a chemical restraint.

23              Therefore, the Court denies dismissal of the false arrest and imprisonment claim.

24    F.        Damages & Attorney's Fees

25         Defendants move to strike Plaintiff's prayer for punitive damages and attorney's fees, arguing

26    that the factual allegations are insufficient to support such relief.  Motion at 21-22.

27              1.        Punitive Damages

28                        a.        Under Section 1983

13

1

2

3

A jury can assess punitive damages in a federal Section 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 51 (1983).

4

5

6

7

8

9

10

Here, Plaintiff's alleged facts are not likely to support a claim that Mr. Richardson's conduct was "motivated by evil motive or intent" or involved "reckless or callous indifference" to the decedent's rights.  Plaintiffs allege that Mr. Richardson "did not aspirate the syringe," and that it is a "critical step" and a "simple action," SAC ¶ 23, but these claims do not show the heightened culpability that punitive damages requires.  *See In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1147 (N.D. Cal. 2018) (the "proper procedural mechanism for challenging punitive damages" is a Rule 12(b)(6) motion)).

11

b.    State claims

12

13

14

15

16

17

18

19

For the Plaintiff's state claims, punitive damages may be available when defendants' actions were as the result of oppression, fraud, or malice.  Cal. Civ. Code § 3294(a). The standard is "clear and convincing evidence" of oppression, fraud, or malice.  Cal. Civ. Code § 3294(a)-(c). Defendants argue that Plaintiffs have failed to allege oppression, fraud, or malice.  Motion at 21-22.  The Court agrees with Defendants that Plaintiff's alleged facts do not show Mr. Richardson acted with oppression, fraud, or malice when he failed to aspirate the syringe while administering Versed to the decedent.  The Court dismisses Plaintiff's request for punitive damages under the state law claims.

20

2.    Attorney's Fees

21

22

23

42 U.S.C. § 1988 allows for attorney's fees for plaintiffs who prevail in Section 1983 actions.  Because the Court denies Defendant's motion to dismiss the Section 1983 claims, it denies the motion to strike the related request for attorneys' fees under Section 1983.

24

**VI.    CONCLUSION**

25

26

27

28

The Court GRANTS dismissal of Count 3 (Bane Act). The Court GRANTS dismissal of Count Four (Negligence) with leave to amend.  The Court DENIES the motion to dismiss Counts One and Two (Section 1983), Count Five (Assault and Battery), and Count Six (false arrest and imprisonment).

United States District Court
Northern District of California

14

1    The Court GRANTS the motion to strike Plaintiffs' prayer for punitive damages.  The

2  Court DENIES the motion to strike Plaintiffs' request for attorney's fees under Section 1983.

3    The Court gives Plaintiffs 21 days from the date of this order to file an amended complaint.

4  This Order disposes of Docket No. 56.

5    **IT IS SO ORDERED**.

6

7  Dated: March 15, 2024

8

9                                          _____

10                                          EDWARD M. CHEN
                                            United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28