**JOHN L. BURRIS, ESQ., SBN 69888**
**BEN NISENBAUM, ESQ., SBN 222173**
**JAMES COOK, ESQ., SBN 300212**
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Center
7677 Oakport Street, Suite 1120 Oakland, CA 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
Email: John.Burris@johnburrislaw.com
Email: Ben.Nisenbaum@johnburrislaw.com
Email: James.Cook@johnburrislaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUTZALENKO, et al.<br><br>    Plaintiffs,<br>  vs.<br><br>CITY OF RICHMOND, et al.,<br><br>    Defendants. | CASE NO.: 3:22-cv-02130-EMC<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>**Conference Date**: August 20, 2024<br>**Time:** 2:30 p.m.<br>**Location**: San Francisco, - Videoconference Only<br><br>**Trial Date**: None Set<br><br>Judge: Hon. Edward M Chen |

Pursuant to the Courts Status Order, the parties submit the following Joint Status Report:

**1.**  Jurisdiction and Service

Plaintiffs: Plaintiffs filed this case in federal court and asserts federal question jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§1391(b). All defendants have been served in this matter.

Defendants City of Richmond, Chief of Police Bisa French, and Officers Tom Tran, Mark Hall, and Cedric Tagorda ("City Defendants") and Defendants American Medical Response West and Damon Richardson: Defendants do not contest federal jurisdiction, personal jurisdiction or venue.

**2.** Facts

**a.** Plaintiffs' Contention

On March 10, 2021, the Richmond Police Department received a call for service about a man causing a disturbance in a local furniture store on the 12600 block of San Pablo Avenue. The man was described as a white man in a black hoodie and jeans. Defendant RPD Officer Tom Tran arrived at the scene first and, from his patrol car, saw a man matching that description walking down San Pablo Avenue. That man was IVAN GUTZALENKO. Defendant TRAN requested via radio that an ambulance stage nearby, then approached IVAN GUTZALENKO on foot. Immediately upon making verbal contact with IVAN GUTZALENKO, Defendant TRAN realized that IVAN GUTZALENKO was in need of medical aid and was possibly intoxicated and/or experiencing a medical or mental health crisis. IVAN GUTZALENKO had a dark purple mark on his forehead, was bleeding profusely from one of his hands, and had difficulty focusing on and communicating with Defendant TRAN. As IVAN GUTZALENKO began to walk southbound down San Pablo Avenue, Defendant TRAN followed behind. IVAN GUTZALENKO was visibly in physical distress and appeared to be having difficulty breathing. Defendant TRAN questioned IVAN GUTZLENKO about what was wrong, and IVAN GUTZALENKO responded "I can't breathe." Before making it to the end of the block, MR. GUTZALENKO collapsed and began writhing around on the ground, still breathing in a distressed manner. As MR. GUTZALENKO shifted around on the ground, Defendant TRAN used his hand to attempt to keep IVAN GUTZALENKO positioned on his side, and verbally encouraged IVAN GUTZALENKO to remain on his side to better effectuate his breathing.

Shortly after IVAN GUTZALENKO fell to the ground, Defendant RPD Officer MARK HALL arrived on the scene. Defendant HALL joined Defendant TRAN in questioning MR. GUTZALENKO about his identity, what was wrong with him, if he had taken any drugs or other substances that they should be aware of in order to help him, and other questions. During this time, IVAN GUTZALENKO continued his labored breathing and Defendant TRAN continued trying to keep IVAN GUTZALENKO on his side in a "recovery" position. Minutes later, an AMRW

ambulance arrived. As the AMRW responders began to bandage IVAN GUZTALENKO's hands, he became agitated and attempted to keep his hands away from them by moving his hands and body. Defendants TRAN and HALL then attempted to handcuff IVAN GUTZALENKO in order to gain his compliance with AMRW responders. As Defendant HALL held IVAN GUTZALENKO's left arm, Defendant TRAN used his body weight to pin IVAN GUTZALENKO to the ground face down in a prone position, by placing his knee into IVAN GUTZALENKO's back and leaning forward onto that knee. Defendant TRAN placed handcuffs around IVAN GUTZALENKO's right wrist, then handed them off to Defendant HALL, who attempted to place the other end of the handcuffs around IVAN GUTZALENKO's left wrist. As Defendant HALL tried to complete the handcuffing, Defendant TRAN continued applying his body weight onto IVAN GUTZALENKO's back to keep him pinned in a prone position, and forcibly kept IVAN GUTZALENKO's right arm positioned behind his back. Around this time, Defendant RPD Officer CEDRIC TAGORDA joined in and held IVAN GUTZALENKO's legs down while Defendants TRAN and HALL tried to handcuff him. As IVAN GUTZALENKO struggled to breathe in that prone, asphyxiating position, and under Defendants' body weight, he told Defendants "I can't breathe!" Defendant TRAN continued using his knee to keep IVAN GUTZALENKO pinned down in a prone position, despite understanding that IVAN GUTZALENKO appeared to be experiencing a medical emergency and was struggling to breathe. Defendant HALL threatened to use a Taser and pepper spray on IVAN GUTZALENKO, despite understanding the same. Defendants finally handcuffed IVAN GUTZALENKO when he suddenly ceased struggling and went limp, after roughly 2 to 3 minutes. During that time, IVAN GUTZALENKO was in a prone or modified prone position on the ground and compressed by Defendants' body weight and force.

    After handcuffing IVAN GUTZALENKO, the Officers put him into the recovery position. GUTZALENKO was still breathing. He was not resisting, thrashing, or moving in any way. He did not pose any threats to the officers, the paramedics, himself, or the public. While GUTZALENKO was handcuffed, and remaining still on the ground, AMRW paramedic RICHARDSON made the decision to use "Versed," a chemical restraint, on GUTZALENKO. RICHARDSON then injected

Gutzalenko with the drug Versed, which is also known as "Midazolam." Contrary to proper medical use, RICHARDSON used Versed on GUTZALENKO while Gutzalenko showed no signs of any behavioral issue or agitation. RICHARDSON also failed to "aspirate" the syringe prior to administering the medication, meaning he did not check to see if the needle had penetrated a vein, which is a critical step since the Midazolam doses permitted to be administered by AMRW depend on whether the dosage is administered intramuscularly (which is taken up of the body much more slowly and in lesser concentration) as opposed to intravenous administration (which is taken up by the body much faster and in much greater concentration, and is much more dangerous to the patient than intramuscular administration). Aspiration is the simple action of pulling the plunger back after the needle is placed in the skin, to determine whether blood flows back into the syringe. If blood flows back in, then the needle is in a blood vessel.  For intramuscular administration, the needle must be withdrawn, re-inserted, and re-aspirated.  All of RICHARDSON's action in administering the Versed are clearly visible on the video, and it is clear from the video that he did not aspirate the syringe. RICHARDSON then administered a dose of versed that was meant for the muscle directly into GUTZALENKO's vein instead. GUTZALENKO stopped breathing with 90 seconds of the dose of Versed, consistent with intravenous administration of an overdose of Versed. The AMRW technicians then took IVAN GUTZALENKO to Summit Hospital in Oakland, where he was pronounced dead.

After an autopsy conducted on March 11, 2021, the Contra Costa County Coroner's Division determined that IVAN GUTZLANEKO's cause of death was prone restraint asphyxia and cardiac arrest while under the influence of methamphetamine.

Despite being disoriented and in a medical emergency, IVAN GUTZALENKO remained non-threatening throughout his encounter with Defendants TRAN, HALL, and TAGORDA, and reasonable officers would have understood that IVAN GUTZALENKO posed no threat to them or others. Similarly, RICHARDSON, as an AMRW paramedic, should have known that it was excessive and unreasonable force to use the chemical restrain Versed to restrain GUTZALENKO while Mr. GUTZALENO was cuffed, in the recovery position, and not resisting in any way. At the time of this

death, IVAN GUTZALENKO had a recreational amount of methamphetamine in his system – in an amount too low to cause his death. Defendants had no knowledge of IVAN GUTZALENKO's use of methamphetamine at the time of this incident.

During substantial periods of time, Defendants TRAN, HALL, and TAGORDA each kept their own body weight on IVAN GUTZALENKO's back, arms, and legs to keep him in a prone position on the ground without objectively reasonable justification. Reasonable officers would have clearly known that such conduct constituted excessive force under these circumstances, and posed a substantial risk of death or serious injury to IVAN GUTZALENKO as the Ninth Circuit explained in *Drummond v. City of Anaheim*, 343 F.3d 1062 (9th Cir. 2003), *cert. denied*, 542 U.S. 918 (2004). During those times, reasonable officers, post-*Drummond*, would have understood that they were using deadly force. Defendants gave no warning that they might use deadly force. Defendants TRAN, HALL, TAGORDA, and RICHARDSON acting as integral participants, and under the totality of the circumstances, used, caused the use of, and tolerated the use of a high level of excessive and injurious force against IVAN GUTZALENKO that in fact caused his death. The totality of the force used and tolerated by Defendants TRAN, HALL, TAGORDA, and RICHARDSON was unnecessary, excessive, and deadly. Further, none of the defendant officers intervened to stop other officers, or RICHARDSON, from using the excessive and illegal force that was evident in front of them.

Defendants TRAN, HALL, TAGORDA, and RICHARDSON chose to restrain IVAN GUTZALENKO in the manner they did ostensibly in order to facilitate medical care. Yet, Defendants used a level of force so that their restraint of IVAN GUTZALENKO constituted an arrest. Defendants lacked probable cause to believe IVAN GUTZALENKO had committed any arrestable crime, and they lacked reasonable suspicion to lawfully detain IVAN GUTZALENKO to investigate any crime.

/ / /

/ / /

    **b.**  City Defendants' Contention

The City Defendants deny Plaintiffs' allegations and claim that their conduct was lawful and reasonable given the totality of the circumstances confronting the officers. While City Defendants dispute certain allegations and contentions in Plaintiffs' statement, the disputes are not relevant to the upcoming case management conference and need not be addressed herein. The individual City Defendants further aver that they are entitled to qualified immunity as their actions were objectively reasonable given the information known to them at the time, as well as the decedent's actions. City Defendants further dispute Plaintiffs' characterization of the various facts and also dispute Plaintiffs' claimed damages.

    **c.**  Defendants American Medical Response West and Damon Richardson's Contentions

Defendants American Medical Response West and Damon Richardson deny plaintiff's allegations and the facts asserted within plaintiff's above referenced contentions. Defendants will claim that their care and treatment complied with the applicable standard of care. Defendants will also allege that they are entitled to qualified immunity pursuant to Health and Safety Code section 1799.106.

    **3.**  Legal Issues

The complaint currently asserts the following federal claims against the Defendants: 1) Section 1983 Violation; 2) Section 1983 Violation (*Monell* – Municipal and Supervisory Liability); 3) Violation of California Civil Code §52.1; 4) Negligence; 5) Assault and Battery; 6) False Arrest and Imprisonment.

These claims raise at least the following issues: 1) Whether the officers' use of force was objectively unreasonable. 2) Whether Richardsons' use of force was objectively unreasonable; 3)

Whether Richardsons' actions served a law enforcement function; 4) Whether policies and procedures, failure to train, or failure to reprimand gave rise to the constitutional violations.

### b. City Defendants' Statement

Defendants contend the principle legal and factual issues in dispute include the following:

i. Whether probable cause and/or a reasonable suspicion existed for Defendants to detain/arrest Ivan Gutzalenko;

ii. Whether Defendants violated Ivan Gutzalenko's right to be free from unreasonable searches and seizures as secured by the Fourth Amendment to the U.S. Constitution;

iii. Whether Defendants violated Ivan Gutzalenko's right to be free from excessive and unreasonable deadly force in the course of an arrest or detention as secured by the Fourth Amendment to the U.S. Constitution;

iv. Whether Defendants wrongfully interfered with Plaintiff N.G.'s and N.I.G.'s familial relationship with their father, in violation of the First and Fourteenth Amendments to the U.S. Constitution, which provide for the right to companionship, society, and support of each other free from governmental interference (per the due process standard);

v. Whether the individual Defendants are entitled to qualified immunity;

vi. Whether the allegedly unconstitutional actions and/or omissions of Defendants, were, under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), pursuant to the customs, policies, practices, and/or procedures of Defendant City of Richmond;

vii. Whether Defendant City of Richmond, Defendant Chief of Police Bisa French or Does 1–10 are supervisorily liable by failing to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants Tran, Hall, and Tagorda, and Does 1–10, and other RPD

personnel, with deliberate indifference to Plaintiffs' constitutional rights, or for their ratification of the individual officers' unlawful conduct;

      viii.    Whether, pursuant to California Civil Code § 52.1, Defendants Tran, Hall, Tagorda, and French violated Ivan Gutzalenko's rights with reckless disregard or by threat, intimidation, or coercion that were undertaken with the specific intent of interfering with a constitutionally protected right;

      ix.    Whether, pursuant to California common law, Defendants Tran, Hall, Tagorda, and French were negligent;

      x.    Whether, pursuant to California common law, Defendants Tran, Hall, and Tagorda subjected Ivan Gutzalenko to assault and battery;

      xi.    Whether, pursuant to California common law, Defendants Tran, Hall, and Tagorda subjected Ivan Gutzalenko to false arrest or imprisonment;

      xii.    Whether, pursuant to California common law, Defendant City of Richmond was negligent in hiring, investigating, training, supervising, and disciplining Defendants Tran, Hall, and Tagorda;

      xiii.    Whether the immunities promulgated within the Government Code preclude Plaintiffs' state law claims; and

      xiv.    Whether Plaintiffs' claims against the supervisory individual Defendants are legally precluded and/or redundant of their Monell claims against the City.

      Defendants American Medical Response West and Damon Richardson Statement

      The principle legal and factual issues in dispute as to these defendants include the following:

      i.    Whether Defendants wrongfully interfered with Plaintiff N.G.'s and N.I.G.'s familial relationship with their father, in violation of the First and Fourteenth Amendments to the U.S.

Constitution, which provide for the right to companionship, society, and support of each other free from governmental interference (per the due process standard);

  ii. Whether the allegedly unconstitutional actions and/or omissions of Defendants, were, under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), pursuant to the customs, policies, practices, and/or procedures of Defendant City of Richmond;

  iii. Whether Defendants AMR West and Damon Richardson are supervisorily liable by failing to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendant Damon Richardson, with deliberate indifference to Plaintiffs' constitutional rights, or for their ratification of Damon Richardson's alleged unlawful conduct;

  iv. Whether Defendants AMR West and Damon Richardson are entitled to qualified immunity pursuant to Health and Safety Code section 1799.106 as to the state law claims;

  v. Whether, pursuant to California common law, Defendants AMR West and Damon Richardson subjected Ivan Gutzalenko to assault and battery;

  vi. Whether, pursuant to California common law, Defendants AMR West and Damon Richardson subjected Ivan Gutzalenko to false arrest or imprisonment.

  **4.** Motions

Plaintiffs anticipate filing motions in limine, and Daubert motions.

City Defendants' Statement.

Defendant Chief French is currently contemplating filing a Motion for Judgment on the Pleadings under Rule 12(c) based upon her lack of involvement in the subject incident and the fact that Plaintiffs have also named the City as a Defendant. Pursuant thereto, Chief French contends that Plaintiffs' claims against her are redundant and superfluous of the claims against the City.

Defendants further anticipate filing a Motion for Summary Judgment or Partial Summary Judgment, as well as a Motion to Bifurcate.

**Defendants American Medical Response West and Damon Richardson Statement**

Defendants anticipate filing a Motion for Summary Judgment or Partial Summary Judgment.

**5.** **Amendment of Pleadings**

Plaintiffs do not anticipate a need to amend the pleadings at this stage, but will approach the court if such a need arises.

**City Defendants' and American Medical Response West and Damon Richardson Statement**

Defendants anticipate objecting to any further amendments of the pleadings at this stage, but will evaluate any such requested amendment if and when it arises.

**6.** **Evidence Preservation**

Both Plaintiffs, City Defendants and American Medical Response West and Damon Richardson are aware of their duty to preserve evidence and have taken steps to preserve all potentially relevant evidence.

**7.** **Disclosures**

Plaintiffs, City defendants, and defendants American Medical Response West and Damon Richardson have completed their initial disclosures.

**8.** **Discovery**

The Plaintiffs and City Defendants have participated in written discovery and American Medical Response West has served responses to plaintiffs' written discovery. The parties have depositions currently set for September.

**9.** Class Actions

This is not a class-action matter.

**10.** Related cases

The parties are unaware of any related cases.

**11.** Relief

Plaintiffs are seeking general, special, and punitive damages in an unspecified amount.

**12.** Settlement and ADR

The parties attended a settlement conference on June 24, 2024 before the honorable Magistrate Judge Thomas S. Hixson. The case did not settle.

Plaintiffs prefer to discuss additional ADR at the Case Management Conference.

**13.** Consent to Magistrate Judge for All Purposes

The parties have not consented to proceeding before a Magistrate Judge.

**14.** Other reference

The parties do not believe the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.** Narrowing of Issues

None at this time.

**16.** Expedited Schedule

The parties do not request an expedited schedule at this time.

**17.** Scheduling:

<u>Schedule Per Docket No. 74</u>

Close of non-expert discovery:					July 10, 2025

Expert Disclosure:						July 10, 2025

| | |
|---|---|
| Rebuttal Expert Disclosure: | July 31, 2025 |
| Close of expert discovery: | August 21, 2025 |
| Deadline to file dispositive motions: | August 28, 2025 |
| Deadline for hearing dispositive motions: | October 2, 2025 |
| Final Pretrial conference: | December 16, 2025 |
| Jury Selection / Trial: | January 12, 2026 |

**18.** Trial:

The parties have demanded a jury trial, expected to last approximately 7-10 days.

**19.** Disclosure of Non-Party Interested Entities or Persons:

Plaintiff:  None.

Defendants:  None

**20.** Other matters

None at this time.

Dated:  August 9, 2024            **THE LAW OFFICES OF JOHN L. BURRIS**

/s/ *James Cook*
James Cook
Attorney for Plaintiffs

Dated:  August 9, 2024            **ORBACH HUFF & HENDERSON LLP**

By: /s/ *Nicholas D. Fine*
Nicholas D. Fine
Attorney for Defendants City of Richmond, Bisa French, Tom Tran, Mark Hall, And Cedric Tagorda

Dated:  August 9, 2024            **HINSHAW, MARSH, STILL & KANTER, LLP**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                By: /s/ *Scott R. Kanter*
                Scott R. Kanter
                Attorney for Defendants American Medical Response West and Damon Richardson