1  JOHN L. BURRIS, Esq., SBN 69888
2  BENJAMIN NISENBAUM, Esq., SBN 222173
   JAMES COOK, Esq., SBN 300212
3  **BURRIS, NISENBAUM, CURRY & LACY, LLP**
   7677 Oakport Street, Suite 1120
4  Oakland, California 94621
   Telephone: (510) 839-5200
5  Facsimile: (510) 839-3882
   John.Burris@johnburrislaw.com
6  Ben.Nisenbaum@johnburrislaw.com
   James.Cook@johnburrislaw.com
7
8  Attorneys for Plaintiffs IVAN GUTZALENKO, Deceased, Successors in Interest N.G. AND N.I.,
   minors through their mother and Next Friend, Honey Gutzalenko, individually and as Co-successors
9  in Interest for IVAN GUTZALENKO, Deceased,

10                     UNITED STATES DISTRICT COURT
11                    NORTHERN DISTRICT OF CALIFORNIA

12
13 IVAN GUTZALENKO, Deceased, through his      Case No.:  3:22-CV-02130-EMC
   Co- Successors in Interest, N.G. and N.I.G.,
14 minors through their mother and Next Friend,  **PLAINTIFFS' OPPOSITION TO**
   Honey Gutzalenko, individually and as Co-    **MOTION FOR SUMMARY**
15 successors in Interest for IVAN              **JUDGMENT BY DEFENDANTS**
   GUTZALENKO, Deceased,                        **AMERICAN MEDICAL RESPONSE**
16                                              **WEST AND DAMON RICHARDSON**

17              Plaintiffs,                      DATE:    April 17, 2025
                                                TIME:    1:30 p.m.
18        v.                                     DEPT.:   Courtroom 5, 17th Floor,
                                                JUDGE:  Hon. Edward M. Chen
19
20 CITY OF RICHMOND, a public entity;           Complaint filed: August 9, 2023
   RICHMOND CHIEF OF POLICE BISA
21 FRENCH, in her individual and official
   capacities; RICHMOND POLICE OFFICERS
22 TOM TRAN, MARK HALL, and CEDRIC
   TAGORDA; and DOES 1-10, Jointly and
23 Severally,
24
25              Defendants.
26

27                                    i
   PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN
28        MEDICAL RESPONSE WEST AND DAMON RICHARDSON
                              [22-cv-2130-EMC]

## **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................... 1

II. STATEMENT OF FACTS ................................................................................................. 2

  A.  Richardson's Decided to Chemically Restrain Ivan Gutzalenko in Order to Enforce ............. 2

Compliance with the City of Richmond Police Officers. ........................................................ 2

  B.  Mr. Gutzalenko Was Subdued, Handcuffed, and Struggling to Breath When Richardson ...... 3

Administered the Versed. ........................................................................................................ 3

  C.  Injecting Mr. Gutzalenko with the Versed Was a Joint Effort Between the Paramedic and .... 4

Law Enforcement Defendants. ............................................................................................... 4

  D. Defendant Richardson Improperly Administered the Versed. ............................................ 5

    1. Whether Richardson Administered the Proper Dosage of Versed ..................................... 5

    2. Whether Richardson Actually Administered the Versed Intramuscularly or Intravenously ... 6

    3. Whether Richardson Should Have Foregone Administering the Versed Based on Mr.
Gutzalenko's Changed Demeanor ......................................................................................... 7

    4. Whether Versed Was Improper Due to Mr. Gutzalenko's Apparent Intoxication ................. 8

    5. Whether Versed Was Improper Due to Mr. Gutzalenko's Prolonged Inability to Breathe ..... 8

  F.  The Versed May Have Played a Factor in Causing Mr. Gutzalenko's Death. .......................... 9

III. LEGAL ARGUMENT ..................................................................................................... 9

  A.  Legal Standard ................................................................................................................ 9

  B.  Plaintiffs' Section 1983 Claims ...................................................................................... 11

    1. Defendants Were State Actors ...................................................................................... 11

  C.    Plaintiffs' *Monell* Claim ............................................................................................. 14

  D.   Plaintiffs' State Law Claims ........................................................................................ 16

    1.  Defendants Are Not Entitled to Qualified Immunity .......................................................... 16

    2.  Defendant Richardson Acted With Gross Negligence ........................................................ 17

    3.  Conflicting Expert Opinions Preclude Summary Judgment ................................................ 18

ii

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN
MEDICAL RESPONSE WEST AND DAMON RICHARDSON
[22-cv-2130-EMC]

4.   Plaintiff's Remaining State Law Claims Survive ................................................. 20

IV. CONCLUSION.................................................................................................................... 21

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN
MEDICAL RESPONSE WEST AND DAMON RICHARDSON
[22-cv-2130-EMC]

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.,* 738 F.3d 960 (9th Cir. 2013) ............................ 19

4

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) ...................................................................... 10

5

*Brown v. Ransweiler,* 171 Cal. App. 4th 516 (2009) .......................................................................... 20

6

*Brunette v. Humane Society of Ventura County*, 294 F.3d 1205 (9th Cir. 2002) ........................ 11, 12

7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................................. 10

8

*City of Pomona v. SQM N. Am. Corp.,* 750 F.3d 1036 (9th Cir. 2014) ............................................ 20

9

*Colich & Sons v. Pacific Bell*, 198 Cal.App.3d 1225 (Ct.App. 1988) .............................................. 17

10

*Collins v. Womancare*, 878 F.2d 1145 (9th Cir. 1989) ...................................................................... 11

11

*Dennis v. Sparks*, 449 U.S. 24 (1980) ............................................................................................... 11

12

*Eastburn v. Regional Protection Authority*, 31 Cal.4th 1175 (2003) ............................................... 18

13

*Espinosa v. City & County of San Francisco*, 598 F.3d 528 (9th Cir. 2010) ................................... 16

14

*Fairley v. Luman*, 281 F.3d 913 (9th Cir. 2002) ............................................................................... 15

15

*Franklin v. Fox*, 312 F.3d 423 (9th Cir. 2002) .................................................................................. 11

16

*Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442 (10th Cir. 1995) ..................................... 11

17

*Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011) ............................................................. 16

18

*Haas v. County of El Dorado*, 2012 WL 1414115 (E.D. Cal. Apr. 23, 2012).................................. 12

19

*Long v. County of Los Angeles*, 442 F.3d 1178 (9th Cir. 2006) ........................................................ 15

20

*Mathis v. Pac. Gas & Elec. Co*., 75 F.3d 498 (9th Cir. 1996) .......................................................... 11

21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).................................. 10, 11

22

*McKenzie v. Lamb*, 738 F.2d 1005 (9th Cir.1984)............................................................................. 21

23

*Mitchell v. Cnty. of San Diego,* 243 F. App'x 242 (9th Cir. 2007) ................................................... 18

24

*Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984 (9th Cir. 2013)............................................................. 11

25

*Newmaker v. City of Fortuna*, 842 F.3d 1108 (9th Cir. 2016)........................................................... 14

26

*Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992) .............................................................................. 15

27

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN
MEDICAL RESPONSE WEST AND DAMON RICHARDSON
[22-cv-2130-EMC]

28

*Plumeau v. Sch. Dist. No. 40*, 130 F.3d 432 (9th Cir.1997) ........................................... 21

*Polk v. Yee*, 481 F.Supp.3d 1060 (E.D. Cal. 2020) ........................................................ 11

*Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010) ........................................................... 18

*Rawson v. Recovery Innovations, Inc.,* 975 F.3d 742 (9th Cir. 2020) ............................... 13

*Santos v. Gates*, 287 F.3d 846 (9th Cir. 2002) ............................................................. 16

*Scott v. Harris*, 550 U.S. 372 (2007) .......................................................................... 10

*T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626 (9th Cir. 1987) ............. 10

*United States v. Sandoval-Mendoza*, 472 F.3d 645 (9th Cir. 2006) ................................. 18

*Wright v. City of Los Angeles*, 219 Cal. App. 3d 318 (Ct. App. 1990) .............................. 17

**Statutes**

Federal Rules Civil Procedure 56(a) ............................................................................. 9

**California Statutes**

Government Code § 820.4 ......................................................................................... 21

Health and Safety Code §1799.106 ..................................................................... 16, 17

# I.  INTRODUCTION

In their Motion for Summary Judgment, Defendants admit that AMR-West paramedic Richardson injected Ivan Gutzalenko with Versed, a chemical restraint, after he was handcuffed, completely subdued, and no longer resisting the defendant officers. *See* Dkt. No. 99, pp. 5-6. Summary judgment is improper because genuine issues of material fact remain regarding the legal and/or medical purpose behind Defendant Richardson's injecting Mr. Gutzalenko with Versed, precluding a finding that Richardson was not acting under color of law. Material fact questions regarding Richardson's conduct in administering the Versed, and whether this medication played a role in causing Mr. Gutzalenko's death, preclude a finding that Richardson's conduct did not violate Mr. Gutzalenko's Constitutional and State law rights such that the moving Defendants are immune from liability. Material fact disputes also preclude a finding on Plaintiffs' *Monell* claim, as Plaintiffs have presented this Court with evidence and allegations linking AMR-West's policy (or lack thereof) in connection with Richardson's conduct, that AMR-West ratified Richardson's conduct despite it violating County protocol, and that AMR-West failed to properly train its paramedics on the safe and lawful use of Versed.  Defendants' Motion for Summary Judgment should be denied on all claims that require a factual determination on these issues (e.g., Plaintiffs' Fourth Amendment, section 1983, and State law claims).

Defendants "put the cart before the horse" by filing their Motion for summary judgment well before the cut-offs for both regular discovery and expert discovery. Defendants support their position through declarations of an expert witness whom Plaintiffs have not yet deposed and whose opinions Plaintiffs' experts have not rebutted. Moreover, Defendants' expert's declaration offers conclusory statements and improper opinions as to the material facts in dispute, such as: (1) Whether Defendant Richardson injected Versed into Mr. Gutzalenko's deltoid intramuscularly and not intravenously; (2) Whether Defendant Richardson abided by the standard of care when he administered the Versed; and (3) Whether the Versed was a causal factor in Mr. Gutzalenko's death. Plaintiffs' own expert(s) could counter Defendants' expert's declarations once Plaintiffs are given

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN MEDICAL RESPONSE WEST AND DAMON RICHARDSON
[22-cv-2130-EMC]

1  the full complement of fact discovery. Therefore, Defendants' Motion for Summary Judgment

2  should be denied on all claims that require a factual determination on questions of material facts.

3        Plaintiffs' Opposition to Defendants AMR-West and Richardson's Motion for summary

4  judgment is supported by the Declaration of Benjamin Nisenbaum and the Exhibits attached thereto,

5  and on any argument, points, evidence raised at the hearing on this matter.

6  **II. STATEMENT OF FACTS**

7        As a paramedic, Defendant Richardson works under the scope that he is allowed by the

8  county or the city he is working under. Richardson Dep. 8:19-25. Richardson has responded to calls

9  for Richmond Police Department events many times over the course of his employment with AMR

10  West. *Id*. 36:14-37:13. Richardson has provided some form of treatment to subjects who are in the

11  custody of Richmond police officers on many occasions, and he admitted that the incident involving

12  Mr. Gutzalenko was one of those times. *Id*. 82:13-18.

13  **A.  Richardson Decided to Chemically Restrain Ivan Gutzalenko in Order to Enforce Compliance with the City of Richmond Police Officers.**

14        When Defendant Richardson decided to go back to the ambulance and draw up the Versed it

15  was before Mr. Gutzalenko was handcuffed. Richardson Dep. 69:20-4; Tagorda BWC at 05:35-

16  05:41. Richardson decided he needed to chemically restrain Mr. Gutzalenko after he observed that

17  Mr. Gutzalenko failed to comply with the defendant police officers' commands and had dislodged

18  one of the officer's body-worn camera. Richardson Dep. 171:3-21, 90:21-91:1; Coroner's Inquest

19  Transcript, Testimony of Damon Richardson 66:24-67:5, 68:1-4. That is, Richardson decided to

20  chemically restrain Gutzalenko to help the officers facilitate the detention, not merely to sedate him.

21  Richardson Dep. 165:18-166:20.

22        Richardson testified that Richmond police officers do not always directly inform the

23  paramedics whether a person is being detained or is in custody, or their law enforcement reasons for

24  detaining a suspect. Richardson Dep. 37:13-20. Whether the subject is a patient or an arrestee, the

25  decision to administer a chemical restraint in the field is always made by a paramedic, not by police

26

27  2

28  PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN MEDICAL RESPONSE WEST AND DAMON RICHARDSON<br>[22-cv-2130-EMC]

officers. *Id.* 70:3-13. As the only paramedic at the scene, Richardson maintains that it was his decision alone whether to use Versed on Mr. Gutzalenko. *Id.,* 72:1-2.

The defendant police officers openly discussed in front of Richardson their belief that Mr. Gutzalenko's behavior needed to be addressed by placing him on a 5150 hold. Tran Dep. 67:2-16. Richardson heard the officers discussing this. Richardson Dep. 37:21-38:23, 52:17-19. Indeed, Richardson testified that he heard the officers threaten to put Mr. Gutzalenko on a 5150 hold. *Id.* at 51:25-52:18. Richardson wrote his Patient Care Report ("PCR") for Mr. Gutzalenko when the events of the incident were most fresh in his mind. *Id.* 50:11-51:2. In the PCR, Richardson wrote: "Patient did state he could not breathe and also stated 'I don't want to be on a 5150' after he heard one of the Richmond PD officers state <u>he was going to place him on a 5150.</u>" PCR Report, p. 22 (emphasis added); Richardson Dep. 50:11-23.

As an AMR West paramedic, Richardson has responded many times to calls where law enforcement is performing a "5150," which is an involuntary, 72-hour, psychological hold. Richardson Dep. 38:24-39:4. Richardson himself is not licensed to perform a 5150. *Id.*, 39:5-6. A 5150 can only be performed by law enforcement and/or certain psychological clinicians. *Id.* 39:7-14. A person cannot refuse or walk away from a 5150 hold. *Id.* 43:4-5. An officer compels the subject to be 5150'd, sometimes (as here) by force. *Id.* 41:6-10. When a person is 5150'd they get detained by police and then transported to a hospital or a psychiatric facility. *Id.,* 39:15-22. In Contra Costa County, the initiating police officer does not ride alongside the person being 5150'd in the ambulance. *Id.* 39:23-40:8. Police officers are in control over 5150 situations until paramedics have the opportunity to take custody of the suspect from the officers. Hall Dep. 91:15-21. It becomes the paramedic's role to make sure that the subject does not try to escape the 5150 or leave the ambulance. Richardson Dep. 41:11-18. In the past when a 5150 patient has tried to leave the ambulance, Richardson pulled the ambulance over and notified the Richmond Police Department so that officers could come back and place the subject back into the ambulance. *Id.* 42:5-11.

**B. Mr. Gutzalenko Was Subdued, Handcuffed, and Struggling to Breath When Richardson Administered the Versed.**

By the time Defendant Richardson returned from the ambulance with the Versed, Mr. Gutzalenko was fully handcuffed. Hall Dep. 120:24-1:21:1. The defendant Richmond police officers did not just handcuff Mr. Gutzalenko, they restrained him on the ground for a significant period of time, some of which occurred in Richardson's presence.  Richardson Dep. 82:23-83:10. Mr. Gutzalenko was subdued, under the officers' physical control, and had gone limp or unresponsive. Tran Dep. 50:12-20; Hall Dep. 120:24-1:21:1. Officer Hall even commented "He's faking like he can't…. He's faking like he's unconscious." Tagorda BWC at 07:32-07:37.

Richardson testified that in spite of Mr. Gutzalenko's change in demeanor, he decided to proceed with administering the Versed to preserve the safety of himself and the officers in the act of moving Mr. Gutzalenko onto the gurney and switching him from handcuffs to gurney restraints. Richardson Dep. 90:21-91:1. In the back of the ambulance patients aren't allowed to be handcuffed. *Id*. 84:12-13. Richardson believed the amount of police officers and Richmond Fire Department personnel on the scene may not have been enough to restrain Mr. Gutzalenko once the handcuffs were removed. *Id*. 150:25-151:2. Richardson was trying to chemically restrain Mr. Gutzalenko, not merely to sedate him. *Id*. 34:15-23; 35:3-6.

## C.  Injecting Mr. Gutzalenko with the Versed Was a Joint Effort Between the Paramedic and Law Enforcement Defendants.

Defendant Officer Tran helped facilitate the injection by pulling back the collar of Mr. Gutzalenko's shirt to expose the area where Richardson injected the Versed. Richardson Dep. 89:6-90:7; Tagorda BWC at 07:43- 07:46. Officer Tran testified he did this for the purpose of facilitating the Versed injection. Tran Dep. 44:12-14, 45:7, 52:16-20. Richmond police officers will often assist with a chemical restraint to the extent that they'll hold a person down or otherwise restrain a person for Richardson to give them the injection.  Richardson Dep. 70:14-22. At the time of the incident, Defendant City of Richmond Police Department policy permitted its officers to assist paramedics in injecting sedatives. Hall Dep. 65:23-66:8.

The Richmond police officers' restraint continued until after Richardson administered the Versed. Richardson Dep. 165:18-166:20. Mr. Gutzalenko never consented to the injection and was

never asked for his consent, but Richardson testified he still would have injected Mr. Gutzalenko with Versed even if he had refused it. *Id*. 138:2-15. The defendant police officers also admitted they had to compel Mr. Gutzalenko to receive medical sedation because he had refused it. Hall Dep. 67:19-68:5.

**D. Defendant Richardson Improperly Administered the Versed.**

As a paramedic Richardson was trained in the use of chemical restraints by his employer, AMR West. Richardson Dep. 10:25-11:2. Richardson relies on AMRW's training and the County's guidelines to provide him with proper training as a paramedic. *Id*. 95:22-96:3. Richardson was only trained to use Versed as a chemical restraint. *Id*. 12:2-6. The generic version of Versed is midazolam. *Id*. 12:7-9. The same rules that apply to administering Versed apply to administering midazolam. *Id*. 12:10-13. Contra Costa County EMS agency does not allow AMRW to use alternatives for midazolam for chemical restraints. *Id*. 146:15-23.

1. Whether Richardson Administered the Proper Dosage of Versed

Richardson has been trained that if he administers too much Versed, it can be lethal. Richardson Dep. 15:16-19.  Richardson contradicted his testimony as to the proper dosage of Versed: at some points he testified that the maximum dose of Versed as a chemical restraint is 10 mg. *Id*. 16:18-20. Other times, Richardson testified the maximum dose is 5 mg. *Id*. 13:21-25.  When he went to the ambulance to retrieve the syringe, Richardson drew up 5mg of Versed, which he testified is "half of the dose that I am able to give in Contra Costa County for somebody in this state." Coroner's Inquest Transcript, Testimony of Damon Richardson 68:11-15. "My thought process was five milligrams would be enough to help calm [Mr. Gutzalenko] down hopefully and that we had enough personnel on scene that once he was calmed down enough, with the three officers and my partner and I and the other three firefighters that we could safely get him on the gurney with just five milligrams of Versed." *Id.,* 69:18-23. However, Richardson failed to monitor Mr. Gutzalenko's heart, breathing, and temperature which would have informed the proper dosage of Versed to prevent an accidental overdose based on the County protocol. *Id*., 23:4-25:9, 94:13-20.

The Versed label states that an initial intravenous dose of Versed for sedation in adult patients may be as little as 1 mg, but "should not exceed 2.5 mg in a normal healthy adult," but Richardson believed this is for intravenous injections only. *Id.* 97:7-16.

2. Whether Richardson Actually Administered the Versed Intramuscularly or Intravenously

While Richardson believed he administered the Versed intramuscularly, he does not know whether it was actually injected intramuscularly or intravenously. Richardson Dep. 97:17-22. Richardson has been trained that hitting a vein is a possibility every time he injects someone intramuscularly. *Id.* 17:20-23. Before injecting Mr. Gutzalenko, Richardson did not do anything to make sure he would not hit a vein. *Id.* 87:25-88:3. Richardson chose to inject the Versed into Mr. Gutzalenko's deltoid because it is a larger muscle, but knew that veins run through that muscle and could not see where those veins were at the time. *Id.* 88:5-16. Richardson injected Mr. Gutzalenko with Versed in the left deltoid without checking to see whether or not he hit a vein. *Id.* 92:13-93:8.

The only technique that Richardson knows of to avoid accidentally injecting a vein is to aspirate the syringe. *Id.* 88:17-23. Aspiration is the process of pulling back on a plunger once injecting the needle into the subject to see if any blood comes back. If blood backflows into the syringe, then a vein has been hit. *Id.* 17:9-19. Richardson would not know if he hit a vein or not unless he checked by aspirating the syringe, but he left it up to chance and chose not to aspirate the syringe before injecting Mr. Gutzalenko with Versed. *Id.* 115:10-116:1. Richardson remembers taking a few classes that taught him that, depending on the situation, aspirating the syringe containing Versed could cause more damage to the patient. Those situations mainly involved subjects being chemically restrained who were acting violently at the moment of the injection. *Id.* 19:1-11.

At the time Richardson administered the Versed Mr. Gutzalenko was not moving, giving Richardson the time and opportunity to aspirate the syringe yet he chose not to do so. *Id.* 100:2-13. Richardson also did not sterilize the area with alcohol where he injected Mr. Gutzalenko, but admits

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN MEDICAL RESPONSE WEST AND DAMON RICHARDSON
[22-cv-2130-EMC]

1   that this is normally something he's supposed to do, and because Mr. Gutzalenko was not moving

2   there was no reason not to sterilize the area prior to the injection. *Id.* 154:19-155:10.

3       3. Whether Richardson Should Have Foregone Administering the Versed Based on Mr.

4       Gutzalenko's Changed Demeanor

5       Richardson relies on AMR's training and the County's guidelines to provide him with

6   proper training as a paramedic. Richardson Dep. 95:22-96:3. Contra Costa County has a protocol

7   that controls the administration of Versed as a chemical restraint in the field by paramedics. *Id.*

8   19:23-22:1. The protocol indicates that patient history (certain situations that paramedics could

9   possibly use the drug for), signs and symptoms, and differential (other aspects that could cause an

10  adult behavior crisis) are considerations in whether to give a person Versed. *Id.* 22:2-24. The

11  protocol differentiates between subjects who are "aggressive or agitated, possible psychosis,

12  possible danger to self or others" and patients with "Excited Delirium Syndrome" who exhibit

13  "paranoia, disorientation, extremely aggressive or violent, hallucinations, tachycardia, increased

14  strength, hypothermia, and clearly a danger to self or others." The former includes people who are

15  not as violent and aggressive while the latter includes people who tend to be more aggressive and

16  dangerous to themselves and others. *Id.* 22:25-23:16. Here, Mr. Gutzalenko still showed signs of

17  life but had ceased "violently" resisting the Richmond police officers before Richardson injected

18  him with Versed. Tagorda BWC at 07:36; Tran Dep. 48:12-23, 51:8-52:7.

19      By the time Richardson got back from the ambulance with the Versed, Mr. Gutzalenko's

20  aggression and the level of his physical resistance had changed to basically zero, as Mr. Gutzalenko

21  was not kicking or thrashing around. Richardson Dep. 125:7-126:8. Richardson observed that Mr.

22  Gutzalenko was not exhibiting extreme aggression or violence, or increased strength. *Id.* 120:3-9.

23  Mr. Gutzalenko had gone from resisting to hardly moving at all. *Id.* 140:9-13. The last time

24  Richardson remembered Mr. Gutzalenko making any volitional movements was before he went to

25  get the Versed drawn up in the ambulance. *Id.* 102:1-20.

26

27                                              7

28  PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN
    MEDICAL RESPONSE WEST AND DAMON RICHARDSON
    [22-cv-2130-EMC]

Richardson believes the "cut off" for when you can inject someone with Versed is when the patient has a GCS of less than 13. The clinical presentation of a GCS of 13 is that the person is still alert but not necessarily able to verbally express themselves, still has some motor functions but less than normal. Richardson Dep. 151:13-153:10. At 10:47:14, Richardson reported that Mr. Gutzalenko was alert but not oriented to time, place, event, or baseline, was confused, and could not answer questions. PCR at p. 5. Just before the Versed was injected (10:47:45), Mr. Gutzalenko's GCS was recorded at 13. *Id*. The Versed was administered at 10:49:00, and one minute later at 10:50:00 Mr. Gutzalenko's GCS was at 3. *Id*.

4. Whether Versed Was Improper Due to Mr. Gutzalenko's Apparent Intoxication

Paramedics are trained to consider the risk of the Versed itself compared to the benefit of what they're trying to achieve by injecting it. Richardson Dep. 148:6-16. As part of his training, Richardson knew he needed to consider whether someone is under the influence of certain types of drugs in case the drug he plans on administering may interfere with whatever they've taken. *Id*. 126:12-19. Richardson was trained about the possibility of Versed interacting with other drugs and causing respiratory depression. *Id*. 13:2-5. Richardson knew from his training that fentanyl, heroin, and other types of opioid could contraindicate with Versed. *Id.,* 128:1-9. In this case, it appeared that Mr. Gutzalenko was under the influence of some drug, but Richardson was not sure which. *Id*. 127:20-25.

5. Whether Versed Was Improper Due to Mr. Gutzalenko's Prolonged Inability to Breathe

Richardson was trained that Versed could cause respiratory depression on its own if it was administered in too high of a dose. Richardson Dep. 13:6-12. Richardson has known this his entire career. *Id*. 13:17-18. Richardson was trained on and aware that one of the side effects of Versed is that it could cause respiratory depression, meaning that if a person had an existing respiratory problem, Versed could exacerbate that problem. *Id*. 46:5-12.

Before the injection Mr. Gutzalenko told Richardson that he couldn't breathe. *Id*. 45:6-15. When someone says they can't breathe or has breathing difficulties, this indicates that they might

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN MEDICAL RESPONSE WEST AND DAMON RICHARDSON
[22-cv-2130-EMC]

have an existing respiratory problem, or a cardiac issue that's causing them to have respiratory problems. *Id*. 45:16-21. CNS depression is a caution for Versed, so a person complaining of shortness of breath is a caution and indicates to give the medication cautiously, giving the medication more slowly at a slower rate. *Id*. 142:6-23.

Richardson admits that Mr. Gutzalenko had also gone blue in the face before he administered the Versed injection. Richardson Dep. 103:21-104:13. Turning blue in the face, or "cyanosis," indicates a lack of oxygenation of the blood, and usually means there has been a compromise in the cardiovascular system or in the respiratory system. *Id*. 105:4-12. When a person treated with Versed turns cyanotic, there is a reversal drug that can be used, but Richardson stated "Contra Costa AMR does not supply us with that." *Id*. 105:13-20. "Contra Costa County does not let us use that drug, so AMR cannot let us use that drug." *Id*. 106:12-13.

**F. The Versed May Have Played a Factor in Causing Mr. Gutzalenko's Death.**

Mr. Gutzalenko stopped breathing and had gone into cardiac arrest within ninety seconds of the dose of Versed, consistent with intravenous administration of an overdose of Versed. *See* Tagorda BWC at 07:43 - 08:50; Herrington Report, p. 3. After administering the Versed, Richardson considered that Mr. Gutzalenko may have suffered an overdose of Versed, but did not tell anyone on the scene. Richardson Dep. 107:4-6. After the injection, Richardson did not count how many breaths per second Mr. Gutzalenko was taking, and did not monitor Mr. Gutzalenko's pulse. *Id*. 94:13-20. Plaintiff's expert, Dr. Herrington opined that "Mr. Gutzalenko's proximal and direct cause of death, on a more than likely than not basis, was iatrogenic midazolam [Versed] overdose with prone restraint positioning as a contributing factor." Herrington Report, pp. 2, 36-37.

## III. LEGAL ARGUMENT

**A. Legal Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty*

9

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN MEDICAL RESPONSE WEST AND DAMON RICHARDSON
[22-cv-2130-EMC]

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. *Id.* Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (internal citation omitted). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence…will  be insufficient; there must be evidence on which the jury could reasonably find for the [non- moving party]." *Anderson*, 477 U.S. at 252.

In deciding a summary judgment motion, this Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson*, at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge…ruling on a motion for summary judgment...." *Id.*, at 255. If the non-moving party's version of the facts is contradicted by the record to the point that a reasonable jury would not believe it, the court should not adopt the nonmoving party's narrative in ruling on a motion for summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987) (internal citation omitted). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita*, 475 U.S. at 587 (citation and internal quotation marks omitted).

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN MEDICAL RESPONSE WEST AND DAMON RICHARDSON
[22-cv-2130-EMC]

**B. Plaintiffs' Section 1983 Claims**

  1. Defendants Were State Actors

To act "under color" of law for § 1983 purposes "does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). The applicable test for the instant matter is the "joint action" test, where "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453 (10th Cir. 1995)). Joint action "requires a substantial degree of cooperative action." *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989). The private party's particular actions must be "inextricably intertwined" with those of the government. *Brunette v. Humane Society of Ventura County*, 294 F.3d 1205, 1211 (9th Cir. 2002) (quoting *Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 503 (9th Cir. 1996)). Joint action subjects a private entity to § 1983 liability where the government "affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party" or has "so far insinuated itself into a position of interdependence" with the private party that it must be recognized as a joint participant in the challenged conduct. *Polk v. Yee*, 481 F.Supp.3d 1060 (E.D. Cal. 2020), aff'd 36 F.4th 939 (9th Cir. 2022) (quoting *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 996 (9th Cir. 2013)).

Here, Defendant Richardson stated the reason behind his decision to chemically restrain Mr. Gutzalenko was because Mr. Gutzalenko had been fighting with the Richmond police officers and failed to comply with their commands. Richardson Dep. 171:3-21, 90:21-91:1. Then, Officer Tran assisted Richardson in physically injecting Mr. Gutzalenko with the Versed. *See* Tagorda BWC 7:43-7:46; Richardson Dep. 89:6-90:7; Tran Dep. 44:12-14, 45:7, 52:16-20. By holding Mr. Gutzalenko down and pushing aside his clothing to help paramedic Richardson access the injection site, Officer Tran actively "affirm[ed], authorize[d], encourage[d], [and] facilitate[d] unconstitutional conduct through [his] involvement" and "so far insinuated [himself] into a position

of interdependence with the [paramedic] that [they] must be recognized as joint participant[s]."
*Naoko Ohno v. Yuko Yasuma*, 723 F.3d at 996. Because the officer's conduct was "inextricably
intertwined" with the paramedic's conduct of administering Versed, their conduct was a joint action
attributable to the state exposing the moving Defendants to § 1983 liability. See *Brunette, supra,*
294 F.3d 1205, at 1211.

This Court previously posed a question in its Order denying Defendants' motion to dismiss
Plaintiff's Fourth Amendment claim: Because Mr. Gutzalenko was already in police custody and
control when Richardson injected the Versed, does this suggest that Paramedic Richardson did not
act to assist law enforcement in the arrest? *See* Dkt. No. 71, p. 7. Defendants answered by arguing
that Richardson was not acting in any law enforcement capacity, citing case law from the Sixth and
Seventh Circuits. *See* Dkt. No. 99, p. 11. Those holdings have no bearings on this case.
Furthermore, at least one district court in California has departed from the referenced Sixth and
Seventh Circuit holdings that a private paramedic acting with a medical purpose entitles him to
qualified immunity from use-of-force claims. *See Haas v. County of El Dorado*, No. 2:12-cv-00265-
MCE-KJN, 2012 WL 1414115, at *4–10 (E.D. Cal. Apr. 23, 2012). The *Haas* Court made clear that
the joint action theory provides a clear path to liability based on the court's examination of the role
actions reveal the actor to play. *Id.* at *8. The *Haas* Court held that the defendants had acted as law
enforcement officers rather than as emergency medical responders, in particular because the
paramedics had injected a tranquilizer into the plaintiff not for the purpose of rendering medical aid
but for the purpose of assisting law enforcement officers in restraining plaintiff. *Id.* at *9.

Ninth Circuit case law also tends to agree with Plaintiffs that Defendant Richardson was a
state actor. In *Rawson v. Recovery Innovations, Inc.,* the Ninth Circuit reversed the lower court's
finding that a private hospital was not a state actor under the "joint action" test where the plaintiff
was involuntarily committed at the hospital and forcibly injected with antipsychotic medication.
*Rawson v. Recovery Innovations, Inc.,* 975 F.3d 742, 745 (9th Cir. 2020). After receiving reports
that the plaintiff had made statements referring to automatic weapons and mass murder, sheriffs

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN
MEDICAL RESPONSE WEST AND DAMON RICHARDSON
[22-cv-2130-EMC]

1   detained the plaintiff, placed him on a mental hold, and he was transported by ambulance to a

2   general hospital. *Id*. After evaluating the plaintiff and successfully petitioning a state court for a 72-

3   hour involuntary commitment, a county mental health professional arranged for the plaintiff to be

4   taken to a private psychiatric hospital where the staff determined that the plaintiff was gravely

5   disabled, forcibly injected him with antipsychotic medications despite his objections, and petitioned

6   for his continued commitment. *Id*. at 746-47.

7          The Ninth Circuit found that any constitutional deprivation effected by the defendants was

8   "in some sense caused by the State's exercise of its right, pursuant to both its police powers and

9   *parens patriae* powers, to deprive Rawson of his liberty for an extended period of involuntary civil

10  commitment." *Ibid*. at 752. Since the defendants were "clothed with the authority of state law"

11  when they detained and forcibly treated the plaintiff beyond the initial 72-hour emergency

12  evaluation period, any resultant constitutional deprivation was caused "by the State's exercise of its

13  right to" commit the plaintiff "for purposes of protecting both the public and Rawson himself." *Id*.

14  Thus, the Ninth Circuit concluded that the facts weigh in favor of finding that the private hospital

15  defendants acted under color of state law. *Id*. Similarly in the instant matter, Defendant Richardson

16  was a state actor subject to Section 1983 liability under the joint action test because he worked in

17  concert with Richmond police officers who summoned AMR West paramedics to the scene,

18  initiated a Section 5150 hold, and physically facilitated Defendant Richardson's unconstitutional

19  conduct in forcibly injecting Mr. Gutzalenko with Versed to carry out the hold.

20         To the extent that Defendant Richardson has been inconsistent as to whether he believed he

21  was aiding the defendant officers in effectuating a 5150 hold on Mr. Gutzalenko, this should favor

22  Plaintiffs. For example, Richardson testified that the Defendant Officers merely discussed the

23  possibility of initiating a 5150 hold on Gutzalenko, whereas, he noted in his PCR that Mr.

24  Gutzalenko expressly stated that he did not want to be on a 5150 and that he heard one of the

25  officers state he was going to place him Gutzalenko on a 5150 hold.  PCR Report, p. 22; Richardson

26  Dep. 50:11-23. Although Richardson claims that he only endeavored to administer the Versed for

27                                      13

28  PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN
    MEDICAL RESPONSE WEST AND DAMON RICHARDSON
    [22-cv-2130-EMC]

transport purposes, Richardson admitted, during the Coroner's Inquest, that he decided to prepare Versed in part to calm Gutzalenko and help the officers effect the arrest when one of the officer's body worn cameras became dislodged. Richardson Dep. 165:18-166:20. Summary judgment is not appropriate in a deadly force case if the plaintiff's claim turns on the defendant's credibility, and their credibility is genuinely in doubt. *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir. 2016).

When construed in the light most favorable to Plaintiffs, as the Court must at this stage, the evidence plausibly shows that Defendant Richardson injected Mr. Gutzalenko with Versed in order to aid the officers with effectuating the Section 5150 hold that the Richmond police officers had initiated. *See* PCR Report, p. 22; Richardson Dep. 50:11-51:2. The record before the Court thereby shows that the defendant police officers had effectively "clothed [Richardson] with the authority of state law," making Defendant Richardson a state actor under the joint action test. *Rawson, supra* F.3d 742, 752.

**C.    Plaintiffs' *Monell* Claim**

Defendants argue that Plaintiffs' *Monell* cause of action is evidentiarily unsupported and that "there is not even an allegation in the operative Complaint that Defendant AMR West, as a private corporation, was a governmental entity, nor that Defendant Richardson was an official that was acting pursuant to a municipal policy in a pattern of practice as is required." *See* Dkt. No. 99, p. 5. Not so. *See* SAC ¶ 45-47. Defendant AMR West failed to create a physician-approved policy for the use of Versed. SAC ¶ 46(a). AMRW also failed to create policy and training around Contra Costa County's protocol for the use of Versed. *Id.* A lack of affirmative policies or procedures to guide employees can amount to the "deliberate indifference" even when the employer has other general policies in place. *See e.g., Long v. County of Los Angeles*, 442 F.3d 1178, 1189 (9th Cir. 2006); *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (per curium); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN MEDICAL RESPONSE WEST AND DAMON RICHARDSON
[22-cv-2130-EMC]

1      Contra Costa County protocol indicates that patient history (certain situations that

2  paramedics could possibly use the drug for), signs and symptoms, and differential (other aspects

3  that could cause an adult behavior crisis) are considerations in whether or not to give a person

4  Versed. Richardson Dep. 22:2-24. The County protocol differentiates between subjects who are

5  "aggressive or agitated, possible psychosis, possible danger to self or others" and patients who

6  exhibit "paranoia, disorientation, extremely aggressive or violent, hallucinations, tachycardia,

7  increased strength, hypothermia, and clearly a danger to self or others." The former includes people

8  who are not as violent and aggressive while the latter includes people who tend to be more

9  aggressive and dangerous to themselves and others. *Id*. 22:25-23:16. Based on this protocol

10  Defendant Richardson should have foregone administering the Versed. Instead, the evidence shows

11  Richardson deviated from the standard protocols such that the administration of Versed was

12  unlawful.

13      Richardson's allegedly unlawful protocol deviation resulted from Richardson's: (1) Failure

14  to re-assess Mr. Gutzalenko's lack of aggression in the moments leading up to injection (Richardson

15  Dep. 125:7-126:8.); (2) Failure to obtain a reasonable estimate of Gutzalenko's pre-existing

16  complications with breathing and to monitor his heart rate, not least of all because Richardson

17  believed that Mr. Gutzalenko was under the influence of "some drug" (*Id*. 127:20-25); and (3)

18  Failure to properly monitor Mr. Gutzalenko during or after the Versed administration, causing Mr.

19  Gutzalenko to suffer multiple predictable complications (*Id*. 94:13-20).

20      AMRW's lack of affirmative policies or procedures provided no clear guidance for its

21  paramedics as to any of these issues, thereby providing no guidance to its paramedics as to the

22  lawful and safe administration of Versed. It is Plaintiffs' position that this lack of policy guidance

23  and training on the above-referenced issues lead to the administration of a too high dose of Versed

24  that was allegedly injected "intravenously" and not "intramuscularly" as Defendants claim. These

25  material fact questions preclude summary judgment on Plaintiffs' *Monell* claims as to the moving

26  Defendants.

27

28

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN
MEDICAL RESPONSE WEST AND DAMON RICHARDSON
[22-cv-2130-EMC]

**D.   Plaintiffs' State Law Claims**

  1.   Defendants Are Not Entitled to Qualified Immunity

  Where, as here, facts relevant to the reasonableness of force used are disputed, the case cannot be resolved at summary judgment on qualified immunity grounds. *Glenn v. Washington County*, 673 F.3d 864, 870 (9th Cir. 2011) ("We express no opinion as to the second part of the qualified immunity analysis and remand that issue to the district court for resolution after the material factual disputes have been determined by the jury."); *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010) (affirming a denial of summary judgment on qualified immunity grounds because there were genuine issues of fact regarding whether the officers violated plaintiff's Fourth Amendment rights, which were also material to a proper determination of the reasonableness of the officers' belief in the legality of their actions); *Santos v. Gates*, 287 F.3d 846, 855, n. 12 (9th Cir. 2002) (finding it premature to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom").

  The crux of Defendants' Motion is predicated on their role as private parties. Defendants nevertheless invoke statutory immunity under Health and Safety Code §1799.106 (*See* Dkt No. 99, p. 16), which provides immunity to *government* agencies employing "emergency rescue personnel acting within the scope of their employment to provide *emergency services* ... unless the action taken was performed in bad faith or in a grossly negligent manner." H&S Code §1799.106 (emphasis added). Emergency services are defined by the statute as "first aid and medical services, rescue procedures and transportation, or other related activities necessary to insure the health or safety of a person in imminent peril." *Id*. A natural reading of the statute indicates that to qualify for this immunity a paramedic's conduct must be "necessary to insure the health or safety of a person in imminent peril." *Id*.

  Richardson's conduct was not in performance of "emergency medical services." Defendants admit that Richardson injected Mr. Gutzalenko with Versed <u>after</u> Mr. Gutzalenko was handcuffed

1   and had ceased "resisting or thrashing around." Dkt. No. 99, p. 13. Richardson testified that he went

2   forward with chemically restraining Mr. Gutzalenko for his safety and that of the City of Richmond

3   personnel that would assist in the transfer to the gurney–i.e., not to rescue or render aid to Mr.

4   Gutzalenko. Richardson Dep. 90:21-91:1. Therefore, the moving Defendants are not entitled to

5   statutory immunity under Section 1799.106 because the statute does not apply to them.

6               2.   Defendant Richardson Acted With Gross Negligence

7       Presuming that the statutory immunity applies to the moving Defendants, they argue that

8   Plaintiff must prove that Defendant Richardson's conduct constituted bad faith or gross negligence.

9   However: "Whether there has been such a lack of care as to constitute gross negligence is generally

10  a triable question of fact." *Colich & Sons v. Pacific Bell*, 198 Cal.App.3d 1225, 1241 (Ct.App.

11  1988). Whether Richardson's conduct was reasonable when he chemically sedated Mr. Gutzalenko

12  is a triable question of fact improper for resolution on summary judgment.

13      The question before the Court is therefore whether substantial evidence could support a

14  jury's conclusion that Richardson's "actions or omissions did not provide even scant care or were an

15  extreme departure from the ordinary standard of conduct." *Wright v. City of Los Angeles*, 219 Cal.

16  App. 3d 318, 347 (Ct. App. 1990). In *Wright,* the court held that substantial evidence supported the

17  jury's determination that a paramedic's treatment of a person involved in an altercation was grossly

18  negligent because the paramedic did not question police officers at the scene to determine why he

19  had been called to examine the person, did not ask the person any orientation questions to determine

20  whether the person was thinking clearly, and did not check the person's pulse or blood pressure, and

21  did not feel the person's body for moisture.

22      Applying the *Wright* Court's logic to the instant matter, the moving Defendants are not

23  entitled to statutory immunity in light of the evidence that: (1) Richardson conducted a visual

24  medical examination of Mr. Gutzalenko prior to injecting the Versed, in which Richardson learned

25  Mr. Gutzalenko was experiencing difficulties breathing (Richardson Dep. 45:6-15); (2) Richardson

26  failed to take any given opportunity to prevent accidental intravenous injection even though he

27
28

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN
MEDICAL RESPONSE WEST AND DAMON RICHARDSON
[22-cv-2130-EMC]

1   recognized this was a possibility that could be lethal (*Id*., 87:25-88:3); and (3) Richardson failed to

2   monitor Mr. Gutzalenko's heart, breathing, and temperature which would have informed the proper

3   dosage of Versed to prevent an accidental overdose (*Id*., 23:4-25:9, 94:13-20).

4          Defendants admit that "Mr. Gutzalenko was not resisting or thrashing when Richardson

5   injected him with Versed." Dkt. No. 99, p. 13. Puzzlingly, Defendants also claim that "there was a

6   clear medical purpose in [the Versed] administration" because it was administered without the

7   direction of law enforcement and was purely for Mr. Richardson's safety once Mr. Gutzalenko was

8   placed on the gurney and transported to the ambulance. *Id.,* at pp. 13-14. This argument fails. By

9   Defendants own admission, the chemical restraint was administered to protect Richardson, not to

10  treat Mr. Gutzalenko. *Id.* Indeed, the Versed was administered at a medical *detriment* to Mr.

11  Gutzalenko, who was blue in the face and struggling to breath while Richardson knew that the

12  Versed could exacerbate such an existing respiratory problem. Richardson Dep. 46:5-12.

13         The record plausibly demonstrates that Defendant Richardson made an extreme departure

14  from the ordinary standard of conduct. Richardson's conduct was therefore in bad faith and/or may

15  have constituted gross negligence. *C.f.*, *Mitchell v. Cnty. of San Diego,* 243 F. App'x 242, 245–46

16  (9th Cir. 2007) (finding the defendant had knowledge of the extreme risks of his operation and

17  failed to perform basic safety measures that would prevent harm.) Accordingly, AMR-West could

18  be held vicariously liable for their employees' torts. *C.f., Eastburn v. Regional Protection Authority*,

19  31 Cal.4th 1175, 1184 (2003).

20                    3.   Conflicting Expert Opinions Preclude Summary Judgment

21         The Ninth Circuit has "cautioned that the district court is 'a gatekeeper, not a fact finder.'"

22  *Primiano v. Cook*, 598 F.3d 558, 568 (9th Cir. 2010) (quoting *United States v. Sandoval-Mendoza*,

23  472 F.3d 645, 654 (9th Cir. 2006)).  The district court is not tasked with deciding whether the expert

24  is right or wrong, just whether his testimony has substance such that it would be helpful to a jury."

25  *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.,* 738 F.3d 960, 969–70 (9th Cir. 2013). Where

26  two credible experts disagree, it is the job of the fact finder, not the trial court, to determine which

27                                                     18

28  PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN
        MEDICAL RESPONSE WEST AND DAMON RICHARDSON
                            [22-cv-2130-EMC]

1 source is more credible and reliable. *United States v. Sandoval–Mendoza*, *supra* 472 F.3d at 654. In

2 the instant matter, expert witnesses for each Party disagree on the role Versed played in causing Mr.

3 Gutzalenko's death and whether Richardson's facilitation of the Versed was medically safe and

4 lawful, precluding summary judgment.

5      The moving Defendants offer declarations in which a physician concludes that because

6 "[t]he decedent stopped breathing at or near the time the Versed was administered, [] there was no

7 time for it to have been absorbed, and it did not play any role in the decedent's death." Dkt No. 99,

8 p. 14 (quoting Declaration of Neal Benowitz, M.D., ¶ 10). Before the Court is a report by a

9 physician who came to the exact opposite conclusion: "Mr. Gutzalenko's proximal and direct cause

10 of death, on a more than likely than not basis, was iatrogenic midazolam [Versed] overdose with

11 prone restraint positioning as a contributing factor." Herrington Report, pp. 2, 36-37.

12      Defendants' expert also opines that "The Versed administered in this case could not have

13 accidentally been given intravenously as has been alleged." Dkt No. 99, p. 17 (citing Declaration of

14 Jim Morrissey, ¶ 12). Again, Dr. Herrington reached a different conclusion based on "the time from

15 midazolam injection to cardiac arrest was also very fast…on the order of 75-90 seconds. This short

16 period of time from injection to clinical effect (cardiac arrest in this matter) is substantially similar

17 to what is observed when midazolam is given intravenously." Herrington Report, p. 3. Indeed,

18 Richardson himself testified that there is no way that he could know whether he accidently injected

19 the Versed intravenously (unless he had aspirated the syringe, which he did not). Richardson Dep.

20 97:17-22.

21      Defendants' physician offers an alternate theory as to the cause of Mr. Gutzalenko's death:

22 That the level of amphetamines in Mr. Gutzalenko's blood level was "very high and similar to what

23 would be expected in a person who overdosed and died." Dkt No. 99, p. 15. Again, Dr. Herrington's

24 report states reasons why this conclusion is incorrect: "On a more likely than not basis, this

25 determination is not correct because information relied upon at autopsy did not include video

26 footage and EMS documentation. When this additional information is considered and physiological

27
28

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN
MEDICAL RESPONSE WEST AND DAMON RICHARDSON
[22-cv-2130-EMC]

and pharmacological principles are objectively applied, the sequence of developments leading to

Mr. Gutzalenko's death is that he first became unconscious when police officers held him in a prone

position, he then received a midazolam injection from EMS personnel while still unconscious and

then went into cardiac arrest which he ultimately did not survive." Herrington Report, p. 3.

Defendant Richardson himself testified that at the time based on the circumstances confronting him,

he believed that Mr. Gutzalenko was experiencing a Versed overdose. Richardson Dep. 107:4-6.

   The dueling opinions of experts reveals material questions of facts as to the material issues

of whether Richardson's conduct in injecting Mr. Gutzalenko with Versed was reasonable under the

circumstance, as well as the causal role the Versed played in Mr. Gutzalenko's death. "A factual

dispute is best settled by a battle of the experts before the fact finder, not by judicial fiat." *City of

Pomona v. SQM N. Am. Corp.,* 750 F.3d 1036, 1049 (9th Cir. 2014). Furthermore, the Court should

consider that Defendants prematurely filed their Motion far before the close of both fact and expert

discovery in the instant matter. Given the importance of these disputed facts in the analysis of all of

Plaintiffs' claims, summary judgment is inappropriate.

### 4.  Plaintiff's Remaining State Law Claims Survive

   The same issues of material fact discussed above preclude a finding that the moving

Defendants are entitled to summary judgment on Plaintiffs' remaining State law claims. First,

Defendants argue that Richardson did not commit battery by injecting Mr. Gutzalenko with Versed.

*See* Dkt No. 99, p. 19. In cases where the offending conduct was by a state actor, however, "[a] state

law battery claim is a counterpart to a federal claim of excessive use of force" and in such cases a

plaintiff must prove that the use of force was unreasonable. *Brown v. Ransweiler,* 171 Cal. App. 4th

516, 527 (2009). The Court must consider "the need for the government action in question, the

relationship between the need and the action, the extent of harm inflicted, and whether the action

was taken in good faith or for the purpose of causing harm." *Plumeau v. Sch. Dist. No. 40,* 130 F.3d

432, 438 (9th Cir.1997) (quotation omitted). As discussed in the previous sections, Richardson was

20

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN
MEDICAL RESPONSE WEST AND DAMON RICHARDSON
[22-cv-2130-EMC]

cloaked with the authority of the State when he chemically restrained Mr. Gutzalenko. Whether Richardson's was unreasonable, as Plaintiffs allege, is a material, triable question of fact.

Second, Defendants argue that they did not deprive Mr. Gutzalenko of his freedom of movement to constitute the tort of False Imprisonment because Mr. Gutzalenko was already restrained and in custody at the time Richardson administered the Versed. *See* Dkt No. 99, p. 19. As this Court already pondered: The fact that Mr. Gutzalenko was not resisting or thrashing at the time Richardson injected him with Versed "begs the question what medical purpose was being fulfilled by the injection?" *See* Dkt. No. 71, p. 7. Where the facts or circumstances surrounding an individual's arrest are disputed, the existence of probable cause is a question for the jury. *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir.1984). It must also be noted that California State law explicitly prohibits the Court from conferring immunity in false arrest and imprisonment cases. Cal. Gov't Code § 820.4 ("A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.") The same fact questions as to whether Richardson acted with or without lawful privilege when he restrained Mr. Gutzalenko precludes summary judgment on Plaintiffs' State law claims.

## IV. CONCLUSION

Given the foregoing, this Court should deny Defendants' Motion for Summary Judgment.

Dated: March 24, 2025                              Burris Nisenbaum Curry and Lacy, LLP


                                                   /s/ Ben Nisenbaum
                                                   Ben Nisenbaum, Esq.

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS AMERICAN MEDICAL RESPONSE WEST AND DAMON RICHARDSON
[22-cv-2130-EMC]