UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN GUTZALENKO, et al., | Case No. 22-cv-02130-EMC |
| Plaintiffs, | **FILED UNDER SEAL** |
| v. | **ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
| CITY OF RICHMOND, et al., | |
| Defendants. | Docket Nos. 89 and 99 |

## I.   INTRODUCTION

Plaintiffs, representatives of the decedent, brought this action alleging civil rights violations, medical negligence, and wrongful death among other claims against the City of Richmond, its police department chief, and police officers Tom Tran, Mark Hall, and Cedric Tagorda ("Officers") (collectively "City Defendants") as well as ambulance company American Medical Response West ("AMR West") and its paramedic Mr. Richardson (collectively "Medical Defendants") who provided medical assistance to Ivan Gutzalenko ("decedent") shortly before his death.  After the police restrained Mr. Gutzalenko who was experiencing a medical emergency, Mr. Richardson injected a chemical restraint drug into the decedent's body.  At or about this time or shortly after, the decedent died.  Plaintiffs are family members of the decedent.  They filed their Second Amended Complaint ("SAC") including five federal and state causes of action.  Before the Court are the City and Medical Defendants' respective motions for summary judgment.  For the reasons below, they are **GRANTED IN PART** and **DENIED IN PART**.

## II.    BACKGROUND

### A.    Factual Background

On March 10, 2021, a Richmond police officer responded to a call for service about a man causing a disturbance in a furniture store on San Pablo Avenue in Richmond, California. *See* City Defendants' and Plaintiffs' Stipulated Undisputed Facts at 2 (Dkt. 97). When the police officer arrived at the scene, he saw a man matching the call description and approached him on foot. *Id.* The man was Mr. Gutzalenko, the decedent. *Id.* The decedent was in need of medical aid and was "possibly intoxicated or experiencing a medical emergency." *Id.* The decedent had a dark purple mark on his forehead, was bleeding profusely from one of his hands, and had difficulty focusing on and communicating with the police officer. *Id.* From the body-worn camera footage of the officers involved and reports, it is clear that Mr. Gutzalenko also had a hard time breathing. Tran body-worn camera footage ("BWC") at 1:30-32, 1:41-46, 1:58-2:01; Tagorda BWC at 6:27-6:47.

The police officers attempted to calm Mr. Gutzalenko and cooperate so that he could be transported to medical care. Tran BWC at 0:00-16:30. Medical Defendants, AMR West and the paramedic Mr. Richardson, arrived in an ambulance and attempted to bandage the decedent's hands. Hall BWC at 9:03-9:50. Mr. Gutzalenko became agitated and attempted to keep his hands away. Tran BWC 9:07-10:03. After the decedent began to resist, the police officers attempted to handcuff the decedent after a struggle that last between 1.5 and 3 minutes. Hall BWC 9:50-12:20. During that struggle, Officer Tran applied his knee to decedent's back while the decedent was in a prone position. Tagorda BWC at 6:15-7:25. It appears from the video that by the time the handcuffs were placed on the decedent following the struggle to subdue him, he had become non-responsive and no longer resistive. *Id.* at 7:30-7:37. Immediately after the decedent was handcuffed on the ground, Defendant Mr. Richardson injected the decedent with Versed, a chemical restraint. *Id.* at 7:40-7:48. Plaintiffs claim Mr. Richardson did not "aspirate" the syringe when he administered the Versed to ensure it was not in the vein. Second Amended Complaint ("SAC") ¶ 23.. Plaintiffs allege that the decedent stopped breathing within 90 seconds of the Versed administration and that he was pronounced dead after he was taken to Summit Hospital in Oakland. *Id.* An autopsy determined the cause of death was prone restraint asphyxia and cardiac

arrest while under the influence of methamphetamine. *See* Coroner's Report at Dkt. 98-4.

In Counts One and Two, Plaintiffs allege 42 U.S.C. Section 1983 causes of action for violation of the First, Fourth and Fourteenth Amendments for unreasonable searches and seizures, excessive and unreasonable force in the course of a seizure, and interference with familial relationships. *Id.* at 9-17. In counts three through six, Plaintiffs allege state law claims for violation of the Bane Act, negligence, "assault and battery," and "false arrest and imprisonment" respectively. *Id*. at 17-24. Plaintiffs also seeks punitive damages and attorney's fees in relation to their Section 1983 claim.

### B.    Procedural Background

Plaintiffs filed the original Complaint on April 4, 2022 naming the City Defendants: the City of Richmond, the Chief of Police, and three Police Officers. Dkt. 1. Plaintiffs then filed the First Amended Complaint, which named Defendants AMR West and Damon Richardson on June 23, 2023. Dkt. 42. Plaintiffs filed their Second Amended Complaint ("SAC") on August 9, 2023. Dkt. 49.

The SAC pleads six counts. These include 42 U.S.C. § 1983 – Unreasonable Seizure and Excessive Force (Fourth Amendment) (Count One);[1] 42 U.S.C. § 1983 – Municipal Liability (Count Two);[2] California Bane Act (Cal. Civ. Code § 52.1) (Count Three);[3] Negligence and Wrongful Death (Cal. Code Civ. Proc. § 377.60 & common law) (Count Four);[4] Assault and Battery (Count Five);[5] and False Arrest and False Imprisonment (Count Six).[6]

On March 15, 2024, the Court granted in part and denied in part Medical Defendants' motion to dismiss Plaintiffs' SAC and granted Defendants' motion to strike. Dkt. 71. The Court dismissed Plaintiffs' Bane Act claim (Count 3) because "Plaintiffs failed to adequately allege that

---

[1] Count One is against Officers Tran, Hall, and Tagorda; City of Richmond; Chief Bisa French; paramedic Damon Richardson and AMR West.
[2] Count Two is against City of Richmond, Chief French, and AMR West.
[3] Count Three is against Officers Tran, Hall, and Tagorda; City of Richmond; Chief French; Mr. Richardson and AMR West.
[4] Count Four is against all defendants.
[5] Count Five is against Officers Tran, Hall, and Tagorda; City of Richmond; Mr. Richardson and AMR West.
[6] Count Six is against Officers Tran, Hall, and Tagorda; City of Richmond; Chief French; Mr. Richardson and AMR West.

Defendants intentionally interfered with the decedent's constitutional rights" and medical negligence claim with leave to amend (Count Four) because Plaintiffs had "not met their burden of alleging they should not have discovered Mr. Richardson's role of injecting the decedent with Versed any earlier than one year prior to the filing of the [First Amended Complaint]" as required by the statute of limitations in this instance. *Id.* at 9 and 10-11. Plaintiffs have not amended their complaint in response. The Court also granted Medical Defendants' motion to strike as to Plaintiffs' prayer for punitive damages because Plaintiffs' claims did "not show the heightened culpability that punitive damages requires" and denied the motion as to Plaintiffs' request for attorney's fees under Section 1983 because "42 U.S.C. § 1988 allows for attorney's fees for plaintiffs who prevail in Section 1983 actions." *Id.* at 13-14.

Accordingly, all six counts remain against City Defendants and Counts 1, 2, 5, and 6 remain against Medical Defendants.

Before the Court are both sets of Defendants' motions for summary judgment on all remaining claims against them, respectively. Dkts. 89 and 99.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.[7]

---

[7] Evidence may be presented in a form that is not admissible at trial so long as it could ultimately be capable of being put in admissible form. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) ("Even the declarations that do contain hearsay are admissible for summary judgment purposes because they 'could be presented in an admissible form at trial'").

4

United States District Court
Northern District of California

Where a defendant moves for summary judgment based on a claim for which the plaintiff bears the burden of proof, the defendant need only point to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### IV.    DISCUSSION

### A.    City Defendants' Motion for Summary Judgment

City Defendants move for summary judgment on all six claims.

#### 1.    Federal Claims Against the City Defendants

##### a.    Count One: Section 1983 against individuals (seizure and force)

###### i.    Reasonable Suspicion and Probable Cause to Detain Decedent

Summary judgment is **GRANTED** for City Defendants on whether they had reasonable suspicion to detain Mr. Gutzalenko for an investigatory stop and probable cause to effectuate a California Welfare and Institutions Code Section 5150 hold.[8]  Plaintiffs concede that reasonable suspicion and probable cause existed to restrain and detain the decedent.

As to reasonable suspicion, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *see also United States v. Bontemps*, 977 F.3d 909, 913 (9th Cir. 2020). "[T]he Supreme Court has said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Brown*, 996 F.3d 998, 1006 (9th Cir. 2021) (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)) (internal quotation marks omitted).  However, because Mr. Gutzalenko was subdued and

---

[8] The Officers did not effectuate a Section 5150 hold.  *See* Tran Dep. at 69:11-17, 13:24-14:1 ("Mr. Gutzalenko was not formally placed on a 5150 hold," "It was just something that was under consideration at all times during [my] presence at the scene," "[U]ltimately Mr. Gutzalenko was not actually 5150'd"); *see* Hall Dep. at 97:2-5 ("Initially [Mr. Gutzalenko is] being detained for a crime, and then we're determining if it's going to be a 5150."); *see* Tagorda Dep. at 105:20-21 ("Mr. Gutzalenko was not formally placed on a 5150 hold").

handcuffed, the stop went beyond a brief, investigatory stop and turned into a full detention which required probable cause.

Under § 5150, an officer may detain any person the officer determines, "as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled." Cal. Welf. & Inst. Code § 5150. To effectuate a § 5150 hold, an officer must have probable cause – facts "that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself." *People v. Triplett*, 144 Cal.App.3d 283, 288 (1983). Whether probable cause exists is evaluated through the eyes of the officer on the scene at the time of the incident and can incorporate the officer's prior training and experience. *United States v. Thornton*, 710 F.2d 513, 515 (9th Cir. 1983). An officer "is not required to make a medical diagnosis of mental disorder," rather "generally, mental disorder might be exhibited if a person's thought processes, as evidenced by words or actions or emotional affect, are bizarre or inappropriate for the circumstances." *Id.*

Plaintiffs concede that probable cause to effectuate a Section 5150 hold existed and the Officers' deposition testimony reflects that they did not formally place Mr. Gutzalenko under such a hold. *See* Opp'n at 20 ("Plaintiffs do not dispute that the officers were entitled to place Mr. Gutzalenko in handcuffs"); Opp'n at 21 ("Plaintiffs also do not dispute that Officers were authorized to detain Gutzalenko for his welfare, pursuant to Section 5150"). In fact, the parties stipulate that the officers were dispatched after reports of petty theft, vandalism, and a subject who was visibly injured and unable to care for himself. City Defendants and Plaintiffs' Joint Stipulation of Undisputed Facts ¶¶ 2, 4-6 (Dkt. 97). Specifically, the parties stipulate that:

- "Immediately prior to the subject incident, the Richmond Police Department received reports that Decedent committed a petty theft at a gas station/liquor store, had vandalized and caused a disturbance in a furniture store on San Pablo Avenue, and was possibly intoxicated or experiencing a medical emergency." *Id.* at ¶ 2.
- "When Officer Tran first located Decedent, Decedent was attempting to walk down San Pablo Avenue but had an unsteady gait, was stumbling, and collapsed to the ground twice." *Id.* at ¶ 4.

- "During the Officers' interactions with Decedent, it was clear that Decedent was intoxicated and/or experiencing a medical emergency, including that he appeared blue in the face, disoriented, had dilated pupils, a large bruise on his head, dried vomit in his facial hair, and he was spitting up blood, bleeding profusely from his hand, and claiming that he was having difficulty breathing." *Id.* at ¶ 5.

- "It was clear Decedent needed medical help and that he was unable to care for himself when the Officers encountered him."  *Id.* at ¶ 6.

The parties stipulate that the officers were responding to reports of "criminal activity" and a medical emergency.  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *see* Plaintiffs' Opp'n to City Defendants' MSJ at 15 (Dkt. 91) ("The videos are clear that Mr. Gutzalenko needed help").  While the undisputed evidence establishes that Mr. Gutzalenko was not formally placed by the officers on a 5150 hold, for the same reasons why they had probable cause to place him on a 5150 hold, they had probable cause to detain him pending a formal hold.

Therefore, summary judgment is **GRANTED** for City Defendants on whether they had probable cause to detain Mr. Gutzalenko.

### ii.    Excessive Force

Summary judgment is **DENIED** for City Defendants' claim that its officers used reasonable, as opposed to excessive, force.  When evaluating a claim of excessive force, a court must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them" based on the totality of the circumstances.  *Graham v. Connor*, 490 U.S. 386, 386 (1989).  This is judged from the perspective of an officer on the scene rather than with the benefit of 20/20 hindsight.  *Id.* at 396.  This gives allowances for the split-second judgments officers are required to make in "tense, uncertain, and rapidly-evolving" situations.  *Id.* at 396–97.  The right to employ "some degree of physical coercion or threat thereof" accompanies the right to make the arrest or investigatory stop.  *Id.* at 396.  In determining whether an arrest or investigatory stop is properly carried out, courts must balance the nature and quality of the officer's intrusion on Fourth Amendment rights against competing government interests that justify the intrusion.  *Cty. of Los Angeles, Calif. v. Mendez*, 581 U.S. 420 (2017); *Graham*, 109 S.

United States District Court
Northern District of California

United States District Court
Northern District of California

Ct. at 1871. "When the governmental interests at stake are substantial, a greater intrusion upon the Fourth Amendment rights of the person may be justified. Conversely, when the governmental interest is insubstantial, the application of even minimal force may be unreasonable." *Nelson v. City of Davis*, 685 F.3d 867, at 878 (9th Cir. 2012). Therefore, this requires an inquiry into the "(1) severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape." *Graham*, 109 S. Ct. at 1871. "'Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'" *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003) (citing *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002). The court considers facts that gave rise to the detention or arrest when evaluating whether the force used to make the arrest was excessive. *Velazquez v. City of Long Beach,* 793 F.3d 1010, 1024, fn. 13 (9th Cir. 2015).

There are at least four material fact disputes which preclude summary judgment on City Defendants' claim that their force was objectively reasonable as opposed to excessive. These include: 1) the severity of the force used by the officers, particularly the duration, location of, and amount of weight applied to Mr. Gutzalenko, 2) whether Mr. Gutzalenko posed an immediate threat, 3) the degree to which Mr. Gutzalenko resisted arrest, and 4) whether less intrusive alternatives were available.

### (a)    Severity of the Force

First, a fact dispute exists regarding the severity of the police officers' force, specifically the duration, location of, and weight applied by the body-weight compression and the degree of difficulty Mr. Gutzalenko had in breathing when the Officers applied the body-weight compression. "Both 'the nature and degree of physical contact' and the 'risk of harm and the actual harm experienced' are relevant" to "quantifying a particular use of force." *Seidner v. de Vries*, 39 F.4th 591, 597 (9th Cir. 2022) (citing *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1152 (9th Cir. 2022)).

The parties dispute the duration of the force. The duration of force can impact a determination of the severity of the force. In *Drummond*, the court found that officers' use of force for "[a]pproximately twenty minutes" when Mr. Drummond was handcuffed, "was not resisting the officers," and "police were actually put on notice of the detainee's respiratory distress" because Mr. Drummond "repeatedly told the officers that he could not breathe" as "he begged for air" constituted severe force. 343 F.3d at 1055-61 (holding that police officers' use of severe force was constitutionally excessive).[9] Here, City Defendants argue that the Officers applied "90 seconds of minimal force." City Defendants' Mot. at 27 (Dkt. 89). On the other hand, Plaintiffs cite to the Officers' body camera footage to argue that the Officers applied force for "at least two minutes and forty-four seconds" or "well over three minutes." Opp'n at 16, 18 (citing to Tran BWC at 11:55-12:14; Hall BWC at 08:57-09:20; Tagorda BWC at 04:15-04:53, 06:51-07:09). Thus, whether the Officers held Mr. Gutzalenko for a prolonged period is a disputed material fact.

Next, the parties dispute the location and the amount of body-weight compression. The location and the amount of body-weight compression is material to determining the severity of the force. In *Drummond*, the court determined:

> We need no federal case directly on point to establish that **kneeling on the back and neck** of a compliant detainee, and **pressing the weight of two officers' bodies on him** even after he complained that he was choking and in need of air violates clearly established law, and that reasonable officers would have been aware that such was the case.

*Drummond*, 343 F.3d at 1062 (emphasis added). "[I]t is unconstitutional to use bodyweight force on the back and neck of a prone and unarmed individual," particularly where "the officers know the prone individual is suffering from a mental illness and is not suspected of a crime." *Scott v. Smith*, 109 F.4th 1215, 1226 (9th Cir. 2024) (finding unconstitutional force where police officers responded to "an individual experiencing a mental health crisis and presenting no obvious danger

---

[9] City Defendants argue that *Drummond* is inapposite because, unlike in *Drummond*, Mr. Gutzalenko was not handcuffed when the Officers applied the body-weight compression. Because whether Mr. Gutzalenko was handcuffed at the time the Officers applied force is relevant to the *Graham* analysis below, I discuss this fact in the *Graham* factor section.

9

to others" and officers "crushed [the individual's] back and neck to subdue him while handcuffing him," while the individual "also cried out with increasing distress and incoherence as the officers' force escalated," because "[r]easonable officers would have known that their force was not reasonable and that it created a serious risk of asphyxiating [the individual]"). Accordingly, where the officers placed their weight and how much weight they placed on Mr. Gutzalenko are material facts. The parties dispute both. City Defendants argue that "the Officers applied limited pressure to his upper back/shoulder and lower back." Mot. at 14 (citing Tagorda BWC at 5:50-07:28). At the hearing, the City contended Officer Tran's knee was used only as a stop to prevent the decedent from turning onto his back. Plaintiffs, on the other hand, contend that Officer "Tran's knee was squarely in the middle of Gutzalenko's back…and he leveraged all his bodyweight on Gutzalenko's back…" Opp'n at 14 (citing Tagorda BWC at 04:04-04:39, 04:50, and 06:15-06:48). Thus, the location and the amount of body-weight compression are disputed material facts.

Finally, knowledge of an individual's respiratory distress informs the reasonable force analysis. In *Drummond*, the court found that the force applied was unconstitutional where the police officers "did not remove th[eir] [body-weight] pressure despite Drummond's pleas for air, which should have alerted the officers to his serious respiratory distress." *Drummond*, 343 F.3d at 1059. The body-worn camera footage clearly shows that the Officers knew that Mr. Gutzalenko had difficulty breathing both before they handcuffed him and while they handcuffed him. *See* Tran BWC at 1:30-32, 1:41-46, 1:58-2:01; *see* Tagorda BWC at 6:27-6:47. Thus, there is no dispute regarding whether the Officers knew that Mr. Gutzalenko had difficulty breathing when they applied body-weight compression on him, though it is not clear whether he could breathe at all while he was prone and the knee placed on him.

### (b)    *Graham* Factors

Next, the parties dispute material facts regarding whether government interests justified the force applied. *See Nelson v. City of Davis*, 685 F.3d 867, at 878 (9th Cir. 2012) ("When the governmental interests at stake are substantial, a greater intrusion upon the Fourth Amendment rights of the person may be justified. Conversely, when the governmental interest is insubstantial,

the application of even minimal force may be unreasonable.").[10]

- ***Immediate Threat to Officers', Self, or Public's Safety***

"When evaluating the government's interest, the most important factor is whether the person posed an immediate threat to the safety of the officer or another." *Tan Lam v. City of Los Banos*, 976 F.3d 986, 998 (9th Cir. 2020) (holding that it was "unlawful for a police officer to shoot a mentally ill man in deteriorating health in his own home, who—though previously armed—was incapacitated and no longer posed a threat"). Further, while "some degree of physical restraint may [be] necessary to prevent [one] from injuring himself," *Drummond*, 343 F.3d at 1057, the force must not be "greater than is reasonable under the circumstances." *Scott v. Smith*, 109 F.4th 1215, 1225 (9th Cir. 2024) (internal citation omitted).

The parties agree that Mr. Gutzalenko was experiencing "a medical emergency." *See* City Defendants' and Plaintiffs' Stipulated Undisputed Facts at 2 (Dkt. 97). In such a situation, the government interest in using deadly force is diminished where there is no real threat to others. *Longoria v. Pinal Cnty.*, 873 F.3d 699, 708 (9th Cir. 2017) (Where an individual is "emotionally disturbed, acting out, and at times inviting officers to use deadly force to subdue him," "a reasonable jury could conclude that there [are] sufficient indications of mental illness to diminish the governmental interest in using deadly force."). Though he may have posed a threat to himself if left unattended, it appears that he was not engaged in activity at the moment which posed an immediate threat to himself.

To be sure, the parties dispute whether Mr. Gutzalenko posed an immediate threat. City Defendants argue that Mr. Gutzalenko's "vehement resistance gave rise to legitimate safety concerns on the part of the Officers (and Richardson), that Decedent would injure himself, the Officers, or the paramedics." Mot. at 14. Specifically, City Defendants maintain that Mr. Gutzalenko "resist[ed], including thrashing his arms and legs, including knocking Officer Tran's body-worn camera off his uniform." Mot. at 13 (citing, *inter alia*, Tran BWC at 09:07-10:03 and

---

[10] To be complete, regarding the severity of the crime factor, City Defendants state that "the Officers' actions had nothing to do with the crimes of which Decedent was accused." Reply at 11. Instead, the Officers acted in response to Mr. Gutzalenko's medical distress (physical and psychological). *Id.*

Tagorda BWC at 03:32-04:37).  On the other hand, Plaintiffs argue that "Gutzalenko's hand went limp seconds prior to him being handcuffed" and "Gutzalenko's hands were limp before the paramedic injected Versed."  Opp'n at 12 (citing Tagorda BWC at 07:36).  Moreover, from the video, it is debatable must how much a threat to the officers' safety the decedent posed.  His pockets had been searched and items removed so he had no weapons.  Tran BWC at 2:50-3:00.  He appears to have been flailing with his arms or legs, not deliberately punching of kicking the officers.  *Id.* at 9:07-10:00.  He did not appear to be hurting himself.  Therefore, there is a genuine dispute as to the degree to which Mr. Gutzalenko posed an immediate threat to the safety of himself, the officers, or the paramedic.

- ***Resistance to Arrest or Attempts to Escape***

The same facts preclude a determination of whether Mr. Gutzalenko resisted arrest such that the force required was minimal.  City Defendants argue that Mr. Gutzalenko "strenuously resisted the Officers, fighting against the Officers' efforts to move his hands into a position to apply handcuffs."  Mot. at 14. (citing Tagorda BWC at 5:50-07:28; Hall Dep. at 119:18-120:1; Tran Dep. at 48:16-49:2).  Plaintiffs argue that, rather than resisting arrest or attempting to flee, "Mr. Gutzalenko was bucking for air because he could not breathe."  Opp'n at 23.  *See Garlick v. Cnty. of Kern*, 167 F. Supp. 3d 1117, 1157 (E.D. Cal. 2016) ("Plaintiffs' facts raise a critical genuine issue of material fact whether [individual] was passively, not actively, resistant," where plaintiffs argued that individual's "continued attempts to lift his chest demonstrated that he was asphyxiating."); *see also Aranda v. City of McMinnville*, 942 F. Supp. 2d 1096, 1106 (D. Or. 2013) ("[A] jury could find that Aranda's noncompliance was not active resistance to arrest as much as an instinctive effort to protect himself from injury.").  In his deposition, Officer Hall agreed that "when people's breathing is interfered with, there is an involuntary, just natural instinct to do whatever you can to breathe."  Hall Dep. at 114:9-15.  And regardless of the decedent's intent, the degree of his resistance and the danger therefrom is a matter in dispute.  Thus, a dispute regarding the degree to which Mr. Gutzalenko actively resisted arrest creates another genuine dispute of material fact.

- *Availability of Less Intrusive Alternatives*

"Although officers are not required to use the least intrusive degree of force available, 'the availability of alternative methods of capturing or subduing a suspect may be a factor to consider.'" *Vos v. City of Newport Beach*, 892 F.3d 1024, 1033 (9th Cir. 2018) (quoting *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) and citing *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).

Here, Plaintiffs argue that the Officers escalated the situation by threatening to tase or use pepper spray against Mr. Gutzalenko. These threats are immaterial as the Officers never acted on them and Plaintiffs fail to provide case support that threats of tasing or pepper spraying an individual favor a finding that the force required was less than that used.

However, a jury could find that less intrusive alternatives were available at least in the form of reduced body-weight compression, particularly where the Officers were aware that Mr. Gutzalenko faced difficulty breathing. The parties stipulate that, "[d]uring the Officers' interactions with Decedent," Mr. Gutzalenko "claim[ed] that he was having difficulty breathing." City Defendants and Plaintiffs' Stipulated Undisputed Statements of Fact at 2 (Dkt. 97). Further, Lieutenant Daniel Reina testified that the department "teach[es]" its officers to "limit the amount of pressure on the back" and to "try to avoid it." Reina Dep. at 50:6-16. Because the Officers knew Mr. Gutzalenko faced difficulty breathing and were trained to limit the amount of prone pressure, a reasonable jury could find that the Officers could have applied less prone pressure in this situation. Nor, depending on the evidence presented at trial (expert designations and discovery have yet to transpire), would the jury be precluded from finding there were alternative means of handcuffing Mr. Gutzalenko without placing in a prone position which exacerbated his already evident breathing problems.

Therefore, disputed material facts preclude a grant of summary judgment on whether the Officers used objectively reasonable, as opposed to excessive, force. Summary judgment on this issue is **DENIED**.

### iii.    Qualified Immunity

The Officers are entitled to qualified immunity. Summary judgment on this issue is

13

**GRANTED** in favor of the City Defendants.

"In deciding whether Defendants are entitled as a matter of law to qualified immunity, [the Court] must accept the facts in the light most favorable to the Plaintiffs and then determine whether, in light of clearly established principles governing the conduct in question, the officers objectively could have believed that their conduct was lawful." *Mena v. City of Simi Valley*, 226 F.3d 1031, 1036 (9th Cir. 2000).

In determining whether a police officer is entitled to qualified immunity, the Court must ask two questions: "'(1) Was the law governing the officer's conduct clearly established? (2) Under that law, could a reasonable officer believe that the conduct was lawful?'" *Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 926 (9th Cir. 2001) (quoting *Mena*, 226 F.3d at 1036); *see also Anderson v. Creighton*, 483 U.S. 635, 636–37 (1987) (holding that a "law enforcement officer who participates in [conduct] that violates the Fourth Amendment may [not] be held personally liable … if a reasonable officer could have believed that the [conduct] comported with the Fourth Amendment"); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (explaining that "it may be difficult for a police officer to determine how to apply the relevant legal doctrine to the particular circumstances he or she faces … if an officer makes a mistake in applying the relevant legal doctrine, he or she is not precluded from claiming qualified immunity so long as the mistake is reasonable").

For the second prong of the qualified immunity analysis, "if officers of reasonable competence could disagree" about the existence of probable cause, "immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 343 (1986). "Framing the reasonableness question somewhat differently, the question in determining whether qualified immunity applies is whether all reasonable officers would agree that there was no probable cause in this instance." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1078 (9th Cir. 2011) (citation omitted).

First, the Officers are entitled to qualified immunity on the excessive force claim. While there are fact disputes regarding whether the force used was objectively reasonable, the Officers are entitled to qualified immunity because "officers of reasonable competence could disagree" about the lawfulness of applying prone body-weight pressure on an individual who offered

14

resistance in the process of trying to restrain and handcuff him in order to transport him to needed medical care. *Malley*, 475 U.S. at 343. Unlike cases where officers continued to apply a great deal of body-weight pressure on the individual *after* the suspect is already handcuffed and did so for a clearly prolonged period such as in *Drummond*, here the force was used only as long as was necessary to handcuff the decedent. The body-worn camera footage clearly shows that the Officers' ceased applying such pressure as soon as they were able to handcuff Mr. Gutzalenko. *See* Hall BWC at 12:15-24. Plaintiffs cite to *Scott v. Smith,* 109 F.4th 1215 (9th Cir. 2024), discussed above, to support their claim that the Officers are not entitled to qualified immunity. *Scott* held that the Officers there were not entitled to qualified immunity for excessive force because "any reasonable officer should have known that bodyweight force on the back of a prone, unarmed person who is not suspected of a crime is constitutionally excessive." *Scott*, 109 F.4th at 1226. As noted earlier, there are similarities between the facts in this case and *Scott*. However, *Scott* is distinguishable because the officers there "used their bodyweight on Scott while he was restrained with his hands behind his back, which" the court found was "the functional equivalent of being handcuffed." *Id.* at 1227. Accordingly, *Scott* analogized to *Drummond,* where the Officers applied the body-weight while Drummond was already handcuffed. Conversely, here, the Officers applied the body-weight only to bring both of Mr. Gutzalenko's hands behind his back to be handcuffed. Hall BWC at 12:15-24. The weight was immediately taken off once he was handcuffed. It cannot be said that any reasonable office under these factual circumstances violated clearly established law. *Cf. Saucier v. Katz*, 533 U.S. 194, 208 (2001), *receded in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) ("The [qualified immunity] question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards."). Plaintiffs cite no case law finding a constitutional violation under facts materially similar to the one at bar, particularly where the alleged violation is especially fact intensive.

Next, the Officers are entitled to qualified immunity on the unlawful seizure claim. Plaintiffs concede the City Defendants had probable cause to detain Mr. Gutzalenko. *See* Opp'n at 20 ("Plaintiffs do not dispute that the officers were entitled to place Mr. Gutzalenko in

handcuffs"); Opp'n at 21 ("Plaintiffs also do not dispute that Officers were authorized to detain Gutzalenko for his welfare, pursuant to Section 5150").

Finally, the Officers are entitled to qualified immunity in connection with their role in the paramedic's injection of a chemical restraint. As an initial issue, Plaintiffs present no evidence that police officers, as opposed to paramedics, administered or ordered the administration of a chemical restraint. In fact, the paramedic who administered the chemical restraint testified: "[T]he decision [to administer a chemical restraint] is always mine. The[] [police] do not assist with that unless it's restraining this person so I can inject him." Richardson Dep. at 70:2-13. Further, the paramedic testified that it was his "sole decision to administer the Versed to Mr. Gutzalenko" and that "none of the police officers at the scene told [him] to administer Versed to Mr. Gutzalenko." *Id.* at 168:7-13. That only the paramedics have the physical keys needed to access the chemical which are stored in a "double-locked vault" in the ambulance underscores that the authority to use a chemical restraint lay with the paramedics. *Id.* at 168:20-23.

Further, there is no evidence from the video or elsewhere in the record that the Officers called for the injection. That was a decision made independently by Mr. Richardson. Richardson Dep. at 70:2-13. The parties stipulate that the paramedic "was the only individual at the scene of the incident who administered Versed [the chemical restraint] to Decedent." City Defendants and Plaintiffs' Stipulated Undisputed Statement of Facts at 2. After the Officers had handcuffed Mr. Gutzalenko, their only role was moving part of Mr. Gutzalenko's clothing so that Mr. Richardson could administer the injection. While there is "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment," Plaintiffs provide no clearly established law that such minor facilitation (absent any directive) by the officers violated Due Process. *See Washington v. Harper*, 494 U.S. 210, 221–22 (1990) (holding, *inter alia*, that the treatment of a prisoner against his will did not violate due process where he posed a danger to himself or others and treatment was in his medical interest). Thus, the Officers are entitled to qualified immunity on this issue.

Accordingly, summary judgment on the Officers' entitlement to qualified immunity is **GRANTED**.

### b.    Count Two: Section 1983 against Municipality (*Monell* claim)

Summary judgment is **GRANTED** for City Defendants on Plaintiffs' *Monell* claim for municipal liability under Section 1983.  In their opposition, Plaintiffs defend their *Monell* claim under a policy omission theory.  Specifically, Plaintiffs assert that the City lacks a policy on 1) prone positioning, and 2) the use of a chemical restraint.  Opp'n at 28.

In some circumstances, a municipality may "be held liable under § 1983 for constitutional violations resulting from its failure to train its employees." *Harris*, 489 U.S. at 379.  In police misconduct cases:

> The issue…is whether that training program is adequate; and if it is not, the question becomes **whether such inadequate training can justifiably be said to represent "city policy."** It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees **the need for more or different training is so obvious**, and the **inadequacy so likely to result in the violation of constitutional rights**, that the policymakers of the city can reasonably be said to have been **deliberately indifferent** to the need.

*Id.* at 390 (emphasis added).  Accordingly, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983." *Id.* at 389 (internal citation omitted).  In other words, to demonstrate municipal liability under § 1983 for failure to train, a plaintiff must prove that the failure to train was pursuant to a policy or custom.  Moreover, to establish such liability, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Harris*, 489 U.S. at 385.

### i.    Prone Positioning

Even if a jury finds that the Officers' force was excessive and violated Mr. Gutzalenko's Fourth Amendment rights, summary judgment is **GRANTED** for the City Defendants on whether the City is liable under Section 1983 for failure to train its officers on prone positioning.  Plaintiffs contend that the City "fail[s] to educate City police officers of the dangers of prone positioning and its likelihood to cause asphyxiation when pressure and time are maximized." Opp'n at 28.  However, City Defendants do train their officers on prone positioning.   Lieutenant Daniel Reina

United States District Court
Northern District of California

17

testified that the department "teach[es]" its officers to "limit the amount of pressure on the back" and to "try to avoid it." Reina Dep. at 50:6-16. More specifically, Lieutenant Reina testified: "Based on the totality of the circumstances, we understand that [pressure on the back] could be necessary to overcome the resistance of a subject, but to limit it as much as we can." *Id.* at 47:21-24.

Because the City trains its officers on prone positioning, Plaintiffs cannot demonstrate that the City's failure to train on prone positioning is a policy or custom, or that the City's failure to train on this topic evidences a deliberate indifference to others' rights, or that the City's failure to train on this topic caused the constitutional deprivation at issue here. Plaintiffs presented no evidence that the training was so inadequate that is contributed to the alleged violation by the officers herein. Thus, summary judgment is **GRANTED** on whether the City faces *Monell* liability for a failure to train its officers on prone positioning.

### ii.    Use of Chemical Restraint

Plaintiffs assert that the City is liable under Section 1983 for a failure to train its officers on "assist[ing] [paramedics] with chemical restraint[s]." Opp'n at 28-29. As discussed above, there is no clearly established law that the Officers violated Mr. Gutzalenko's Due Process rights by assisting the paramedic in administering a chemical restraint. They did not order or ask for the injection. Hence, any failure to train on the use of chemical restraints in subduing suspects is immaterial here.

Plaintiffs fail to demonstrate that need for specialized training on the use of chemical restraints is "so obvious" that a lack of training on this issue constitutes a deliberate indifference of others' rights. *Harris*, 489 U.S. at 390. Moreover, Plaintiffs fail to demonstrate that the Officer's pulling back Mr. Gutzalenko's clothing for the paramedic to administer the chemical restraint was a proximate cause of the constitutional deprivation at issue (rather than the paramedic's administration of the chemical restraint). *See Harris*, 489 U.S. at 385 (There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.").

Thus, summary judgment is **GRANTED** for the City Defendants on whether the City is liable for a Section 1983 violation for failing to train its officers on the use of chemical restraints.

18

### 2.    State Law Claims and Related Immunities

#### a.    False Arrest and False Imprisonment

Summary judgment is **GRANTED** for City Defendants on Plaintiffs' false imprisonment and arrest claim (Count Six). "A law enforcement officer cannot be civilly liable for false arrest when '[t]he arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful.'" *Scott v. Cnty. of San Bernardino*, 903 F.3d 943, 953 (9th Cir. 2018) (citing Cal. Penal Code § 847(b)(1)).  Plaintiffs concede that City Defendants had reasonable suspicion or probable cause to detain Mr. Gutzalenko.  *See* Opp'n at 20 ("Plaintiffs do not dispute that the officers were entitled to place Mr. Gutzalenko in handcuffs"); Opp'n at 21 ("Plaintiffs also do not dispute that Officers were authorized to detain Gutzalenko for his welfare, pursuant to Section 5150").  Therefore, Plaintiffs' false arrest claim fails and summary judgment is **GRANTED** on this claim.

#### b.    Bane Act

Similarly, summary judgment is **GRANTED** on Plaintiffs' Bane Act claim (Count Three) because Plaintiffs do not demonstrate that the Officers had the requisite intent to apply not only force, but unreasonable force.[11]  Under California Bane Act § 52.1:

> Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages....

Cal. Civ. Code § 52.1(c).  Subdivision (a) refers to interference or an attempt to interfere "by threat, intimidation, or coercion."  *Id*. § 52.1(a).  To succeed on their Bane Act claim, Plaintiffs must demonstrate that "defendants 'intended not only the force, but its unreasonableness, its character as 'more than necessary under the circumstances.'" *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018).  In other words, Plaintiffs must demonstrate both that the force

---

[11] Plaintiffs bring the Bane Act claim against the Officers, the paramedic, Does 1-10, AMR West, and the City.  *See* SAC at 17.

was unreasonable, and that Defendants had specific intent to violate Mr. Gutzalenko's constitutional rights. For reasons similar to why qualified immunity obtains, Plaintiffs fail to provide facts establishing that the Officers had such specific intent, summary judgment is **GRANTED** on Plaintiffs' Bane Act claim.

### c.    Negligence, Assault and Battery

City Defendants' summary judgment motion as to Plaintiffs' negligence (Count Four) and assault and battery (Count Five) claims are **DENIED** for the same reasons the Court refuses to grant the motion as to whether the Officers used excessive force in violation of the Fourth Amendment. As Defendants recognize, "[c]laims for assault, battery, and negligence based on allegations that an officer used excessive force are analyzed under the Fourth Amendment's objective-reasonableness standard." *Zaragoza v. Cnty. of Riverside*, No. 520CV01381SSSSPX, 2024 WL 661177, at *11 (C.D. Cal. Jan. 4, 2024) (citing *Zwarg v. City of San Luis Obispo*, No. CV 21-3525-DMG (AFMx), 2022 WL 2189538, at *4 (C.D. Cal. Feb. 16, 2022) (analyzing assault and battery claims based on allegations that officers used excessive force are analyzed under the Fourth Amendment's reasonableness standard) and *Diaz v. Cnty. of Ventura*, 512 F. Supp. 3d 1030, 1048 (C.D. Cal. Jan. 8, 2021) (analyzing negligence and battery claims based on allegations that the officers used excessive force under the Fourth Amendment's reasonableness standard)). Because there are genuine disputes about whether the Officers used objectively reasonable or excessive force under the circumstances, summary judgment is **DENIED** on Plaintiffs' assault, battery, and negligence claims.

### a.    Immunities

Next, summary judgment is **DENIED** for City Defendants on whether they are entitled to immunity under California Government Code Sections 820.4 and 815.2(b) as well as Welfare and Institutions Code Section 5278. These immunities do not protect the use of unreasonable force.[12] *See Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 799 (9th Cir. 2018) ("§ 820.2 does not shield

---

[12] California Government Code Section 815.2(b) provides that "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Thus, to seek immunity under this Section, the employee must be immune from liability.

20

from liability government employees who use excessive force in carrying out their duties."); *C.B. v. Moreno Valley Unified Sch. Dist.*, 544 F. Supp. 3d 973, 986 (C.D. Cal. 2021) ("Cal. WIC Section 5278 provides that individuals authorized 'to detain a person for 72-hour treatment and evaluation ... shall not be held either criminally or civilly liable for exercising this authority **in accordance with the law**.'") (emphasis added).

### 3.    Individual Capacity Claim against Chief French

Summary judgment is **GRANTED** for City Defendants on whether Chief Bisa French of the Richmond Police Department is liable under Section 1983 in her individual capacity because the parties stipulate that "Chief French was not present for the subject incident and did not learn about it until after Decedent's death." City Defendants and Plaintiffs' Stipulated Undisputed Statement of Facts at 3.

To state a claim for supervisory liability under § 1983, a plaintiff must demonstrate: "'either (1) [the supervisor's] personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989)).

A plaintiff may establish the requisite causal connection by demonstrating, for instance, that the supervisor "knowingly refused to terminate a series of acts by others, which [they] knew or reasonably should have known would cause others to inflict a constitutional injury." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001). Further, a "supervisor can be liable in his individual capacity 'for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation ...; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1093 (9th Cir. 1998) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991).

The parties stipulated that "Chief French was not present for the subject incident and did not learn about it until after Decedent's death." City Defendants and Plaintiffs' Stipulated Undisputed Statement of Facts at 3. Plaintiffs offer no caselaw substantiating a finding of

21

individual liability where a supervisor learns of the force after the incident. Nor is there any evidence that Chief French was responsible for any failure to train which resulted in a violation of the decedent's rights. Therefore, summary judgment is **GRANTED** for City Defendants on this claim.

### 4.    Punitive Damages

Summary judgment is **GRANTED** for City Defendants on Plaintiffs' punitive damages claim against the individual officers because Plaintiffs do not offer evidence of the requisite intent or indifference.[13] "[P]unitive damages might be awarded in appropriate circumstances in order to punish violations of constitutional rights." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267–68 (1981). In particular, "a jury may award punitive damages under section 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others." *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993) (internal citation omitted); *see Smith v. Wade*, 461 U.S. 30, 56 (1982)).

As stated above, a reasonable officer could believe it was lawful to apply pressure to Mr. Gutzalenko's back while he was prone and resistive in order to effectuate cuffing him so that he could be safely transported to emergency medical care. And no reasonable officer would know that offering minor assistance to the injection of Versed violated the Constitution under the circumstances. Plaintiffs do not present evidence that the Officers acted with the requisite evil motive or reckless or callous indifference to Mr. Gutzalenko's constitutional rights. Accordingly, summary judgment is **GRANTED** on this claim.

### B.    Medical Defendants

#### 1.    Federal Claims

##### a.    Count One: Section 1983 Claim Against Paramedic Richardson (excessive force)

---

[13] The punitive damages claim should proceed only as against the individual officers and the paramedic, but not against the public entities as they are immune from this category of damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding that "a municipality is immune from punitive damages under 42 U.S.C. § 1983").

22

Summary judgment is **GRANTED** for Medical Defendants on whether Mr. Richardson (the paramedic who administered the chemical restraint) is liable under Section 1983 because Mr. Richardson was not acting under color of law. Mr. Richardson admitted that he administered the chemical restraint for safety reasons, rather than to restrain Mr. Gutzalenko in a law enforcement capacity. Specifically, Mr. Richardson injected Mr. Gutzalenko to protect himself and others in the ambulance.

Normally, private parties are not acting under color of state law, and as such, no cause of action under Section 1983 is available. *Price v. Hawaii*, 707-08 (9th Cir. 1991). Non-governmental actors are generally considered not acting under color of state law. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924 (1982). However, an action may be brought against a corporation for alleged violations of the Constitution if the actions of a private party were fairly attributable to or interrelated with the federal or state government. *Id.* at 936.

The Ninth Circuit has articulated four tests for determining whether a private person acted under color of law: (1) the public function test, (2) the joint action test, (3) the government nexus test, and (4) the government coercion or compulsion test. *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002); *Lopez v. Dept. of Health Services*, 939 F.2d 881, 883 (9th Cir. 1991) (citing cases and describing the "joint action test" and the "governmental nexus test."). Specifically, the Plaintiffs herein assert the joint action test wherein a Section 1983 action can lie against a private party when "he is a willful participant in joint action with the State or its agents." *See Kirtley v. Rainey,* 326 F.3d 1088, 1092 (9th Cir. 2003).

The presence of state action in situations involving action taken by a medical worker such as a paramedic in the context of an arrest typically turns on whether the paramedic acted in a law enforcement capacity when restraining a person or instead acted to provide medical assistance to the detainee. *See Perez v. City of Fresno*, 98 F.4th 919, 931 (9th Cir. 2024) (finding that plaintiffs "did not present evidence from which a reasonable jury could find that [a paramedic] was acting in a law-enforcement capacity" where the "paramedic[] attempt[ed] to render emergency medical aid to a patient by restraining him in preparation for a medical transport").

Mr. Richardson testified that he administered Versed to Mr. Gutzalenko while Mr.

23

Gutzalenko was handcuffed to protect himself and others in the ambulance (rather than to detain Mr. Gutzalenko in a law enforcement capacity). Specifically, Mr. Richardson testified: "The reason why I wanted to draw up some Versed and give it to Ivan was for my own safety once -- to get him on the gurney and into the back of the ambulance." Richardson Dep. at 79:13-16. Regarding his intention behind administering the chemical restraint, Mr. Richardson testified:

> My intentions were to make it as safe as possible for everybody involved while we get him on the gurney, take off the handcuffs, get him on my restraints, and then get him in the back of the ambulance. After 17 years of experience…as soon as we take off the handcuffs for patients…they start becoming more and more agitated, and then it becomes a lot more dangerous for everybody involve to try to restrain them on the gurney. So that was the reason I gave him the Versed, was for all of our safety.

*Id.* at 144:1-10. There is no evidence that Mr. Richardson administered Versed in order to assist the Officers in subduing or handcuffing Mr. Gutzalenko. Mr. Gutzalenko was already cuffed and appeared non-responsive when Mr. Richardson injected him. Tagorda BWC at 7:30-7:37.

Contrary to Plaintiffs' characterization, Mr. Richardson's testimony regarding his intent does not contradict his later testimony that "one of the reasons why [he] chose to go get Versed" or "chose to restrain [Mr. Gutzalenko] chemically" was to "help calm him down." *Id.* at 166:3-8. That statement was consistent with Mr. Richardson's asserted intent to keep the decedent calm so he would not injure those in the ambulance.

Plaintiffs' caselaw is distinguishable. In *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742 (9th Cir. 2020), the Ninth Circuit affirmed a district court's summary judgment ruling that a hospital and hospital employees acted under color of law when they forcibly injected a patient involuntarily committed at a hospital to detain and treat the individual beyond the initial 72-hour emergency evaluation period permitted under Washington law. *See* RCW §§ 71.05.153(4), .020(11) (on emergency detention of persons with behavioral health disorders). The court highlighted that "[m]edical providers in Washington can neither detain nor forcibly treat a mental health patient past an initial 72-hour emergency evaluation period without a court order" and the county "prosecutor was heavily involved in the decisionmaking process regarding [the patient's] detention, diagnosis, and treatment." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 754-55

(9th Cir. 2020). Specifically, the medical defendants "communicated extensively with the prosecutor regarding discharge possibilities, current treatment methods, the strength of the evidence against Rawson, and the theory to argue to the jury." *Id.* at 754. Under these circumstances, the court held that "the role played by the county prosecutor here, in practice and by statute, supports a finding of state action by the Defendants." *Id.* Unlike in *Rawson*, no state actor was extensively involved in the medical defendants' activity and the Officers did not effectuate a Section 5150 hold.

Accordingly, summary judgment is **GRANTED** for Medical Defendants on whether Mr. Richardson is liable under Section 1983 because he was not acting under color of law.

### b.     Count Two: Section 1983 (*Monell* claim)

*Monell* liability lies "against state or municipal officials who violated federal constitutional rights while acting under color of law." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 682 (1978) (internal emphasis omitted). Mr. Richardson was not acting under color of law. Therefore, summary judgment is **GRANTED** for Medical Defendants on whether AMR West is liable under Section 1983 because there was no state action.

### 2.     State Law Claims

### a.     Count Five: Assault and Battery

Summary judgment is **DENIED** on whether Mr. Richardson is liable for assault and battery because there is a fact dispute regarding whether consent was implied here and whether Mr. Richardson administered the Versed to facilitate medical services for Mr. Gutzalenko.

Providing medical treatment to a person without their consent constitutes a battery. *Rainer v. Community Memorial Hospital*, 18 Cal. App. 3d 240, 255, 95 Cal.Rptr. 901 (1971). At the same time, "the law provides that in an emergency consent is implied." *Cobbs v. Grant*, 8 Cal. 3d 229, 243 (1972). Such implied consent is based on common law, and courts find such consent under specific factual circumstances. In particular, "[i]t is the general rule that in cases of emergency, or unanticipated conditions where some immediate action is found **necessary for the preservation of the life or health of a patient** and it is **impracticable to first obtain consent** to the operation or treatment which the [medical actor] deems to be immediately necessary, the

25

[medical actor] is justified in extending the operation to remove and overcome such conditions without the express consent of the patient thereto." *Preston v. Hubbell*, 87 Cal. App. 2d 53, 57–58 (1948) (emphasis added).

It is undisputed that Mr. Gutzalenko was experiencing a medical emergency and needed help. Plaintiffs concede:

> During the Officers' interactions with Decedent, **it was clear that Decedent was** intoxicated and/or **experiencing a medical emergency,** including that he appeared blue in the face, disoriented, had dilated pupils, a large bruise on his head, dried vomit in his facial hair, and he was spitting up blood, bleeding profusely from his hand, and claiming that he was having difficulty breathing.
>
> **It was clear Decedent needed medical help and that he was unable to care for himself** when the Officers encountered him.

City Defendants and Plaintiffs' Statement of Undisputed Facts at 2 (emphasis added). Thus, Mr. Gutzalenko was experiencing a medical emergency.

However, there is a genuine dispute of fact regarding whether Mr. Richardson's administration of Versed was "necessary for the preservation of the life or health of a patient." *Preston*, 87 Cal. App. 2d at 57–58. While Defendants argue that he "attempted to provide medical care and when the decedent's aggressive behavior made that too difficult, he administered Versed to calm him so that once the decedent was no longer in handcuffs, [he] could provide care to [Mr. Gutzalenko] in the ambulance." Reply at 8. Plaintiffs dispute this characterization through Mr. Richardson's deposition testimony where Mr. Richardson testified that Mr. Gutzalenko "didn't appear to be violently resisting" when he injected Mr. Gutzalenko with Versed. While he administered the Versed to "calm the patient down" to "mak[e] it safer for everybody involved," it is not clear that given the decedent was already non-responsive, it was necessary to do so, even with that intent in mind. Richardson Dep. at 90:16-91:1. Consequently, a fact dispute exists regarding whether consent may properly be implied. *Cobbs*, 8 Cal. 3d at 243. Therefore, summary judgment is **DENIED** on whether Medical Defendants are liable for assault and battery.

### b.    Count Six: False Arrest and Imprisonment

Summary judgment is **GRANTED** on whether Medical Defendants are liable for false

26

arrest and imprisonment.

"The statutory definition of false imprisonment, like that of battery ... is in the Penal Code: 'False imprisonment is the unlawful violation of the personal liberty of another.'" California P.C. 236; *see Parrott v. Bank of America*, 97 C.A.2d 14, 22, 217 P.2d 89 (1950) (explaining that the definition of crime and tort are the same). False imprisonment involves the intentional confinement of another against the person's will. (a) [§ 499] Definition and Distinctions., 5 Witkin, Summary 11th Torts § 499 (2023). The elements are (1) nonconsensual, intentional confinement of a person, (2) without lawful privilege, (3) for an appreciable period of time, however brief. *See Easton v. Sutter Coast Hosp.*, 80 C.A.4th 485, 496, 95 Cal.Rptr.2d 316 (2000); Rest.2d, Torts § 35; on pleading cause of action, *see* 5 *Cal. Proc.* (5th), *Pleading*, § 763 et seq. A false arrest is one way to commit a false imprisonment; i.e., because the arrest involves detention or restraint, it always involves imprisonment. False arrest and false imprisonment are therefore not separate torts. *Moore v. San Francisco* (1970) 5 C.A.3d 728, 735, 85 C.R. 281; *Collins v. San Francisco* (1975) 50 C.A.3d 671, 673, 123 C.R. 525.

There is no evidence of false arrest and imprisonment because the Officers had already restrained and placed Mr. Gutzalenko in custody, such that Mr. Richardson cannot be said to have deprived Mr. Gutzalenko of his freedom of movement. Therefore, summary judgment is **GRANTED** on this claim.

### c.   **Statutory Immunity**

Summary judgment is **DENIED** on whether Mr. Richardson and AMR West are entitled to statutory immunity under Health and Safety Code §1799.106. Health and Safety Code §1799.106 provides:

> [T]o encourage the provision of emergency medical services by firefighters, police officers or other law enforcement officers, EMT-I, EMT-II, EMT-P, or registered nurses, a firefighter, police officer or other law enforcement officer, EMT-I, EMT-II, EMT-P, or registered nurse **who renders emergency medical services at the scene of an emergency** or during an emergency air **or ground ambulance transport shall only be liable in civil damages for acts or omissions performed in a grossly negligent manner or acts or omissions not performed in good faith.** A public agency employing such a firefighter, police officer or other law enforcement

27

officer, EMT-I, EMT-II, EMT-P, or registered nurse shall not be liable for civil damages if the firefighter, police officer or other law enforcement officer, EMT-I, EMT-II, EMT-P, or registered nurse is not liable.

Cal. Health & Safety Code § 1799.106 (emphasis added). Assuming the statute applies, there is a material fact dispute regarding whether Mr. Richardson acted with gross negligence or in bad faith. Gross negligence is a "'want of even scant care or an extreme departure from the ordinary standard of conduct.'" *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175, 1185–86 (2003) (*citing Franz v. Board of Medical Quality Assurance,* 31 Cal.3d 124, 138 (1982). Accordingly, the question is where anything in "plaintiffs' pleadings or…briefs points to such extreme conduct." *Id.*

Plaintiffs argue that Mr. Richardson's behavior was an extreme departure from the ordinary standard of conduct for three reasons. First, "Richardson conducted a visual medical examination of Mr. Gutzalenko prior to injecting the Versed, in which Richardson learned Mr. Gutzalenko was experiencing difficulties breathing." Opp'n at 22 (citing Richardson Dep. at 45:6-15). Second, "Richardson failed to take any given opportunity to prevent accidental intravenous injection even though he recognized this was a possibility that could be lethal." *Id.* at 23 (citing Richardson Dep. at 87:25-88:3). Third, "Richardson failed to monitor Mr. Gutzalenko's heart, breathing, and temperature which would have informed the proper dosage of Versed to prevent an accidental overdose." *Id.* (citing Richardson Dep. at 23:4-25:9, 94:13-20). While it is unclear whether these facts should have impacted the determination to administer a chemical restraint, Medical Defendants do not provide evidence that such actions or inactions are not extreme departures from the ordinary standard of conduct. This is especially so when the decedent clearly had trouble breathing even before being place in a prone position and appeared non-responsive by the time the injection was made. *See* Richardson Dep. at 13:6-12 (Mr. Richardson testifies that he was "taught that [Versed] could cause respiratory depression on its own if it was administered in too high of a dose."); *see* Herrington Ex. Rep at 5 (Dkt. 103-9) (showing that the Contra Costa Prehospital Care Manual instructs to "[o]bserve respiratory status" when administering Versed). Consequently, summary judgment is **DENIED** on whether Mr. Richardson acted with gross negligence or in bad faith; he and AMR West are not entitled to qualified immunity. *See Colich &*

28

*Sons v. Pac. Bell*, 198 Cal. App. 3d 1225, 1241 (1988) ("Whether there has been such a lack of care as to constitute gross negligence is generally a triable question of fact.").

## V.    CONCLUSION

For the reasons above, Defendants' respective motions for summary judgment are **GRANTED IN PART** and **DENIED IN PART**.

Out of an abundance of caution, the Court is sealing the entirety of this order. The parties are ordered to meet and confer to determine what, if any, portions of this order are required to be sealed. Within three weeks of this order's filing date, the parties shall file a stipulation containing a narrowly tailored sealing request.

**IT IS SO ORDERED**.

Dated: July 8, 2025

_____
EDWARD M. CHEN
United States District Judge