BARRY C. MARSH, ESQ. (SBN 99908)
SCOTT R. KANTER, ESQ. (SBN 199696)
**HINSHAW, MARSH, STILL & KANTER, LLP**
12901 SARATOGA AVENUE
SARATOGA, CALIFORNIA 95070
Phone: (408) 861-6500
Fax: (408) 257-6645
Email: bmarsh@hinshaw-law.com
Email: skanter@hinshaw-law.com

Attorneys for Defendants AMERICAN MEDICAL RESPONSE WEST (errantly sued herein as "AMERICAN MEDICAL RESPONSE, a corporate entity") and DAMON RICHARDSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN GUTZALENKO, Deceased, through his Co-Successors in Interest, N.G. and N.I.G., minors through their mother and Next Friend, Honey Gutzalenko, individually and as Co-successors in Interest for IVAN GUTZALENKO, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF RICHMOND, a public entity; RICHMOND CHIEF OF POLICE BISA FRENCH, in her individual and official capacities; RICHMOND POLICE OFFICERS TOM TRAN, MARK HALL, and CEDRIC TAGORDA; and DOES 1-10, Jointly and Severally,<br><br>Defendants. | Case No.: 3:22-CV-02130-EMC<br><br>**REPLY BRIEF TO PLAINTIFFS' BRIEF RE APPLICABLITY OF MICRA TO PLAINTIFF'S ALLEGED COUNT 5: ASSAULT AND BATTERY AGAINST DEFENDANT DAMON RICHARDSON**<br><br>Complaint filed: April 4, 2022 |

**I.**

**MICRA IS APPLCABLE TO PLAINTIFF'S ASSAULT AND BATTERY COUNT AGAINST AMR WEST PARAMEDIC DAMON RICHARDSON.**

At the outset, it should be reiterated that the instant lawsuit was not filed on August 9, 2023 as plaintiffs suggest in their opening brief— it was filed on **April 4, 2022.** (See Dkt#1 Complaint.) Further, Count Five within the Second Amended Complaint (Dkt#49) is *not* alleged against

---

1

REPLY BRIEF RE APPLICABILITY OF MICRA TO COUNT 5 FOR ASSAULT AND BATTERY
AGAINST DEFENDANT DAMON RICHARDSON        No. 3:22-CV-02130-EMC

Law Offices of
**HINSHAW, MARSH, STILL & KANTER**
A Partnership
12901 Saratoga Avenue
Saratoga, CA 95070

(408) 861-6500

1  defendant AMR West and as that is the only Count still remaining against the "medical defendants",
2  AMR West is no longer a named defendant.

3        The court's dismissal of the negligence cause of action against the medical defendants does
4  not change the gravamen of the allegations against the AMR West paramedic DAMON
5  RICHARDSON.  Despite Count 5 nominally being called "assault and battery" this is essentially a
6  medical negligence case as to the remaining medical defendant Mr. RICHARDSON.  In this case,
7  plaintiff alleges that the paramedic failed to check on the decedent's vitals and aspirate the syringe
8  before administering the Versed.  The alleged assault and battery is inextricably intertwined with the
9  alleged professional negligence and cannot be separated from it because it is based upon the alleged
10 failure to comply with the standard of care applicable to paramedics.  Thus, MICRA applies to Count
11 5: assault and battery.

12       Plaintiffs admit in their initial brief that plaintiff was having a mental and health emergency
13 that required immediate medical care.  That is exactly what DAMON RICHARDSON was trying to
14 provide.  The only way to provide that emergent care and treatment to Mr. Gutzalenko was to calm
15 him down so that care could reasonably be provided.  This is not a case involving a true medical
16 battery in which the patient consents to one type procedure but a completely different one is
17 performed such as in *Perry v. Shaw* (2001) 88 Cal.App.4th 658, 668, fn. 4.  Thus, the cases cited by
18 plaintiffs in their brief are inapposite to the facts and evidence of this case.

19       In their brief, plaintiffs acknowledge that it is undisputed Mr. Gutzalenko could not consent to
20 treatment because of the nature of his mental and health breakdown in this emergent situation.  "The
21 law provides that in an emergency consent is implied."  (*Cobbs v. Grant,* 8 Cal. 3d 229, 243 (1972).)
22 A patient should be denied the opportunity to weigh the risks when it is evident he cannot evaluate
23 the data, as for example, where there is an emergency or the patient is a child or incompetent. (*Id.*)

24       It is the general rule that in cases of emergency, or unanticipated conditions where some
25 immediate action is found necessary by the provider for the health of a patient and it is impracticable
26 to first obtain consent to the treatment **which *the provider*** deems to be immediately necessary, the
27 provider is justified in providing care without the express consent of the patient thereto. (*Preston v.*
28 *Hubbell*, 87 Cal. App. 2d 53, 57–58 (1948).)

Law Offices of
**HINSHAW, MARSH,
STILL & KANTER**
A Partnership
12901 Saratoga Avenue
Saratoga, CA 95070

(408) 861-6500

2

REPLY BRIEF RE APPLICABILITY OF MICRA TO COUNT 5 FOR ASSAULT AND BATTERY
AGAINST DEFENDANT DAMON RICHARDSON      No. 3:22-CV-02130-EMC

  Mr. RICHARDSON planned to provide emergent medical care to the decedent but there was initially no way to do it while he was being combative. As shown on the police cam videos reviewed by the court with respect to defendants' motions for summary judgment, Mr. Gutzalenko was combative with police for an extended period of time and when Mr. RICHARDSON returned with a vial of Versed to administer it to Mr. Gutzalenko, **the police informed him that he was "faking" being calm**. Taking no chances, Mr. RICHARDSON injected him with Versed to ensure he could provide care and treatment. It is alleged that Mr. RICHARDSON should have checked the patient's vitals before administering it but that would relate to the applicable standard of care (negligence which has been dismissed) and MICRA would apply.

  Obviously, in an emergent situation like this one in which the patient is unable to give his consent to emergent medical treatment, a paramedic such as Mr. RICHARDSON would be entirely disincentivized to provide *any* care and treatment if it could be argued to be a medical battery simply because the patient did not consent to it. This would be against public policy and contravene the purpose of the MICRA statutes.

  Plaintiffs argue that the Versed was only administered by Mr. RICHARDSON for his own benefit rather than for a medical reason and cites to *So v. Shin* (2013) 212 Cal.App.4th 652. However, the facts of *So v. Shin* are entirely distinguishable from the facts of this case. In *So*, the plaintiff underwent a dilation and curettage (D&C) procedure following a miscarriage. Plaintiff alleged that she was administered inadequate anesthesia and awoke during the procedure. When she later confronted the anesthesiologist, the anesthesiologist became angry, shoved a container filled with the plaintiff's blood and tissue at her, then urged the plaintiff not to report the incident. The plaintiff sued for negligence, assault and battery, and intentional infliction of emotional distress. (*Id*. at p. 656.) The Court of Appeal said: "[P]rofessional negligence is only that negligent conduct engaged in for the purpose of (or the purported purpose of) delivering health care to a patient . . . . [T]ortious actions undertaken for a different purpose . . . are not [professional negligence]. [¶] . . . [P]laintiff alleges that [the anesthesiologist] engaged in the alleged tortious conduct for the purpose of persuading plaintiff not to report to the hospital or medical group that plaintiff had awakened during surgery. In other words, plaintiff alleges that [the anesthesiologist] acted for her own benefit,

Law Offices of
HINSHAW, MARSH, STILL & KANTER
A Partnership
12901 Saratoga Avenue
Saratoga, CA 95070

(408) 861-6500

3

REPLY BRIEF RE APPLICABILITY OF MICRA TO COUNT 5 FOR ASSAULT AND BATTERY AGAINST DEFENDANT DAMON RICHARDSON   No. 3:22-CV-02130-EMC

1  to forestall an embarrassing report that might damage her professional reputation–not for the benefit
2  of the patient." (*Id.* at pp. 666–667.) "[N]egligent conduct allegedly undertaken by a doctor for the
3  doctor's own benefit, rather than for a legitimate medical reason," is not "professional negligence."
4  (*Id.*)  Unlike in *So*, the alleged wrongdoing by a Mr. RICHARDSON occurred within the scope of his
5  provision of professional services as a paramedic.

6           A.      Civil Code Section 3333.2 (Limiting Recovery of Noneconomic Damages).

7           One purpose of this MICRA provision is to "provide a more stable base on which to calculate
8  insurance rates" by eliminating the "unpredictability of the size of large noneconomic damage
9  awards, resulting from the inherent difficulties in valuing such damages and the great disparity in the
10 price tag which different juries placed on such losses." (*Fein v. Permanente Medical Group* (1985)
11 38 Cal.3d 137, 163; see *Lopez v. Ledesma* (2022) 12 Cal.5th 848, 859–860, 864; *Western Steamship
12 Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 112; *Lathrop v. HealthCare
13 Partners Medical Group* (2004) 114 Cal.App.4th 1412, 1419; *Perry v. Shaw (*2001) 88 Cal.App.4th
14 658, 668.)  Another purpose is to "promote settlements by eliminating 'the unknown possibility of
15 phenomenal awards for pain and suffering that can make litigation worth the gamble.'" (*Fein*, at p.
16 163.)  "The prospect of a fixed award of noneconomic damages not only increases plaintiffs' motive
17 to settle, as noted in *Fein*, but also restrains the size of settlements.  Settlement negotiations are based
18 on liability estimates that are necessarily affected by the [applicable MICRA] cap.  By placing an
19 upper limit on the recovery of noneconomic damages at trial, the Legislature indirectly but effectively
20 influenced the parties' settlement calculations." (*Rashidi v. Moser* (2014) 60 Cal.4th 718, 727.)
21 Another purpose is to be fair to medical malpractice plaintiffs by "reduc[ing] only the very large
22 noneconomic damage awards, rather than to diminish the more modest recoveries for pain and
23 suffering and the like in the great bulk of cases." (*Fein*, at p. 163.)

24          B.      MICRA Is Applicable to Count 5: Assault and Battery

25          MICRA was not enacted to only be applicable to "classic medical malpractice" as plaintiffs
26 have argued in their brief.  It was enacted for the reasons outlined in defendant's original brief and
27 reflects the strong public policy to contain the costs of malpractice insurance by controlling or
28 redistributing liability for damages.  The MICRA statutes are to be applied *liberally* and apply to any

Law Offices of
HINSHAW, MARSH,
STILL & KANTER
A Partnership
12901 Saratoga Avenue
Saratoga, CA 95070

(408) 861-6500

action for injury against a healthcare provider based upon professional negligence/medical malpractice which can include other causes of action such as assault and battery as was alleged in this case. (*Preferred Risk Mutual Insurance Company v. Reiswig* (1999) 21 Cal.4th 208, 215.) An action is based on "professional negligence" and thereby subject to section 3333.2's cap on noneconomic damages when, as in this case, a health care provider's alleged provision of services is "within the scope of services for which the provider is licensed" and "are not within any restriction imposed by the licensing agency or licensed hospital." (§ 3333.2, subd. (c)(2).)

In this case, Mr. RICHARDSON was providing care and treatment to a patient as a paramedic for which he is licensed. This court's ruling that MICRA applies to the assault and battery count alleged against Mr. RICHARDSON, even though it could be characterized as an intentional tort, would be entirely consistent with pertinent case law and MICRA's purpose to "control and reduce medical malpractice insurance costs by placing a predictable, uniform limit on a defendant's liability for noneconomic damages." (*Salgado v. County of Los Angeles* (1998) 19 Cal.4th 629, 641.) After the court's consideration of the purpose underlying each of the individual MICRA statutes, it would be appropriate to recognize that the scope of conduct afforded protection under MICRA provisions (actions '*based on* professional negligence') must be determined by the facts alleged and the evidence of the case. (*Central Pathology Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181, 192)

Although the operative complaint alleges a cause of action against a health care provider on a legal theory other than medical malpractice, this court must determine whether it is nevertheless based on the 'professional negligence' of the health care provider so as to trigger MICRA.

The holding in *Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, is directly on point with this case. MICRA applied to claims for battery and intentional infliction of emotional distress because they were based on the health care provider's professional negligence. This case is no different. Mr. RICHARDSON's decision to administer Versed was for the purpose of rendering professional services. He needed to calm the patient to not only protect himself as a health care provider but also so that he could provide medical services. As shown on the video attached to the recent motions for summary judgment, Mr. RICHARDSON could not even bandage Mr.

Law Offices of
HINSHAW, MARSH,
STILL & KANTER
A Partnership
12901 Saratoga Avenue
Saratoga, CA 95070

(408) 861-6500

Gutzalenko's hand because he was combative even while the police were present. There was no reason for him to think that the situation would get any better when it was just, he and Mr. Gutzalenko with no handcuffs in place, in the back of the ambulance. Mr. RICHARDSON had to provide care and treatment to Mr. Gutzalenko and there was no way Mr. RICHARDSON could do that until he could ensure Mr. Gutzalenko remained calm and was not "faking" being calm as the police believed he was doing just before the Versed was administered. The question of whether it was reasonable for Mr. RICHARDSON to believe the police and not further evaluate the patient before administering the Versed is an issue relating to the applicable standard of care/negligence.

      The count for assault and battery alleged in this case is based on the factual allegation that the Versed did not need to be administered prior to Mr. Gutzalenko being placed on a gurney and taken via ambulance to the hospital. The alleged professional negligence is inextricably intertwined with the "assault and battery" such that MICRA would apply because it relies on the same facts as the professional negligence claim that was earlier dismissed. This case is essentially nothing more than a professional negligence case and MICRA should apply.

Dated: August 28, 2025                    HINSHAW, MARSH, STILL & KANTER, LLP

By:   */s/ Scott R. Kanter*
      SCOTT R. KANTER, ESQ.
      Attorney for Defendant DAMON RICHARDSON

Law Offices of
**HINSHAW, MARSH, STILL & KANTER**
A Partnership
12901 Saratoga Avenue
Saratoga, CA 95070
(408) 861-6500

6
REPLY BRIEF RE APPLICABILITY OF MICRA TO COUNT 5 FOR ASSAULT AND BATTERY AGAINST DEFENDANT DAMON RICHARDSON    No. 3:22-CV-02130-EMC

# **CERTIFICATE OF SERVICE**

I hereby certify on August 28, 2025, I electronically filed this document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all individuals at the e-mail addresses denoted on the Electronic Mail Notice List for this case with the United States District Court for the Northern District of California.

                                     */s/   Anna Obey*
                                        Anna Obey

Law Offices of
**HINSHAW, MARSH,
STILL & KANTER**
A Partnership
12901 Saratoga Avenue
Saratoga, CA 95070

(408) 861-6500

7

**REPLY BRIEF RE APPLICABILITY OF MICRA TO COUNT 5 FOR ASSAULT AND BATTERY AGAINST DEFENDANT DAMON RICHARDSON**　　　　　　　**No. 3:22-CV-02130-EMC**