UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN GUTZALENKO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF RICHMOND, et al.,<br><br>Defendants. | Case No. 3:22-CV-02130<br><br>**ORDER RE APPLICABILITY OF MICRA**<br><br>Docket No. 116 |

## I. INTRODUCTION

This order concerns the applicability of the Medical Injury Compensation Reform Act ("MICRA") to Plaintiffs' assault and medical battery claim against Defendants American Medical Response West ("AMR West") and paramedic Damon Richardson (collectively, the "Medical Defendants").

California Civil Code section 3333.2 ("section 3333.2") sets a cap on the total amount of noneconomic damages a party can recover in suits against healthcare providers "based on professional negligence." Cal. Civ. Code § 3333.2.

Plaintiffs allege that MICRA's cap on noneconomic damages is inapplicable because Mr. Richardson's actions constituted an intentional tort. Plaintiffs' Brief on Applicability of MICRA, at 3 (Dkt. 120). They argue that, because their claim is one for assault and battery and not negligence, MICRA is wholly inapplicable. *Id.* at 7. In addition, Plaintiffs contend that MICRA's cap on noneconomic damages does not apply to settlement figures, and thus they could potentially recover more than MICRA's cap during settlement. *Id.* Finally, in the alternative, Plaintiffs assert that, even if MICRA were applicable, they could recover an amount up to the MICRA cap for

1  each of the survival and wrongful death claims, thereby doubling the cap.  *Id.* at 8.[1]

2  In opposition, Medical Defendants argue that MICRA applies because the alleged assault
3  and battery is "inextricably intertwined" with professional negligence.  Medical Defendants' Brief
4  on Applicability of MICRA, at 9 (Dkt. 121).  Because Mr. Richardson acted within the scope of
5  his paramedic license, Medical Defendants allege that Plaintiffs' assault and battery claims are
6  nevertheless based on a professional negligence cause of action.  *Id.* at 6–7.  Thus, Medical
7  Defendants argue that MICRA applies, and Plaintiffs' total noneconomic damages must be
8  capped.

9  For the reasons explained below, the Court concludes that MICRA applies because
10  Plaintiffs' remaining claims against Medical Defendants are based on professional negligence.
11  Accordingly, should a jury find the elements of assault and battery met, the MICRA damages cap
12  would apply.  Moreover, the Court finds that the current version of section 3333.2 governs and
13  that the section 3333.2 cap does not apply to settlement figures.  Finally, Plaintiffs may recover up
14  to $500,000 in noneconomic damages for the wrongful death claim and an additional $500,000 for
15  the survival claim.

## II. BACKGROUND

### A. Factual Background

On March 10, 2021, a Richmond police officer responded to a call for service about a man causing a disturbance in a furniture store on San Pablo Avenue in Richmond, California.  *See* Joint Statement of Undisputed Facts, at 2 (Dkt. 97).  When the police officer arrived at the scene, he encountered Mr. Gutzalenko, the decedent.  *Id.*  Mr. Gutzalenko needed medical aid and was "possibly intoxicated or experiencing a medical emergency."  *Id.*  Specifically, Mr. Gutzalenko had a dark purple mark on his forehead, was bleeding profusely from one of his hands, and had difficulty focusing on and communicating with the police officer.  *Id.*  Mr. Gutzalenko was also having a hard time breathing.  *See* Second Amended Complaint ("SAC") ¶ 21 (Dkt. 49); Medical

---

[1] Plaintiffs claim they are entitled to noneconomic damages for both the wrongful death claim, to compensate the surviving family, and the survival claim, for damages the decedent suffered and could have recovered had he lived.  *See* Second Amended Complaint ("SAC") ¶ 29 (Dkt. 49).

2

Defendants' Motion for Summary Judgment ("MSJ"), at 6 (Dkt. 99). The officers asked Mr. Gutzalenko about what was wrong and attempted to support his breathing. *See* SAC ¶ 21; Medical Defendants' MSJ, at 6.

Medical Defendants, AMR West and the paramedic Mr. Richardson, arrived in an ambulance and attempted to bandage Mr. Gutzalenko's hands. SAC ¶ 22; Medical Defendants' MSJ, at 7. Mr. Gutzalenko became agitated and tried to keep his hands away. SAC ¶ 22; Medical Defendants' MSJ, at 7. After Mr. Gutzalenko began to resist, the police officers attempted to handcuff him. SAC ¶ 22; *see* Medical Defendants' MSJ, at 7. During this struggle, Plaintiffs allege that Officer Tran applied his knee to Mr. Gutzalenko's back while he was in a prone position. SAC ¶ 22. By the time the handcuffs were placed on Mr. Gutzalenko, Plaintiffs claim that he had become non-responsive and no longer resistive. *Id.* After Mr. Gutzalenko was handcuffed on the ground, Defendant Mr. Richardson injected Mr. Gutzalenko with Versed, a chemical restraint. *Id.* ¶ 23; Reply ISO Medical Defendants' MSJ, at 4 (Dkt. 104). At this juncture, there is no dispute that Mr. Richardson administered the chemical restraint for safety reasons, rather than to restrain Mr. Gutzalenko in a law enforcement capacity; he injected Mr. Gutzalenko to protect himself and others in the ambulance during transport of Mr. Gutzalenko to the hospital. SJ Order, at 23. Plaintiffs claim that Mr. Richardson did not "aspirate" the syringe when he administered the Versed to ensure it was not in the vein. SAC ¶ 23. Plaintiffs allege that Mr. Gutzalenko stopped breathing within 90 seconds of the Versed administration. *Id.*; *see also* Medical Defendants' Brief on Applicability of MICRA, at 9. Mr. Gutzalenko was pronounced dead after he was taken to Summit Hospital in Oakland. SAC ¶ 23; Medical Defendants' MSJ, at 8–9. An autopsy determined the cause of death was prone restraint asphyxia and cardiac arrest while under the influence of methamphetamine. SAC ¶ 24; Medical Defendants' MSJ, at 9.

B. <u>Procedural History</u>

Plaintiffs are family members of the decedent. Plaintiffs brought this action alleging civil rights violations, medical negligence, and wrongful death, among other claims, against the City of Richmond, its police department chief, and police officers Tom Tran, Mark Hall, and Cedric Tagorda (collectively, "City Defendants"). As relevant here, Plaintiffs also brought this action

3

1  against the ambulance company AMR West and its paramedic Damon Richardson who medically
2  intervened and potentially contributed to Mr. Gutzalenko's death.
3        Plaintiffs filed their original Complaint on April 4, 2022 and First Amended Complaint
4  ("FAC") on June 22, 2023.  Original Complaint (Dkt. 1); FAC (Dkt. 42).  Plaintiffs filed the
5  operative SAC on August 9, 2023, which includes six federal and state causes of action.  SAC.
6  The City and Medical Defendants filed motions for summary judgment on Counts One
7  (unreasonable seizure and excessive force), Two (municipal liability), Five (assault and battery),
8  and Six (false arrest and false imprisonment).  City Defendants' MSJ (Dkt. 89); Medical
9  Defendants' MSJ.  The Court granted summary judgment in part and denied it in part.  Summary
10  Judgment Order ("SJ Order") (Dkt. 108).  As to the Medical Defendants, the Court granted
11  summary judgment on Counts One, Two, and Six.  *Id.* at 22–23, 25–26.  The Court only denied
12  summary judgment on Count Five (assault and battery).  *Id.* at 25.  Accordingly, the only live
13  claim before the Court against Medical Defendants is for assault and battery.[2]  No causes of action
14  remain alleging negligence or medical malpractice.

C.     Statutory Framework

      MICRA was enacted in 1975 to address a "crisis regarding the availability of medical malpractice insurance" in California.  *Reigelsperger v. Siller,* 40 Cal. 4th 574, 577 (Cal. 2007). Insurers warned that the cost of providing medical malpractice coverage had become unsustainably high, prompting some carriers to stop issuing new policies and others to raise premiums to "skyrocketing" levels.  *See Am. Bank & Tr. Co. v. Cmty. Hosp.*, 36 Cal. 3d 359, 371 (Cal. 1984).  Consequently, many doctors purportedly stopped conducting higher-risk procedures or practiced without malpractice insurance.  *Id.*  As a result, certain medical care was not adequately available, and patients faced the risk of receiving judgments that could not be enforced against doctors without malpractice insurance.  *Id.*

---

[2] Medical Defendants' assertion that this Court granted summary judgment for all claims against Medical Defendants except for Count Five against Mr. Richardson is incorrect.  This Court denied summary judgment on Count Five for both Medical Defendants: Mr. Richardson and AMR West. SJ Order, at 26 ("Therefore, summary judgment is **DENIED** on whether *Medical Defendants* are liable for assault and battery.") (emphasis added).

4

Recognizing the relationship between medical malpractice litigation costs and the continued availability of adequate medical care, the California State Legislature enacted MICRA, which "includes a variety of provisions all of which are calculated to reduce the cost of insurance by limiting the amount and timing of recovery in cases of professional negligence." *W. Steamship Lines, Inc. v. San Pedro Peninsula Hosp.*, 8 Cal. 4th 100, 111 (Cal. 1994). California Civil Code section 3333.2 is one of those provisions. *Lopez v. Ledesma*, 12 Cal. 5th 848, 856 (Cal. 2022).

As noneconomic damages normally comprise a large portion of total damage recoveries and thus insureds' expenses, the section 3333.2 cap on noneconomic damages is an "integral" part of MICRA. *Perry v. Shaw*, 88 Cal. App. 4th 658, 668 (Cal. Ct. App. 2001). Initially, the statute set a cap on noneconomic damages at $250,000. Cal. Civ. Code § 3333.2(b) (amended January 1, 2023). The statute was subsequently revised, effective January 1, 2023. Cal. Civ. Code § 3333.2(g) (effective January 1, 2023). The amended statute raised the ceiling on noneconomic damages to $500,000 and created a mechanism by which the ceiling would increase by $50,000 each year in actions for wrongful death, up to a cap of $1,000,000. *Id.* § 3333.2(c), (g).

Although the parties dispute whether the pre-January 1, 2023 or current version of MICRA applies in the instant case, both iterations of MICRA include the same essential elements. Section 3333.2 reads, "In any action for injury against a health care provider [or health care institution] *based on professional negligence*, the injured plaintiff shall be entitled to recover noneconomic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damage [subject to the limitations in this section]." Cal. Civ. Code § 3333.2(a) (emphasis added) (noting new language from the current statute in brackets). The current version adds language explicitly expanding coverage to actions involving health care institutions but otherwise retains the same essential elements. *See id.* However, the current version also made several substantive changes to the damage caps. The pre-January 1, 2023 version capped noneconomic damages at $250,000. Cal. Civ. Code § 3333.2(b) (amended January 1, 2023). In contrast, the current version sets the noneconomic damages for wrongful death at $500,000 with the cap increasing by $50,000 each year. Cal. Civ. Code § 3333.2(c), (g) (current version).

Under both versions of MICRA, whether the statute should apply in a given instance turns on the definition of "professional negligence." MICRA defines professional negligence as:

> [A] negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital.

Cal. Civ. Code § 3333.2(c)(2) (pre-January 1, 2023 version).

### III.     LEGAL STANDARD

The parties ask the Court to clarify the applicability of MICRA to Plaintiffs' claim for assault and medical battery. The Court treats this request as a Rule 56 motion for partial summary judgment on the applicability of MICRA's cap on noneconomic damages to Plaintiffs' claim for assault and medical battery.

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

Here, the parties stipulated to briefing the issue, and the Court ordered briefing. Since there is not a single moving party, the Court views the facts in favor of the Plaintiffs because a finding of the applicability of MICRA could limit their recovery upon the requisite showing.

### IV.     DISCUSSION

A.     The Current Version of MICRA Applies

MICRA was amended in 2023. The parties dispute which version of MICRA applies. This question is relevant because it determines the total amount of damages recoverable. As noted

above, the pre-2023 version of MICRA limited noneconomic damages to a maximum of $250,000 whereas the current version increased the cap to $500,000.

According to the current version of section 3333.2: "This section shall be deemed effective as of, and shall apply to all cases *filed* . . . on or after, January 1, 2023." Cal. Civ. Code § 3333.2(g) (emphasis added). Under California law, "[a] civil action is commenced by filing a complaint with the court." Cal. Civ. Proc. Code § 411.10. For electronic filing, "a document is 'officially filed' only once it undergoes processing, review, and entry into the court's records." *Martinez v. Airbnb, Inc.*, 691 F. Supp. 3d 1124, 1128 (N.D. Cal. 2023) (citing Cal. Civ. Proc. Code sections 1010.6(a)(1)(D) and 1010.6(b)(3)). Plaintiffs assert that the post-2023 version of the statute applies because their SAC was filed on August 9, 2023. *See* Plaintiffs' Brief on Applicability of MICRA, at 2. Medical Defendants assert that the suit was filed on April 4, 2022 — the date of the original Complaint — and that the pre-2023 version of the statute thus applies. Medical Defendants' Response to MICRA Briefing, at 1 (Dkt. 123).

On April 4, 2022, the Clerk accepted the original Complaint and entered it into the court's records. Original Complaint. While the original Complaint included allegations against the City Defendants, it did not allege the faulty administration of Versed or name the Medical Defendants. *See id.* It was not until Plaintiffs filed the FAC on June 22, 2023, that they alleged faulty administration of Versed and named the Medical Defendants. FAC. Indeed, this Court earlier held that the medical negligence claim against Medical Defendants was time barred, implicitly finding that the claim did not "relate back" to the filing of the original Complaint. *See* MTD Order, at 10–11; *Woo v. Superior Ct.*, 75 Cal. App. 4th 169, 176 (Cal. Ct. App. 1999) (holding in the statute of limitations context that "[t]he general rule is that an amended complaint that adds a new defendant does not relate back to the date of filing the original complaint and the statute of limitations is applied as of the date the amended complaint is filed, not the date the original complaint is filed."). Thus, the case against Medical Defendants was first "filed" on the date of the FAC.

Although Plaintiffs filed the operative SAC on August 9, 2023, the amendment did not change the substantive allegations of the complaint and thus did not create a new "case."

7

1 *Compare* FAC, *with* SAC.  Accordingly, the case was first filed against Medical Defendants on
2 June 22, 2023, the date of the FAC.
3      Since the case was filed "on or after, January 1, 2023," the current version of MICRA
4 applies.  *See* Cal. Civ. Code § 3333.2(g).  Further, as the case was filed on June 22, 2023 and
5 before January 1, 2024, the statutory cap had not yet increased.  *See id.*  Therefore, should
6 Plaintiffs prove their case, they may recover up to the statutory cap of $500,000 for noneconomic
7 damages.  *See id.*

B.    <u>The MICRA Cap on Noneconomic Damages Applies</u>

     Although Count Five against Medical Defendants is for assault and battery, an intentional tort, the action against Medical Defendants is based on professional negligence and thus falls under MICRA.  Specifically, Plaintiffs' claim against Medical Defendants hinges on acts or omissions by Mr. Richardson that failed to meet applicable protocol or the standard of care.  Because Plaintiffs' claim for assault and battery is inextricably intertwined with alleged acts constituting professional negligence, MICRA's cap on noneconomic damages applies to the circumstances presented here.

     1.    <u>The Alleged Wrongful Conduct Falls Under MICRA's Definition of "Professional Negligence"</u>

     Section 3333.2 applies to actions based on "professional negligence."  Cal. Civ. Code § 3333.2.  "The focus of the court's analysis must be on 'the nature or gravamen of the claim, not the label or form of action the plaintiff selects.'"  *Burchell v. Fac. Physicians & Surgeons*, 54 Cal. App. 5th 515, 523 (Cal. Ct. App. 2020) (quoting *Larson v. UHS of Rancho Springs, Inc.*, 230 Cal. App. 4th 336, 347 (Cal. Ct. App. 2014)).

     Professional negligence includes four elements: (1) "a negligent act or omission to act by a health care provider in the rendering of professional services," (2) "which act or omission is the proximate cause of injury or wrongful death," (3) "provided that such services are within the scope of services for which the provider is licensed," and (4) "which are not within any restriction imposed by the licensing agency or licensed hospital."  *Id.* § 3333.2(c)(2); *see Flores v. Presbyterian Intercommunity Hosp.*, 63 Cal. 4th 75, 84 (Cal. 2016).  However, professional

8

negligence can only arise from actions where the medical provider acts with the *purpose* of providing medical care. *So v. Shin*, 212 Cal. App. 4th 652, 667 (Cal. Ct. App. 2013). Tortious actions taken for non-medical care reasons are not deemed professional negligence. *Id.*

The parties dispute whether administering Versed to Mr. Gutzalenko under the factual circumstances presented here meets the first and third elements of "professional negligence." Specifically, they dispute whether Mr. Richardson's actions constituted a negligent act in the rendering of professional services and whether the administration of Versed was within the scope of services for which Mr. Richardson was licensed.

        a.        <u>Mr. Richardson Administered Versed in the Rendering of Professional Services</u>

The parties dispute whether the first element of "professional negligence" is met: whether Mr. Richardson's actions constituted "a negligent act [] by a health care provider in the rendering of professional services." *See* Cal. Civ. Code § 3333.2. The parties specifically dispute whether injecting Mr. Gutzalenko with Versed was an action performed "in the rendering of professional services." *See* Plaintiffs' Response to MICRA Briefing, at 2 (Dkt. 122); Medical Defendants' Brief on Applicability of MICRA, at 8.

"Where the plaintiff's claim is premised on the violation of a professional obligation owed in the rendering of a patient's medical care, treatment, or diagnoses, the claim sounds in professional negligence." *Gutierrez v. Tostado*, 18 Cal. 5th 222, 238 (Cal. 2025). Courts interpret "in the rendering of professional services" broadly. *See, e.g.*, *Flores*, 63 Cal. 4th at 89 (finding professional negligence when patient's bed rail collapsed after doctor ordered the rails raised); *Mitchell v. Los Robles Reg'l Med. Ctr.*, 71 Cal. App. 5th 291, 296–99 (Cal. Ct. App. 2021) (finding professional negligence when plaintiff fell in emergency room while accompanied by husband after nurse assessed that she could use bathroom without hospital staff assistance).

Plaintiffs argue that "professional services" is limited to "medical diagnosis and treatment of patients" and that Mr. Richardson's conduct does not fit this definition. Plaintiffs' Brief on Applicability of MICRA, at 3 (quoting *Flores*, 63 Cal. 4th at 85). Instead, Plaintiffs contend that Mr. Richardson injected Mr. Gutzalenko with Versed for self-serving purposes rather than to

9

1  provide emergency medical treatment. *Id.* at 5. Specifically, Plaintiffs allege that Mr. Richardson
2  injected the Versed to protect himself during transport, rather than to provide emergency medical
3  care. *Id.* at 5–6.³

4  Plaintiffs cite *So v. Shin* for the proposition that "professional negligence is only that
5  negligent conduct engaged in *for the purpose of* . . . delivering health care to a patient." 212 Cal.
6  App. 4th at 666. In that case, a patient awoke during surgery and, later in the recovery room,
7  questioned the anesthesiologist about having regained consciousness mid-procedure. *Id.* at 657.
8  In response, the anesthesiologist became angry and waved a container of the patient's blood and
9  tissue at the patient. *Id.* The anesthesiologist later returned and begged the patient not to report
10  the incident. *Id.* at 657–58. The court held that the anesthesiologist's post-operation conduct was
11  not committed for the purpose of rendering medical care to the patient, since her goal was solely to
12  persuade the patient not to report the incident and preserve her professional reputation. *See id.* at
13  667–68. Therefore, the MICRA limitation did not apply. *Id.* at 667.

14  Medical Defendants correctly respond that the injection was part of the provision of
15  medical care. Medical Defendants' Brief on Applicability of MICRA, at 8. Medical Defendants
16  highlight that an officer said that Mr. Gutzalenko was "faking like he was unconscious" and that
17  Mr. Gutzalenko would not be handcuffed while in the ambulance. *See id.* at 6, 8–9; Opp. To MSJ,
18  at 4.⁴ Consequently, Mr. Richardson determined that some additional restraint was necessary in

---

³ Plaintiffs initially contended that Mr. Richardson acted "in a law enforcement manner by administering Versed." SAC ¶ 45. However, following the Court's order that "even if Mr. Richardson had functioned to facilitate a law enforcement purpose in injecting the decedent . . . there is no question that he was administering a medical procedure and employed his medical training in doing so," Plaintiffs appear to drop the contention on questions of negligence and battery, apart from the assertion that Mr. Richardson was acting under the color of law. Motion to Dismiss Order ("MTD Order"), at 9 (Dkt. 71); *see* Response to MTD, at 3 (Dkt. 57); Opp. to MSJ, at 2, 11–12, 20–21 (Dkt. 103). However, the Court disposed of that argument when it granted summary judgment for the excessive force section 1983 claim against Mr. Richardson, finding that he "was not acting under color of law" because he "admitted that he administered the chemical restraint for safety reasons, rather than to restrain Mr. Gutzalenko in a law enforcement capacity." SJ Order, at 23. "Specifically, Mr. Richardson injected Mr. Gutzalenko to protect himself and others in the ambulance." *Id.* Further, "There is no evidence that Mr. Richardson administered Versed in order to assist the Officers in subduing or handcuffing Mr. Gutzalenko" as he "was already cuffed and appeared non-responsive when Mr. Richardson injected him." *Id.* at 24 (citations omitted).
⁴ According to Mr. Richardson, patients cannot be handcuffed in the back of ambulances. Richardson Deposition at 84:12–13 (Dkt. 99, Ex. G). But paramedics appear to be able to use

order to safely transport Mr. Gutzalenko to the hospital (without presenting a danger to the transporting personnel, including Mr. Richardson), and thus the injection was in the furtherance of providing medical care to Mr. Gutzalenko.

### b. The Administration of Versed was Within the Scope of Services for Which Mr. Richardson was Licensed

Plaintiffs also contend the third element of professional negligence is not met: whether the "services are within the scope of services for which the provider is licensed." *See* Cal. Civ. Code § 3333.2(j)(4).

"'Scope of services for which the provider is licensed' . . . is naturally understood as the general range of activities encompassed by the provider's license." *Lopez v. Ledesma*, 12 Cal. 5th 848, 857 (Cal. 2022). For example, a psychiatrist is licensed to perform psychiatric care. *Id.*; *see Waters v. Bourhis*, 40 Cal. 3d 424, 436 (Cal. 1985) (en banc). In contrast, "when a psychologist performs heart surgery," they act outside the scope of their license. *Waters*, 40 Cal. 3d at 436.

Plaintiffs allege that Mr. Richardson acted outside the scope of his license because he (1) did not "monitor, stabilize, or improve" Mr. Gutzalenko's medical condition prior to administering the Versed; and (2) failed to observe Mr. Gutzalenko's respiratory status — an alleged violation of "the County's protocol governing the use of Versed." Plaintiffs' Response to MICRA Briefing, at 3–4.

This Court has previously ruled: "there is no question that [Mr. Richardson] was administering a medical procedure and employed his medical training in doing so." Motion to Dismiss Order ("MTD Order"), at 9 (Dkt. 71). This suggests that Mr. Richardson acted within the scope of his paramedic license. Additionally, the claims asserted herein allege a breach of the standard of care, rather than a deviation from the general scope of services rendered by a licensed paramedic. For example, Plaintiffs' claims are based in part on violations of "the County's protocol governing the use of Versed." *Id.* at 3. This appears to reference the Contra Costa emergency medical services (EMS) policies and treatment guidelines, including the Contra Costa

---

Velcro restraints. *Id.* at 15.

Prehospital Care Manual. *See id.*; Herrington Rule 26 Report, at 4–5 (Dkt. 103, Ex. 9). Protocols regarding medical procedures to be implemented in particular situations "have a direct bearing on the question of negligence even though they do not themselves establish the standard of prudent conduct." *Aquino v. Cal. Bd. of Registered Nursing*, No. E080913, 2024 WL 3822357, at *4 (Cal. Ct. App. Aug. 15, 2024) (internal quotation marks omitted) (quoting *Tucker v. Lombardo*, 47 Cal. 2d 457, 464 (Cal. 1956)); *see also Hartford Acc. & Indem. Co. v. All Am. Nut Co.*, 220 Cal. App. 2d 545, 561 (Cal. Ct. App. 1963) ("Custom is competent evidence of the standard of due care in an area wherein it prevails. . . . And violation of a rule of care established by a party to the litigation is likewise evidence of negligence."). Whether Mr. Richardson failed to follow Contra Costa protocol does not inform whether he was licensed to administer Versed. It is undisputed that he was so licensed.

Indeed, the fact that there was county protocol for how paramedics like Mr. Richardson should administer Versed is evidence that the administration of Versed was within the scope of Mr. Richardson's license. Furthermore, Mr. Richardson was trained in the administration of Versed, was carrying it in the ambulance, and had administered Versed "numerous" times in the past. Richardson Deposition at 12:5–6; 15:2–6; 87:22–24 (Dkt. 99, Ex. G).

In light of the above factors, Mr. Richardson was acting within the scope of his duties in administering a chemical restraint to a patient during a medical emergency after the arrest in an effort to transport Mr. Gutzalenko to the hospital as part of the administration of medical treatment. In sum, Mr. Richardson's injection of Versed was within the scope of his license and medical duties.

  2. <u>The Gravamen of Plaintiffs' Claim of Assault and Battery is Based on Medical Negligence</u>

Count Five for Assault and Battery against Medical Defendants Richardson and AMR West is pled as a claim for assault and battery — an intentional tort — but the gravamen of the claim is one "based on" professional negligence. *See* Cal. Civ. Code § 3333.2(a).

Despite its express application to "negligent act[s] or omission[s] to act," MICRA has not been limited to causes of action based only on negligent acts or omissions. *Id.* § 3333.2(j)(4); *see*

12

*Burchell v. Fac. Physicians & Surgeons*, 54 Cal. App. 5th 515, 523 (Cal. Ct. App. 2020) ("Although MICRA expressly applies to actions based on professional negligence, our Supreme Court has 'not limited application of MICRA provisions to causes of action that are based solely on a negligent act or omission.'"). An intentional tort may be based on professional negligence under certain circumstances. For instance, in *Larson v. UHS of Rancho Springs, Inc.*, the court found that claims for battery and intentional infliction of emotional distress were essentially based on professional negligence when a doctor roughly administered anesthesia. 230 Cal. App. 4th 336, 340 (Cal. Ct. App. 2014). Similarly, in *Denecochea v. Baland*, the court found that claims for assault, battery, and intentional infliction of emotional distress were essentially claims for medical negligence when a paramedic and nurse restrained a patient and drew their blood, even with disputed issues of consent. No. 213CV01906MCECKD, 2015 WL 6951297, at *7, *9 (E.D. Cal. Nov. 10, 2015). Thus, the Court must focus on "the nature or gravamen of the claim, not the label or form of action the plaintiff selects." *Burchell*, 54 Cal. App. 5th at 523 (quoting *Larson*, 230 Cal. App. 4th at 347).

    Here, the gravamen of Plaintiffs' complaint is based on negligence. In the operative SAC, Plaintiffs challenge Mr. Richardson's decision to administer the Versed and the way he administered it. *See* SAC ¶ 23 ("Contrary to proper medical use, RICHARDSON used Versed on GUTZALENKO while Gutzalenko showed no signs of any behavioral issue or agitation. RICHARDSON also failed to 'aspirate' the syringe prior to administering the medication."); *see also id.* ¶ 25 (Mr. Richardson "should have known that it was excessive and unreasonable force to use the chemical restrain[t] Versed to restrain GUTZALENKO while Mr. GUTZALENKO was cuffed, in the recovery position, and not resisting in any way."). Since the court must look beyond the "label or form of action the plaintiff selects," the fact that the SAC includes a cause of action for assault and battery has little bearing on the analysis. *See Burchell*, 54 Cal. App. 5th at 523. Rather, looking to "the nature or gravamen of the claim," the central facts in dispute are the improper medical decision to administer Versed and the faulty administration of the drug. Alleging that a medical professional engaged in faulty decision making about the appropriate type of care is distinct from alleging that the medical professional lacked consent to provide the care.

13

As Plaintiffs themselves admit, the proper type of care and manner of administration are issues that can be adjudged against "proper medical use" and county protocol. *See* SAC ¶ 23; Plaintiffs' Brief on Applicability of MICRA, at 6. Since these issues can be measured against an objective standard of care, they sound in negligence. *See id.*

Further, Plaintiffs' SAC fails to allege facts sufficient to support a claim for medical battery. To do so, Plaintiffs must show that Medical Defendants performed a procedure "to which the patient has not consented." *See Cobbs v. Grant*, 8 Cal. 3d 229, 240 (Cal. 1972). Yet, Plaintiffs do not include any allegations about lack of consent in the SAC. *See* SAC. Although Plaintiffs later raise the issue of consent briefly in their Opposition to the Motion to Dismiss and extensively in their Supplemental Briefings on the Applicability of MICRA, the issue of consent is not pleaded as a factual or legal basis for any theory of liability under the SAC or any earlier variant. Opp. To MTD, at 4–5; Plaintiffs' Brief on Applicability of MICRA; Plaintiffs' Response to MICRA Briefing; *see* SAC; *Kershaw v. Tilbury*, 214 Cal. 679, 688 (Cal. 1932) ("It is of prime importance to get the gravamen of the action, which is to be determined by the allegations of the complaint."). Indeed, beyond the label of the claim and the bare assertion that "[t]he actions and omissions of . . . RICHARDSON . . . as set forth above constitute assault and battery," Plaintiffs do not provide information to support a claim for assault and battery against Medical Defendants in the SAC. SAC ¶ 69; *see generally id.* Thus, Plaintiffs do not provide facts sufficient to support their claim for battery as to Medical Defendants.

Since Plaintiffs' allegations sound in negligence and fall short of making out a claim for battery, the gravamen of Plaintiffs' claim sounds in negligence. Accordingly, section 3333.2 applies.

C.      MICRA Does Not Apply to Settlements

The noneconomic damages cap under section 3333.2 does not apply to settlements. Under *Rashidi v. Moser*, "the cap imposed by section 3333.2, subdivision (b) applies only to *judgments* awarding noneconomic damages." 60 Cal. 4th 718, 727 (Cal. 2014) (emphasis added). Accordingly, the MICRA noneconomic damages cap would not apply should the parties reach a settlement.

### D. If MICRA is Applicable, Plaintiffs Could Recover Under Both a Wrongful Death Claim and a Survival Claim

If MICRA's cap applies, Plaintiffs could potentially recover under both a wrongful death claim and a survival claim. Plaintiffs could thus recover up to $500,000 in noneconomic damages for each of their wrongful death and survival claims, up to a total of $1,000,000 in noneconomic damages.

Under *Ng v. Superior Court*, a wrongful death action brought by heirs in their individual capacity and a survival action brought by decedent's successor in interest are treated as "separate and distinct claims" even when they arise from the same alleged malpractice. 108 Cal. App. 5th 382, 388 (Cal. Ct. App. 2025) ("Because a wrongful death claim and a survival claim — even when premised on the same alleged medical malpractice — are separate and distinct claims, a plaintiff suing for both claims can seek to recover two MICRA caps."). In *Ng*, a widow sued in both capacities: she sought damages for her own losses through a wrongful death claim brought in her personal capacity and pain and suffering damages on behalf of the decedent as the decedent's successor in interest via a survival claim. *Id.* at 387–88. The court explained that these claims compensate different harms and therefore are subject to separate MICRA caps. *Id.*

Prior to 2022, plaintiffs could not recover noneconomic damages in survival actions. *Id.* at 387. An amendment to Code of Civil Procedure section 377.34 changed this, authorizing recovery for a decedent's pre-death pain, suffering, and disfigurement in survival actions filed between 2022 and 2025. *Id.* Following the amendment, *Ng* clarified that once a survival action includes noneconomic damages, those damages are subject to a MICRA cap *separate* from the heirs' wrongful death damages. *Id.* at 387–88.

Here, the case was filed on June 22, 2023, and is therefore subject to the section 377.34 amendment that allows recovery for a decedent's pre-death pain, suffering, and disfigurement in survival actions. *See id.* at 387. Additionally, the operative SAC alleges wrongful death and names the individual Plaintiffs as successors in interest. *See* SAC ¶¶ 3–4, 29; MTD Order at 1 ("This case involves alleged civil rights violations, medical negligence, and wrongful death among other claims against ambulance company AMR West and its paramedic Mr. Richardson . . .").

This mirrors the posture in *Ng*. Whether Plaintiffs may invoke a second MICRA cap, however, depends on the proof offered at trial. If Plaintiffs establish that Mr. Gutzalenko experienced pre-death pain or suffering that would qualify under section 377.34, they could argue that both the wrongful death claim and the survival claim are entitled to their own MICRA caps. If they cannot make such a showing, then they would receive zero damages for that claim.

Thus, *Ng* does not guarantee double recovery. Instead, it allows for the possible recovery of separate caps — but only if both wrongful death and survival claims are established and include noneconomic damages of the kind authorized by the statute.

## V.   CONCLUSION

Mr. Richardson's conduct meets the definition of "professional negligence" under section 3333.2. Although intentional torts are generally not subject to the section 3333.2 cap on noneconomic damages, *see Perry*, 88 Cal. App. 4th at 662, the gravamen of Plaintiffs' assault and battery claim is essentially a claim of medical negligence such that MICRA applies. *See Larson*, 230 Cal. App. 4th at 351–52; *see also Denecochea*, 2015 WL 6951297, at *7, *9. Further, the MICRA cap on noneconomic damages does not apply to settlement awards. Finally, if Plaintiffs establish wrongful death and survival claims that include noneconomic damages, they are entitled to separate MICRA noneconomic damages caps for the wrongful death and survival claims.

**IT IS SO ORDERED**.

Dated: November 25, 2025

_____
EDWARD M. CHEN
United States District Judge