JOHN L. BURRIS, Esq., SBN 69888
BENJAMIN NISENBAUM, Esq., SBN 222173
JAMES COOK, Esq., SBN 300212
KATHERINE MACELHINEY, Esq., SBN 355532
**BURRIS NISENBAUM CURRY & LACY, LLP**
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (844) 273-6873
John.Burris@johnburrislaw.com
Ben.Nisenbaum@bncllaw.com
James.Cook@johnburrislaw.com
Katherine@bncllaw.com

Attorneys for Plaintiffs IVAN GUTZALENKO, Deceased, Successors in Interest N.G. AND N.I., minors through their mother and Next Friend, Honey Gutzalenko, individually and as Co-successors in Interest for IVAN GUTZALENKO, Deceased,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN GUTZALENKO, et al.<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF RICHMOND, et al.<br><br>Defendants. | Case No.: 3:22-CV-02130-EMC<br><br>**PLAINTIFFS' TRIAL BRIEF**<br><br>**Pretrial Conference Date**: January 13, 2026<br>**Time**: 2:30 p.m.<br>**Dept**.: Courtroom 5, 17th Floor,<br>**Trial Date**: February 2, 2026<br>**Judge**: Hon. Edward M. Chen<br>Complaint filed: August 9, 2023 |

## I. SUMMARY OF PLAINTIFFS' THEORY OF THE CASE

Ivan Gutzalenko was killed during a medical emergency after he was encountered by Defendants on March 10, 2021. Plaintiffs in this action are the children of Ivan Gutzalenko. They seek to hold Defendants liable for (1) Negligence – Wrongful Death (individually and as co-successors-in-interest of Decedent Ivan Gutzalenko, against Officers Tom Tran, Mark Hall, and Cedric Tagorda ["City Defendants"]); (2) Professional/Medical Negligence – Wrongful Death (individually and as co-successors-in-interest of Decedent Ivan Gutzalenko, against Defendants Paramedic Damon Richardson and AMR-West ["Medical Defendants"]); (3) Assault (as co-successors-in-interest of Decedent Ivan Gutzalenko, against ALL Defendants); (4) Battery (as co-successors-in-interest of Decedent Ivan Gutzalenko, against City Defendants); and (5) Medical Battery (as co-successors-in-interest of Decedent Ivan Gutzalenko, against Medical Defendants).

**A.     City Defendants are Liable for Negligence Causing Ivan Gutzalenko's Death (Claim No. 1), and for Assault and Battery (Claims No. 3 and 4).**

On March 10, 2021, Defendant Officers Tom Tran, Mark Hall, and Cedric Tagorda, responded to a service call reporting that a man (later identified to be Ivan Gutzalenko) had caused a disturbance in a store. There was no report of threatening conduct or any felonious or violent crime committed by Mr. Gutzalenko. Defendant Officer Tom Tran arrived first and noticed Mr. Gutzalenko had a bruise on his head, a cut on his hand, appeared disoriented, and repeatedly expressed that he could not breath. At some point early in the encounter, Mr. Gutzalenko attempted to walk away from the officers but stumbled and fell onto the sidewalk.

Defendant Officer Hall arrived next. The two officers patted Mr. Gutzalenko down for weapons and contraband, finding that Mr. Gutzalenko was unarmed and possessed nothing illegal.  Officer Tagorda and AMR-West Paramedic Richardson arrived during that time or shortly after. The three Defendant Officers each acted to forcibly restrain Mr. Gutzalenko in prone position, holding his arms up and behind him while Paramedic Richardson attempted to bandage the cut on his hand. As the officers restrained Mr. Gutzalenko, Defendant Officers threatened to arrest him and take him to jail, 5150 him, pepper spray him, and taze him. Mr. Gutzalenko was disoriented, frightful, and he repeatedly cried out: "please no!" and "you're

hurting me!" and "I can't breath!" Mr. Gutzalenko squirmed around underneath Defendant Officers' hands, legs, and knee, and attempted to keep his hand away from Defendant Paramedic Richardson while he was trying to treat the small cut on his hand.

Throughout this litigation, Defendants hyperbolically describe Mr. Gutzalenko's movements as "violent resistance" to being handcuffed. However, the Officers' bodyworn camera footage shows that before they handcuffed him, Officer Hall held Gutzalenko's arm out and behind his back in the air while Officer Tran held the other arm onto the ground so that Defendant Richardson could clean the wounded hand. It is Plaintiffs' position that there is ample circumstantial evidence to support that Ivan Gutzalenko's movements were an automatic survival attempt to unpin himself from beneath the officers' weight so that he could make space in his lungs to breath, whether he did so consciously or as an automatic survival response caused by being in prone position during an existing medical emergency and exacerbated by the officers' using compressive force.

The parties dispute as to how much bodyweight compressive force was used and for how long. Defendant Tagorda's body cam video clearly shows Defendant Tran's knee pressed into the near center of Gutzalenko's back during the prone restraint for a sustained, extended period of time. In any event, when the officers finally got off of Ivan Gutzalenko he was blue in the face, silent, and still. When Richardson arrived back with the Versed, Mr. Gutzalenko's demeanor had drastically changed, so much so that an officer made multiple comments that he looked like he was unconscious. Because the officers unreasonably utilized compressive prone positional restraint to gain compliance from a person in a medical emergency, Ivan Gutzalenko did not get the help he needed and was instead killed.

City Defendants have repeated a theme that "no good deed goes unpunished" throughout this litigation. Plaintiffs believe a more apt idiom would be "fools rush in where angels fear to tread." Defendant Officers were not stopping to help a fellow human out of the goodness of their hearts – they were acting under color of their authority as police officers to achieve a law enforcement objective. The only urgent law enforcement objective in this situation was to get

Ivan Gutzalenko the help he needed. Defendants could, and Plaintiffs argue that they should, have used less invasive tactics than those which the officers knew could likely exacerbate whatever problem with breathing the decedent was obviously experiencing.

### B. Medical Defendants are Liable for Professional/Medical Negligence, Assault, and Medical Battery.

When Defendant Richardson returned from the ambulance he immediately injected Ivan Gutzalenko with Versed (a.k.a. Midazolam – a chemical restraint), without Mr. Gutzalenko's consent. When Richardson injected him with the Midazolam Mr. Gutzalenko was handcuffed and under the physical control of 1-3 officers, with a crowd of additional first responders nearby. Mr. Gutzalenko also appeared limp and was unresponsive when the injection occurred.

Defendant Richardson was the only medically trained responder qualified to make the decision to administer a chemical restraint or sedative. Richardson initially decided the Versed would be helpful to get the decedent under control. The moment Richardson returned with the Versed and unflinchingly injected Mr. Gutzalenko was a drastically calmer moment than when Richardson left to get the Versed. Richardson did not even attempt to take the opportunity in that moment to evaluate whether the Midazolam was by that point safe or necessary for his patient. Richardson did not take any opportunity visually examine Mr. Gutzalenko for signs of life, check his pulse or other vital signs to see if there might be a medical reason behind why the decedent had so drastically changed in demeanor.

It is Plaintiffs' position that given the above, Defendant Damon Richardson's administration of an unwanted medication[1] to chemically restrain Mr. Gutzalenko was clearly unnecessary and objectively unreasonable at the time it was administered, given that Mr. Gutzalenko was observed to be handcuffed and unconscious at the time Richardson facilitated the injection.

---

[1] Prior to becoming unresponsive, Mr. Gutzalenko repeated said "No!", and he became resistive according to defendant officers only upon Defendant Richardson's arrival at the scene.

Defendants AMR-West and Richardson initially argued that the Midazolam was necessary to make sure Mr. Gutzalenko would not wake up while being transported to the hospital, despite there being soft restraints. Plaintiffs' have maintained the position that because Mr. Gutzalenko posed no credible threat of serious harm to anyone, forcible and chemical restraint was unnecessary. Plaintiffs maintain that whether Mr. Gutzalenko may have awoken at some point during medical transport is self-serving conjecture on the part of Medical Defendants.

Medical Defendants' argument has changed in more recent filings, contending that because an officer can be heard in the BWC video commenting that Mr. Gutzalenko appeared to be "faking like he's unconscious," Richardson believed the Versed was still necessary to calm Mr. Gutzalenko down. Thus, Defendants concede that Richardson took a police officer's statement over his own observation of the scene in front of him, despite Richardson's self-proclaimed role as being the sole person at the scene qualified to make the call on whether or not to inject Mr. Gutzalenko with Midazolam. Critically, even after hearing "he's faking like he's unconscious", Defendant Richardson made no effort to check Mr. Gutzalenko's vital signs, or make any effort to determine if the handcuffed man was faking unconsciousness.

In any event, Richardson owed Mr. Gutzalenko a duty to use easonable care, as Richardson was the sole medical decision-maker charged with care of the decedent in that moment to check on his patient's wellbeing. It was objectively unreasonable for Defendant Damon Richardson to not take the opportunity – which existed at the time– to make sure the injection was safe and necessary. Richardson grossly failed in this duty when he injected the Versed. There was no reason to chemically restrain Mr. Gutzalenko when Richardson injected the drug "because the Officers had already restrained and placed Mr. Gutzalenko in custody . . . ." Dkt No. 108 (granting summary judgment on Plaintiffs' false arrest/ false imprisonment cause of action against Defendant Richardson).

Each Defendants' conduct was objectively unnecessary and unreasonable given the totality of these circumstances. As a result of Defendant Officers Tran, Hall, Tagorda, and Paramedic Richardson's use of unnecessary forcible restraint on an unarmed subject in the midst

of a medical emergency, Ivan Gutzalenko is dead. The conduct of each Defendant substantially caused and/or contributed to this wrongful death, causing Plaintiffs to be harmed by the irreparable and irreplaceable loss of their father. To the extent defendants assert that Mr. Gutzalenko would have died anyway, that is pure speculation that no one could know for a fact. Regardless, Defendants' conduct substantially contributed to Mr. Gutzalenko's death.

## II. KEY EVIDENCE

**A.    Plaintiffs' Claims Against City Defendants:**

Defendants' body-worn camera footage is key evidence because it clearly shows that the officers knew Mr. Gutzalenko had difficulty breathing both before they handcuffed him and while they handcuffed him. (*See* Tran BWC at 1:30-32, 1:41-46, 1:58-2:01; *see* Tagorda BWC at 6:27-6:47). Lieutenant Daniel Reina testified that the City of Richmond Police Department "teach[es]" its officers to "limit the amount of pressure on the back" and to "try to avoid it." (*See* Dkt. No. 108, p. 13 (quoting Reina Dep. at 50:6-16.)). The video plainly shows Defendant Tran's knee squarely in the near-middle of Mr. Gutzalenko's back, and shows him leveraging his weight down into Mr. Gutzalenko's back in apparent contradiction to Lt. Reina's testimony.

**B.    Plaintiffs' Claims Against Medical Defendants:**

It was Defendant Richardson's "sole decision to administer the Versed to Mr. Gutzalenko" and he has testified that "none of the police officers at the scene told [him] to administer Versed to Mr. Gutzalenko." (*See* Dkt. No. 108, p. 16, quoting Richardson Dep., at 168:7-13.) Richardson knew that Midazolam had breathing and heart complications as potential side effect. (Richardson Dep. at 13:6-12 (Mr. Richardson testifies that he was "taught that [Versed] could cause respiratory depression on its own if it was administered in too high of a dose."); Herrington Ex. Rep at 5 (Dkt. 103-9) (showing that the Contra Costa Prehospital Care Manual instructs to "[o]bserve respiratory status" when administering Versed).

## III. CONTROLLING ISSUES OF LAW

**A.    Defendant Officers are Liable for Negligence Causing Ivan Gutzalenko's Death.**

When evaluating a claim of excessive force, a court must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them" based on the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 386 (1989). Here, Defendant Officers knew or reasonably should have known the decedent was injured, unarmed, and unable to walk without falling. No violent or serious felony was reported, nor threatening conduct by Mr. Gutzalenko at any time during the incident. "[W]hen the governmental interest is insubstantial, the application of even minimal force may be unreasonable." *Nelson v. City of Davis*, 685 F.3d 867, at 878 (9th Cir. 2012).

There is no dispute regarding "whether the Officers knew that Mr. Gutzalenko had difficulty breathing when they applied body-weight compression on him, though it is not clear whether he could breathe at all while he was prone and the knee placed on him." (Dkt. No. 108, p. 10, ll. 20-21). There is no duty to rescue for law enforcement, and there was no life-or-death emergency requiring Defendant Officers' use of prone restraint plus bodyweight force. Such conduct in this case was unnecessary and objectively unreasonable, especially given the availability of less invasive means.

"Although officers are not required to use the least intrusive degree of force available, 'the availability of alternative methods of capturing or subduing a suspect may be a factor to consider.'" *Vos v. City of Newport Beach*, 892 F.3d 1024, 1033 (9th Cir. 2018) (quoting *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) and citing *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). A reasonable jury could find that less intrusive alternatives were available to Defendant Officers, at least in the form of reduced body-weight compression, particularly where the Officers were aware that Mr. Gutzalenko faced difficulty breathing.

B. **Defendant Paramedic Damon Richardson is Liable for Medical Negligence.**

The parties dispute whether Defendant Richardson acted with gross negligence or in bad faith. Gross negligence is a "'want of even scant care or an extreme departure from the ordinary standard of conduct.'" *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175, 1185–86 (2003) (citing *Franz v. Board of Medical Quality Assurance,* 31 Cal.3d 124, 138 (1982).

The evidence in this case points to such extreme conduct. Paramedic Defendant Damon Richardson failed to monitor Mr. Gutzalenko's heart, breathing, and temperature, which would have informed the proper usage of Versed to prevent a serious adverse reaction. Such actions or inactions are extreme departures from the ordinary standard of care owed to the decedent by Defendant Paramedic Richardson, especially as the only medical professional on the scene qualified to make the call to administer a chemical restraint. Each action taken by Defendant Richardson unreasonably raised the risk of adverse consequences to Mr. Gutzalenko in administering Versed to him, including death, while Richardson took none of the necessary precautions in administering Versed.  This is especially so when the decedent clearly had trouble breathing even before being place in a prone position and appeared non-responsive by the time the injection was made. Versed carries a product warning that it can cause potentially fatal respiratory depression.

C.      **Defendant Officers are Liable for Assault and Battery.**

The Parties dispute whether the Officers used objectively reasonable or excessive force under the circumstances. "Claims for assault, battery, and negligence based on allegations that an officer used excessive force are analyzed under the Fourth Amendment's objective-reasonableness standard." *Zaragoza v. Cnty. of Riverside*, No. 520CV01381SSSSPX, 2024 WL 661177, at *11 (C.D. Cal. Jan. 4, 2024) (citing *Zwarg v. City of San Luis Obispo*, No. CV 21-3525-DMG (AFMx), 2022 WL 2189538, at *4 (C.D. Cal. Feb. 16, 2022) (analyzing assault and battery claims based on allegations that officers used excessive force are analyzed under the Fourth Amendment's reasonableness standard) and *Diaz v. Cnty. of Ventura*, 512 F. Supp. 3d 1030, 1048 (C.D. Cal. Jan. 8, 2021) (analyzing negligence and battery claims based on allegations that the officers used excessive force under the Fourth Amendment's reasonableness standard)).

Here, the location and the amount of body-weight compression are disputed material facts between Plaintiffs and City Defendants. For the same reasons as discussed above in Section

III(A), a reasonable jury could find Defendant Officers' conduct to be unreasonable given the totality of the circumstances.

**D.     Defendant Paramedic Damon Richardson is Liable for Medical Battery.**

Providing medical treatment to a person without their consent constitutes a battery. *Rainer v. Community Memorial Hospital*, 18 Cal. App. 3d 240, 255, 95 Cal.Rptr. 901 (1971). At the same time, "the law provides that in an emergency consent is implied." *Cobbs v. Grant*, 8 Cal. 3d 229, 243 (1972). In limited cases, a medical provider is justified in acting without a patient's consent when immediate action is necessary "for the preservation of the life or health of a patient and it is impracticable to first obtain consent." *Preston v. Hubbell*, 87 Cal. App. 2d 53, 57–58 (1948); *Conte v. Girard Orthopedic Surgeons Medical Group, Inc.,* (2003) 107 Cal.App.4th 1260, 1268, 132 Cal.Rptr.2d 855 ("A doctor may act beyond the patient's express authorization only in life-or health-threatening situations.")

Here, it is undisputed that Ivan Gutzalenko did not, and/or was unable to consent to medical treatment at the time Defendant Paramedic Richardson injected him with Versed, and that Mr. Gutzalenko's legal representative or closest available relative did not give consent for Mr. Richardson to administer the Midazolam. Defendant Richardson administered Versed into Ivan Gutzalenko's body even though the decedent was not resisting and could not consent, thus resulting in the decedent's death. In this Court's own words, "these facts [could] constitute battery." *See* Dkt. No. 71 in this case, at pp. 11-12.

                                      Respectfully Submitted,

Dated:  December 23, 2025                  **BURRIS NISENBAUM CURRY & LACY LLP.**

                                      /s/ *Katherine MacElhiney*
                                      Katherine A. MacElhiney, Esq.
                                      Attorney for Plaintiffs