1
2
3
4                  UNITED STATES DISTRICT COURT
5                 NORTHERN DISTRICT OF CALIFORNIA
6
7    IVAN GUTZALENKO, et al.,                Case No.  22-cv-02130-EMC
8                     Plaintiffs,
                                             **FINAL PRETRIAL ORDER**
9           v.
10   CITY OF RICHMOND, et al.,               Docket No. 135–159, 163–167, 169, 171
11                   Defendants.

12

13                    I.    <u>**TRIAL DATE & LENGTH**</u>

14          Trial is set to run from January 30 through February 11.  The Court will conduct voir dire

15   on Friday, January 30, and parties are directed to be prepared for opening statements and witness

16   examinations on that day.

17          Each side is allotted 13 hours for trial in total, including opening statements, direct and

18   cross examination, and closing statements.  Trial will last from 9:00 a.m. to 2:00 p.m. each day,

19   with 15-minute breaks after every 90 minutes.  Trial will not take place on Thursdays.

20                    II.    <u>**TRIAL PROCEDURES**</u>

21          To make trial more efficient, the Court imposes additional trial procedures.  A party must

22   give the opposing party and the Courtroom Deputy at least 48 hours notice of witnesses it intends

23   to call, exhibits it intends to use, and/or demonstratives it intends to use.  Saturdays and Sundays

24   do not count.  Thus, e.g., for a Tuesday trial day that starts at 8:30 a.m., a party must give the

25   opposing party and Courtroom Deputy notice by 8:30 a.m. the preceding Friday.

26          On all trial days, counsel shall be present in the Courtroom by 8:30 a.m. to discuss any

27   matters requiring resolution prior to commencement of trial at 9:00 a.m.  Parties are reminded to

28   review and comply with all applicable standing orders concerning the resolution of trial disputes.

United States District Court
Northern District of California

1    If the opposing party has an objection, then it must notify the party by 6:00 p.m. the same

2    day of notice, and the parties shall meet and confer to see if they can resolve their differences.  If

3    they cannot resolve the dispute, they shall file with the Court a joint statement 24 hours (excluding

4    Saturdays and Sundays) in advance of the relevant trial day.  In short, the Court requires a full

5    court day to resolve any objections.

6                                **III.    WITNESSES**

7    The parties have identified the witnesses they intend to call for trial.  Dkt. 159, 169.

8    Parties dispute the inclusion of Charles Yarbaugh.  The matter shall be briefed by the parties and

9    determined by the Court through a separate order.

10    Parties averred at the January 13, 2026 pretrial conference ("PTC") that their witness lists

11    were over-inclusive with respect to both witnesses and allotted time.  Parties are reminded that

12    they must comply with strict time limits set by the Court.

13                      **IV.    PLAINTIFFS' MOTIONS IN LIMINE**

14    A.    Motion in Limine No. 1: Exclude Evidence Unknown to Defendants at Time of Incident

15    Plaintiffs move to exclude various categories of evidence concerning Mr. Gutzalenko's

16    medical history, substance abuse, employment history, family court matters, and criminal history.

17    The Court **GRANTS IN PART and DENIES IN PART** Plaintiffs' MIL No. 1.  Dkt. 144.

18    Evidence of Mr. Gutzalenko's prior medical records and history of substance use may be

19    relevant to the issue of causation.  In particular, such evidence may bear on Mr. Gutzalenko's

20    physical condition, compromised health, and physiological vulnerabilities at the time of the

21    incident, including whether pre-existing conditions or chronic substance use contributed to his

22    death.  When offered for this purpose, the probative value of this evidence is not substantially

23    outweighed by the risk of unfair prejudice, and it is generally admissible, subject to an appropriate

24    limiting instruction if necessary.  This ruling does not authorize the use of such evidence to

25    establish character, or for any purpose inconsistent with Federal Rules of Evidence ("FRE") 401,

26    403, 404, or 608.

27    Evidence relating to Mr. Gutzalenko's employment history, earnings, and future

28    employment prospects is relevant to damages, including claims for lost earnings.  Such evidence

United States District Court
Northern District of California

1    may be introduced for that limited purpose.  This evidence may not, however, be used to argue or

2    imply that Mr. Gutzalenko's subjective state of mind or physical actions during the incident were

3    influenced by fear of arrest, job loss, or other professional consequences.

4            Evidence concerning family court proceedings, custody arrangements, or related records

5    may be relevant to the nature and extent of Mr. Gutzalenko's relationship with his children, and

6    therefore Plaintiffs' loss of support and loss of companionship claims.  When offered for that

7    limited purpose, such evidence (to the extent they shed light on the nature of Mr. Gutzalenko's

8    relationship with his children) may be admissible as it bears on noneconomic damages arising

9    from the wrongful death claims.  *See, e.g.*, *Lopez v. Aitken*, No. 07-cv-2028 JLS, 2011 WL

10   672798, at *3 (S.D. Cal. Feb. 18, 2011); *Galvan v. Yates*, 2008 WL 650282, at *1 (E.D. Cal. Mar.

11   5, 2008).  However, divorce records, stay-away order requests, and other records concerning Mr.

12   Gutzalenko's relationship with Honey Gutzalenko are excluded at this time.  The Court leaves

13   open the possibility that such materials may be used for impeachment purposes only, including on

14   cross-examination of Honey Gutzalenko on relevant matters.  Any such use shall be limited

15   strictly to impeachment, and Defendants must be prepared to demonstrate the specific

16   inconsistency or omission that justifies their use.

17           Evidence of Mr. Gutzalenko's criminal history is generally inadmissible.  See Fed. R.

18   Evid. 609 (limiting admission of criminal convictions).  This includes arrests not resulting in

19   convictions, expunged matters, and other criminal records offered to show propensity or character.

20   *See* Fed. R. Evid. 404(b).  Moreover, such evidence cannot bear on whether Defendants' conduct

21   was reasonable at the time of the incident if the information was unknown to Defendants.  *See*

22   *Glover v. City of L.A.*, No. 21-cv-09915-FWS-AS, 2023 WL 8586386, at *4 (C.D. Cal. Oct. 26,

23   2023).

24           All aforementioned rulings remain subject to FRE 403.  The Court will not permit

25   unnecessary or cumulative evidence where its probative value is substantially outweighed by the

26   risk of unfair prejudice or juror confusion.  The Court expects counsel to tailor the presentation of

27   evidence to what is reasonably necessary for the permissible purposes identified above.

28           In light of these rulings and the availability of limiting instructions, bifurcation is not

United States District Court
Northern District of California

3

1    warranted.  The jury can appropriately consider the evidence for its proper purposes within a

2    single, unified trial.  Court may give a limiting instruction upon request.

3        Accordingly, Plaintiffs' MIL No. 1 is **GRANTED IN PART and DENIED IN PART**,

4    consistent with the rulings set forth above.

5    B.    Plaintiffs' MIL No. 2: Limits on Dr. Vilke's Testimony

6        Plaintiffs' MIL No. 2 seeks to exclude portions of the testimony of Dr. Gary Vilke,

7    particularly his opinions concerning blood gas measurements, carbon dioxide ($CO_2$) levels, prone

8    restraint, and the effect of body weight or downward force on Mr. Gutzalenko.  Dkt. 145.  The

9    motion is **DENIED WITHOUT PREJUDICE**.

10       The motion does not present a basis for wholesale exclusion under *Daubert*.  509 U.S. 579

11   (1993).  Dr. Vilke's opinions are grounded in medical principles, review of relevant facts and

12   medical records, and scientific literature.  Disagreements raised by Plaintiffs largely concern the

13   interpretation, timing, and weight of the data, rather than the existence of a fundamentally

14   unreliable or unacceptable methodology.  Such disputes are better suited for cross-examination

15   and competing expert testimony.  *See Primiano v. Cook*, 598 F.3d 558, 564–65 (9th Cir. 2010), as

16   amended (Apr. 27, 2010).

17       First, Plaintiffs argue that Dr. Vilke's opinions concerning $CO_2$ measurements are flawed

18   because blood gas testing is the "best measure" of $CO_2$, the $CO_2$ measurements were taken after

19   Mr. Gutzalenko became unconscious, and Dr. Vilke allegedly misunderstood the significance of

20   those results.  These objections go to credibility and the persuasive force of Dr. Vilke's opinions,

21   not a core methodological defect.  Any alleged flaws in Dr. Vilke's reasoning are appropriate

22   subjects for cross-examination and rebuttal expert testimony.  They do not warrant exclusion of

23   the opinions altogether.

24       Second, Dr. Vilke may testify regarding his opinions on prone restraint and asphyxiation.

25   Such testimony is relevant to causation and reflects an area of expert disagreement.  Plaintiffs raise

26   substantial concerns regarding Dr. Vilke's reliance on certain studies purporting to show that

27   downward pressure applied to the human body does not impair ventilation or cause death.  Again,

28   Plaintiffs' concerns do not justify categorical exclusion at this stage.  The proposed expert

United States District Court
Northern District of California

4

1   testimony meets threshold requirements, and Plaintiffs remain free to challenge the factual

2   assumptions and any methodological shortcomings underlying the studies or Dr. Vilke's opinions.

3         Accordingly, Plaintiffs' MIL No. 2 is **DENIED WITHOUT PREJUDICE** to a motion to

4   exclude should evidence at trial warrant such, but no such motion shall be made absent good

5   cause.

6   C.    Plaintiffs' MIL No. 3: Limit Mr. Flosi's Testimony

7         Plaintiffs' MIL No. 3 seeks to limit testimony by City Defendants' police practices expert,

8   Edward Flosi, and supposed opinions based in "force science." Dkt. 146. The Court **DEFERS** a

9   ruling on this motion.

10        City Defendants disclosed Mr. Flosi as a police practices expert to testify regarding law

11   enforcement training, tactics, decisionmaking, and evaluation of use of force. *Id.*, Ex. 12 at 1.

12   The Court's role under Federal Rule of Evidence and *Daubert* is to ensure that expert testimony is

13   reliable, relevant, and not prejudicial. The Court is not to resolve disputes over credibility and

14   persuasiveness at this stage. Where an expert is qualified based on experience, and the

15   methodology used is not facially unreasonable, the appropriate remedy is often limiting the scope

16   and framing of the testimony, rather than wholesale exclusion. *See Stiner v. Brookdale Senior*

17   *Living, Inc.*, 665 F. Supp. 3d 1150, 1168 (N.D. Cal. 2023); *In re Korean Ramen Antitrust Litig.*,

18   281 F. Supp. 3d 892, 931 (N.D. Cal. 2017).

19        The record reflects that Mr. Flosi served as a full-time peace officer for nearly thirty years,

20   contributed to the development of police use-of-force policies, and instructed officers in defensive

21   tactics and decisionmaking. *See* Dkt. 146, Ex. 10 at 1–3. Mr. Flosi's experience is sufficient to

22   qualify him as an expert on police practices, training, tactical decisionmaking, and how officers

23   are trained to perceive and respond to developing threats.

24        Mr. Flosi may not, however, invoke scientific or medical terminology, including the

25   discipline of "force science," to import a scientific foundation for his opinions. While he may

26   reference his training, including force science, he may not state or imply his opinions are based on

27   science rather than experience and training. Mr. Flosi is also prohibited from offering medical

28   opinions or opining on physiological mechanisms, as these matters fall within the province of

United States District Court
Northern District of California

5

medical experts.  Mr. Flosi's opinions at trial must comport with his experience and expertise.

## V.    CITY DEFENDANTS' MOTIONS IN LIMINE

A.    City Defendants' MIL No. 1: Evidence or Argument of Prone Restraint Asphyxia

City Defendants' MIL No. 1 seeks to exclude evidence and argument that Mr. Gutzalenko died as a result of "restraint asphyxia," as well as any reference to the killing of George Floyd or other non-party incidents.  City Defendants MIL No. 1 (Dkt. 135).

City Defendants' MIL No. 1 rests primarily on the contention that the coroner testified at his deposition that metabolic acidosis, not asphyxia, was Mr. Gutzalenko's cause of death, and that references to "restraint asphyxia" are irrelevant and unduly prejudicial because they evoke emotional comparisons to highly publicized national incidents.

Under California law, liability may attach if Defendants' conduct was a substantial factor in causing harm, even if other factors also contributed.  The jury is not tasked with determining whether restraint asphyxia was the sole cause of death; the relevant question is whether Defendants' actions, including physical restraint and force on Mr. Gutzalenko's body, contributed substantially to Mr. Gutzalenko's death.

The record reflects genuine disagreement among the coroner and the parties' experts regarding both the mechanisms contributing to Mr. Gutzalenko's death and the significance of the prone restraint within that causal chain.  *See, e.g.*, City Defendants' MIL No. 1, Ex. 1 at 12:21– 14:6, 16:19–17:1, 77:12–23; Ex. 2 at 12–20; Ex. 3 at 11–21; Ex. 4 at 3–7.  Because causation depends on disputed medical opinions and competing interpretations of complex medical and physiological processes, exclusion at the motion in limine stage would improperly require the Court to resolve factual disputes and engage in expert credibility disputes typically reserved for the jury.  These issues are more appropriately tested through expert testimony and cross-examination.

Accordingly, City Defendants' MIL No. 1 is **DENIED WITHOUT PREJUDICE**. Defendants may raise an objection at trial if Plaintiffs inadequately establish a basis for expert opinions concerning prone restraint asphyxia.  Again, in light of this ruling, no such motion shall be made without good cause.

B.    City Defendants' MIL No. 2: Willingness-to-Pay Damages Theory

City Defendants move to exclude Plaintiffs' damages expert from testifying about the "human value of life" using a willingness-to-pay ("WTP") methodology to quantify noneconomic damages.  Dkt. 136.  The Court **GRANTS** City Defendants' MIL No. 2.

Mr. Johnson's WTP-based opinions are excluded under FRE 702 and *Daubert* as unreliable and unhelpful.  The proffered methodology is excessively generic, untethered to any personal qualities of the decedent, and results in a wide, imprecise range of damages that does not meaningfully aid the factfinder.  The jury can assess noneconomic damages without the WTP methodology.

There is a substantial body of case law rejecting WTP damages evidence presented by Mr. Johnson.  *See, e.g.*, *Sullivan v. City of Buena Park*, No. SACV-20-01732-CJC, 2022 WL 2965664, at *6–7 (C.D. Cal. Apr. 11, 2022); *Lopez v. Aitken*, No. 07-cv-2028 JLS, 2011 WL 672798, at *5 (S.D. Cal. Feb. 18, 2011); *Estate of DuBose v. City of San Diego*, No. 99cv2279-L, 2002 WL 34408963, at *2 (S.D. Cal. Oct. 1, 2002).  Consistent with the weight of authority, Mr. Johnson's WTP damages testimony is unreliable, unhelpful, and potentially confusing.  The jury can sufficiently evaluate noneconomic damages without expert assistance in this form.

Accordingly, City Defendants' MIL No. 2 is **GRANTED**.  This ruling does not preclude Mr. Johnson from testifying about damages based on case-specific facts and data.  This exclusion is limited only to WTP-based quantifications.

C.    City Defendants' MIL No. 3: Limit Scope of Police Practices Expert Testimony

City Defendants' MIL No. 3 seeks to limit Plaintiffs' police practices expert, Charles Yarbaugh, from offering any speculative opinions based on facts about which he has no personal knowledge or from providing legal conclusions.  Dkt. 137.

Plaintiffs state that the MIL is moot because Plaintiffs have not retained Mr. Yarbaugh to testify at trial and so the Court does not at this juncture rule on the motion.

However, City Defendants now seek to call Mr. Yarbaugh to testify at trial.  The parties have been directed to brief the issue of whether Defendants may call Mr. Yarbaugh.  The Court therefore **DEFERS** a ruling on City Defendants' MIL No. 3 as issues of admissibility may arise

United States District Court
Northern District of California

1    should Defendants be permitted to call Mr. Yarbaugh.

2    D.    City MIL No. 4: Evidence of Other Incidents, Claims, and Lawsuits

3        City Defendants' MIL No. 4 seeks to exclude evidence concerning other claims, lawsuits,

4    settlements, verdicts, judgments, complaints, administrative investigations, proceedings, and other

5    alleged incidents, including references to national incidents such as George Floyd, the Black Lives

6    Matter movement, and the "Code of Silence" among police officers.  Dkt. 138.

7        At the PTC, City Defendants acknowledged that Officer Tom Tran testified at his

8    deposition that he understood certain training programs and guidelines to have been developed in

9    response to the killing of George Floyd and that his conduct on this occasion may have been

10   informed by the George Floyd incident.  To the extent such testimony is offered to explain an

11   officer's understanding, training, or perceptions at the relevant time, it may be relevant and

12   admissible for that limited purpose.

13       To the extent any argument or testimony exceeds the limited bounds of this ruling, that

14   argument or testimony must be balanced against FRE 403.  The Court cautions the parties that

15   references to nationally publicized events, other verdicts, settlements, etc. that are offered to

16   inflame the jury, invite improper inferences, or distract from the facts of this case will be subject

17   to exclusion.   Any such extraneous evidence, to be admissible, must be directly relevant to the

18   parties herein.

19       Accordingly, the Court **DENIES** the motion in part, insofar as it seeks to bar admissible

20   evidence pertaining to the totality of the circumstances surrounding the incident in question.  The

21   Court's ruling is without prejudice, and parties may renew this objection at trial if appropriate.

22                    **VI.    MEDICAL DEFENDANTS' MOTIONS IN LIMINE**

23   A.    Medical Defendants' MIL No. 1: Limits on Expert Testimony

24       Medical Defendants' MIL No. 1 seeks to limit Plaintiffs' experts from providing testimony

25   that exceeds the scope of the information and opinions expressed in their expert reports and

26   depositions.  Dkt. 139.

27       Federal Rule of Civil Procedure 26(a)(2)(B) requires a retained expert to disclose "a

28   complete statement of all opinions the witness will express and the basis and reasons for them."

United States District Court
Northern District of California

8

1  The purpose of this rule is to eliminate surprise, permit meaningful cross-examination, and allow

2  the opposing party to prepare rebuttal evidence.  Consistent with that purpose, courts in this

3  District have repeatedly held that experts may not offer at trial new opinions or materially

4  expanded opinions that were not disclosed in their reports or depositions.  *See, e.g.*, *Brown v.*

5  *Gutierrez*, 2006 WL 3065574, at *1 (N.D. Cal. Oct. 27, 2006) ("Defendants' expert should not

6  testify to opinions not expressed in his report."); *Dongxiao Yue v. Chordiant Software, Inc.*, 2009

7  WL 4931679, at *9 (N.D. Cal. Dec. 21, 2009).

8       Plaintiffs' experts are not required to treat their reports or deposition testimony as a rigid

9  trial script.  They may explain, clarify, or elaborate on the reasoning underlying disclosed

10  opinions, so long as they do not introduce new conclusions, new theories, or materially new

11  factual bases for opinions.  *See Romero v. Garland*, 2024 WL 1099300, at *13 (S.D. Cal. Mar. 13,

12  2024).

13       Accordingly, the Court **DEFERS** a ruling on Medical Defendants' MIL No. 1.  Parties

14  may renew any such objections at trial as necessary and appropriate.

15  B.    Medical Defendants' MIL No. 2: Expert Opinions Regarding Consent

16       Medical Defendants next seek to preclude Plaintiffs' medical expert, Ryan Herrington,

17  from testifying as to any opinions regarding informed consent and lack of consent.  Dkt. 140.  The

18  parties do not appear to dispute that Mr. Gutzalenko did not provide verbal consent to the

19  administration of Versed.  At the PTC, Medical Defendants clarified that the crux of the MIL

20  concerns whether Dr. Herrington may testify as to the emergency consent exception to a medical

21  battery claim.

22       Federal Rule of Civil Procedure 26(a)(2)(B) requires the disclosure of all opinions an

23  expert will offer at trial, and the bases for those opinions.  The report states that, based on review

24  of the video evidence, "Mr. Gutzalenko was not asked to consent to the midazolam injection."  *Id.*,

25  Ex. A at 11.  The report further analyzes the involuntary administration of Versed as a departure

26  from the standard of care, explaining that Mr. Gutzalenko was physically and cognitively unable

27  to provide meaningful consent at the time of the injection and that proceeding under such

28  circumstances was medically inappropriate.  *Id.* at 22 ("Standard of care requires that patients give

9

United States District Court
Northern District of California

1    consent to medical intervention. . . . Reviewed video footage demonstrated that Mr. Gutzalenko

2    was never asked to consent to the midazolam injection that was administered to him.  Mr.

3    Gutzalenko, when the midazolam was given, was unconscious and at that specific point he would

4    not have been physically able to give consent.").  Thus, Dr. Herrington may testify on the question

5    of actual consent and/or the lack thereof in this case.

6        Dr. Herrington's report does not, however, provide any opinions or analysis about

7    emergency consent in this instance or generally in instances where an individual is unconscious,

8    and whether the medical intervention was reasonably believed to be necessary to preserve the life

9    or health of the individual.  Accordingly, he may not testify as to whether Mr. Gutzalenko's

10   condition warrants application of the emergency consent exception.  Plaintiffs are not prohibited

11   from eliciting testimony — including cross-examination of Defendants' experts — about

12   emergency consent and whether emergency consent applied in this incident.

13       For the foregoing reasons, Medical Defendants' MIL No. 2 is **GRANTED**.

14   C.    Medical Defendants' MIL No. 3: Exclude Hearsay Evidence

15       Medical Defendants' MIL No. 3 seeks to exclude statements from medical texts and

16   literature as inadmissible at trial.  Dkt. 141 at 1–2.

17       The learned treatise exception under FRE 803(18) permits Plaintiffs' experts to read

18   excerpts of medical texts into the record on direct examination, though such treatises may not be

19   entered as an exhibit.  Plaintiffs explain that any readings of medical literature would be used to

20   establish their reliability to help the jury understand the basis of his opinion.

21       Medical Defendants' MIL No. 3 rests on the assertion that medical literature is

22   categorically inadmissible on direct examination.  This argument is inconsistent with Rule

23   803(18).  So long as Plaintiffs' medical expert relied on the medical literature in forming their

24   opinions, and the publication is established as a reliable authority, the expert may read relevant

25   excerpts into the record to explain the basis for their opinions and testimony.

26       Accordingly, the Court **DENIES** Medical Defendant's MIL No. 3, conditioned upon

27   compliance with Rule 803(18).  A categorical exclusion of all references or reading of medical

28   literature on direct examination is not warranted.  Plaintiff's medical experts may reference or read

1    excerpts from medical treatises on direct examination upon a proper showing of reliability,

2    reliance, and with the understanding that the texts may only be read into the record but not

3    admitted as exhibits.

4    D.    Medical Defendants' MIL No. 4: Disclosure of Statutory Damages Cap

5         Medical Defendants next seek to prohibit parties from instructing the jury about statutory

6    limits on noneconomic damages imposed by the Medical Injury Compensation Reform Act

7    ("MICRA").  Dkt. 142.  Medical Defendants argue that the statutory limit on noneconomic

8    damages was imposed to help ensure the availability of health care and the enforceability of

9    judgments against healthcare providers by making medical malpractice insurance affordable.  *Id.*

10   at 3; *see also* Order Re Applicability of MICRA (Dkt. 131).  Instructing the jury about the

11   statutory cap on damages therefore undermines the legislative objective by potentially suggesting

12   to the jury that the statutory cap is an appropriate or "standard" award.  *Id.*

13        Plaintiffs contend that such in instruction is appropriate, citing *Toland v. Vana*, where the

14   California Court of Appeal permitted an instruction on MICRA damages limits so long as the jury

15   was also instructed that an award for noneconomic damages must be reasonable in light of the

16   evidence.  271 Cal.Rptr. 457, 458 (Cal. Ct. App. 1990).  But the California Supreme Court

17   subsequently directed the decision to not be published.  Accordingly, the *Toland* decision does not

18   carry any precedential weight and does not bind this Court.  *See* Cal. Rules of Court 8.115(a).

19        Instead, the overwhelming weight of California and federal authority indicate that statutory

20   caps on damages are not to be disclosed to the jury.  Instead, statutory caps are imposed after the

21   jury renders its verdict.  Such an approach preserves the jury's fact-finding role and minimizes the

22   risk of confusion.  *See Schiernbeck v. Haight*, 7 Cal.App.4th 869, 880–81 (Cal. Ct. App. 1992);

23   *see also Chan v. Curran*, 237 Cal.App.4th 601, 629 (Cal. Ct. App. 2015).

24        For the foregoing reasons, the Court **GRANTS** Medical Defendants' MIL No. 4.  The

25   statutory cap under MICRA, and specifically California Civil Code § 3333.2, limits noneconomic

26   damages but is applied after the jury's determination of total damages.  This separation ensures

27   that the jury is not undermined in its factfinding function and preserves the California

28   Legislature's intent in enacting MICRA.

United States District Court
Northern District of California

1    E.    <u>Medical Defendants' MIL No. 5: Exclude Evidence of Professional Liability Insurance</u>

2          Medical Defendants' MIL No. 5 seeks to prevent Plaintiffs from mentioning or otherwise

3    alluding to Defendants' professional liability insurance coverage during voir dire and at trial.  Dkt.

4    143.

5          Plaintiffs do not oppose Medical Defendants' MIL No. 5, and the MIL is consistent with

6    state and federal rules limiting disclosure of insurance coverage.  Fed. R. of Evidence 411; Cal.

7    Evidence Code § 1155.

8          Accordingly, the Court **GRANTS** Medical Defendants' unopposed MIL No. 5.

9                                **VII.    EXHIBITS**

10         The Court will enforce hearsay rules but notes the proponent of evidence may establish an

11   exception to hearsay.  Moreover, the Court notes experts may disclose evidence upon which they

12   rely, even if not admissible, if compliant with FRE 703.

13                               **VIII.    VOIR DIRE**

14         To ensure a fair and impartial jury, the Court will allow the parties to conduct case-related

15   voir dire for 20 minutes per side following Court-led voir dire.  Court will focus primarily, but not

16   exclusively, on hardships.

17         The parties will be given six peremptory challenges total, three per side.  Defendants as a

18   group will be limited to three peremptory challenges.  The Court will seat eight jurors in total.

19   The Court will hold a remote conference to review and vet jury questionnaire responses on

20   January 27, 2026, at 3:30 p.m.

21         The parties jointly request the following additional questions for inclusion in the Court's

22   jury questionnaire form:

23        1.  Have you had a significant interaction with law enforcement that
             may impact your ability to serve as a juror in a case involving law
24           enforcement officers? If so, please explain.

25        2.  Have you had any experiences with individuals that have
26           substance abuse problems? If so, please explain.

27        3.  Do you have strong opinions regarding the use of force by law
             enforcement officers? If so, please explain.

28

*United States District Court*
*Northern District of California*

4. Have you or anyone in your immediate family ever filed a lawsuit or submitted a formal claim against a public entity or its employee(s)? If so, please briefly identify the circumstances leading to the lawsuit/claim.

5. Do you have any specialized training or experience in law enforcement and/or medical care? If so, please provide a summary of that experience.

Dkt. 156.

The parties' jointly proposed questions will be included in the Court's jury questionnaire form. In addition to these jointly proposed questions, Plaintiffs submitted a separate proposed jury questionnaire form. *Id.* Plaintiffs' proposed questionnaire includes many standard questions already included in the Court's jury questionnaire form. Plaintiffs were directed at the PTC to submit eight non-overlapping, relevant questions for review. Defendants will have an opportunity to object to these proposed questions, and the Court will determine which additional questions, if any, to include in the jury questionnaire form.

## IX.    JURY INSTRUCTIONS & JURY VERDICT FORM

The Court will address jury instructions, including the preliminary statement to the jury, and the verdict form in separate orders.

**IT IS SO ORDERED**.

Dated: January 14, 2026

_____
EDWARD M. CHEN
United States District Judge