1
2
3
4 UNITED STATES DISTRICT COURT
5 NORTHERN DISTRICT OF CALIFORNIA
6
7 IVAN GUTZALENKO, et al.,

Case No.  22-cv-02130-EMC

8         Plaintiffs,

9     v.

**ORDER RE JURY INSTRUCTIONS**

10 CITY OF RICHMOND, et al.,
11         Defendants.
12
13        The Court's jury instructions are below.  The Court may make further modifications as

14 needed.
15
16
17        **IT IS SO ORDERED**.
18
19 Dated: January 29, 2026
20
21

_____
22 EDWARD M. CHEN
United States District Judge
23
24
25
26
27
28

United States District Court
Northern District of California

United States District Court
Northern District of California

# I.    PRELIMINARY INSTRUCTIONS
## (GIVEN AT THE BEGINNING OF TRIAL)

### JURY INSTRUCTION NO. 1
### DUTY OF JURY

Members of the jury: You are now the jury in this case.  It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions.  It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

[Court Notes: Ninth Circuit Model Instruction No. 1.3;  The parties stipulated to this instruction.]

1
2

**JURY INSTRUCTION NO. 2**

**UNCONSCIOUS BIAS**

3      We all have feelings, assumptions, perceptions, fears, and stereotypes about others.  Some

4  biases we are aware of, and others we might not be fully aware of, which is why they are called

5  implicit or unconscious biases.  No matter how unbiased we think we are, our brains are hardwired

6  to make unconscious decisions. We look at others and filter what they say through our own

7  personal experience and background.  Because we all do this, we often see life and evaluate

8  evidence in a way that tends to favor people who are like ourselves, or who have had life

9  experiences like our own.  We can also have biases about people like ourselves. One common

10  example is the automatic association of male with career and female with family. Bias can affect

11  our thoughts, how we remember what we see and hear, whom we believe or disbelieve, and how

12  we make important decisions.

13      As jurors, you are being asked to make an important decision in the case.  You must one,

14  take the time you need to reflect carefully and thoughtfully about the evidence.

15      Two, think about why you are making the decision you are making and examine it for bias.

16  Reconsider your first impressions of the people and the evidence in this case.  If the people

17  involved in this case were from different backgrounds, for example, richer or poorer, more or less

18  educated, older or younger, or of a different gender, gender identity, race, religion, disability

19  status, or sexual orientation, would you still view them, and the evidence, the same way?

20      Three, listen to one another.  You must carefully evaluate the evidence and resist, and help

21  each other resist, any urge to reach a verdict influenced by bias for or against any party or witness.

22  Each of you have different backgrounds and will be viewing this case in light of your own

23  insights, assumptions and biases.  Listening to different perspectives may help you to better

24  identify the possible effects these hidden biases may have on decision making.

25      And four, resist jumping to conclusions based on personal likes or dislikes, generalizations,

26  gut feelings, prejudices, sympathies, stereotypes, or unconscious biases.

27      The law demands that you make a fair decision based solely on the evidence, your

28  individual evaluations of that evidence, your reason and common sense, and these instructions.

[Court Notes: The Court has independently proposed this instruction.]

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. 3**

**CLAIMS OFFERED BY PLAINTIFF**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

This case concerns the death of Ivan Gutzalenko following an emergency encounter with Richmond police officers and paramedics in 2021.

Police officers responded to reports of a disturbance and encountered Mr. Gutzalenko exhibiting signs of medical distress, intoxication, and difficulty breathing. He had visible injuries and appeared disoriented.

The police officers attempted to intervene, as Mr. Gutzalenko appeared to be a danger to himself. After Mr. Gutzalenko began to resist, the police officers attempted to restrain and then handcuff him. During this attempt, police officers applied physical force, including body-weight pressure, in order to gain control and place him in handcuffs.

After Mr. Gutzalenko was handcuffed, a paramedic administered Versed, a sedative, into Mr. Gutzalenko. Shortly after the injection, Mr. Gutzalenko stopped breathing. He was later pronounced dead at the hospital.

The plaintiffs are Mr. Gutzalenko's children.

The defendants are Richmond Police officers (1) Tom Tran, (2) Mark Hall, and (3) Cedric Tagorda.

Plaintiffs claim that each of the defendants acted unlawfully and that their conduct, alongside the paramedic's conduct, caused Mr. Gutzalenko's death. Defendants deny Plaintiffs' claims.

The paramedic who injected Mr. Gutzalenko with Versed is no longer a party to this case.

[Court Notes: Ninth Circuit Model Instruction No. 1.5 (modified). The Court has adapted the parties' proposed preliminary statements to more accurately frame the factual disputes. This instruction is offered by the in lieu of Disputed Instruction Nos. 3–5, which were offered by Plaintiffs. The Court proceeds with the foregoing instruction for neutrality and to ensure clarity.

1

2          The instruction has been modified to account for Medical Defendants' withdrawal from trial.]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**INSTRUCTION NO. 4**

**MULTIPLE PARTIES**

There are three defendants in this trial: Officers Tom Tran, Mark Hall, and Cedric Tagorda.  You should decide the case against each defendant separately.

[Court Notes: Ninth Circuit Model Instruction No. 1.8 (modified).]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## JURY INSTRUCTION NO. 5

## BURDEN OF PROOF — PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

[Court Notes: Ninth Circuit Model Instruction No. 1.6; the parties have stipulated to this instruction.]

# JURY INSTRUCTION NO. 6

## WHAT IS EVIDENCE

The evidence you are to consider in deciding what the facts are consists of:

1. The sworn testimony of any witness;

2. The exhibits that are admitted into evidence;

3. Any facts to which the lawyers have agreed; and

4. Any facts that I may instruct you to accept as proved.


[Court Notes: Ninth Circuit Model Instruction No. 1.9; the parties stipulated to this instruction.]

**JURY INSTRUCTION NO. 7**

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may see or hear when the court was not in session is not evidence.

You are to decide the case solely on the evidence received at the trial.

[Court Notes: Ninth Circuit Model Instruction No. 1.10; the parties stipulated to this instruction.]

**INSTRUCTION NO. 8**

**EVIDENCE FOR A LIMITED PURPOSE**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[Court Notes: Ninth Circuit Model Instruction No. 1.11; the parties stipulated to this instruction.]

**INSTRUCTION NO. 9**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

[Court Notes: Ninth Circuit Model Instruction No. 1.12; the parties have stipulated to the first paragraph of the instruction.  The Court has independently added the illustrative example, which is drawn from the commentary to Ninth Circuit Model Instruction No. 1.12.]

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**INSTRUCTION NO. 10**

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

[Court Notes: Ninth Circuit Model Instruction No. 1.13; the parties stipulated to this instruction.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**INSTRUCTION NO. 11**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) The opportunity and ability of the witness to see or hear or know the things testified to;

(2) The witness's memory;

(3) The witness's manner while testifying;

(4) The witness's interest in the outcome of the case, if any;

(5) The witness's bias or prejudice, if any;

(6) Whether other evidence corroborated or contracted the witness's testimony;

(7) The reasonableness of the witness's testimony in light of all the evidence; and

(8) Any other factors that bear on believability.

You must avoid allowing your determination of credibility to be influenced by your own bias, conscious or unconscious, based on a witness's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, disability, or economic circumstances in your determination of credibility.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of

14

witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

[Court Notes: Ninth Circuit Model Instruction No. 1.14; the parties stipulated to this instruction; the Court has modified the instruction to account for unconscious bias.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### INSTRUCTION NO. 12
### CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, the platform "X" formerly known as Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it ,although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the

1    trial.  Also, do not do any research about this case, the law, or the people involved — including the

2    parties, the witnesses or the lawyers — until you have been excused as jurors.  If you happen to

3    read or hear anything touching on this case in the media, turn away and report it to me as soon as

4    possible.

5          These rules protect each party's right to have this case decided only on evidence that has

6    been presented here in court.  Witnesses here in court take an oath to tell the truth, and the

7    accuracy of their testimony is tested through the trial process.  If you do any research or

8    investigation outside the courtroom, or gain any information through improper communications,

9    then your verdict may be influenced by inaccurate, incomplete or misleading information that has

10   not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial

11   jury, and if you decide the case based on information not presented in court, you will have denied

12   the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very

13   important that you follow these rules.

14         A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a

15   mistrial could result, requiring the entire trial process to start over.  If any juror is exposed to any

16   outside information, please notify the court immediately, by sending a note through the Courtroom

17   Deputy, signed by any one or more of you.

18

19         [Court Notes: Ninth Circuit Model Instruction No. 1.15 (modified); the parties stipulated to this

20                                        instruction.]

21

22

23

24

25

26

27

28

# INSTRUCTION NO. 13

## PUBLICITY DURING TRIAL

If there is any news media account or commentary about the case or anything to do with it, you must ignore it.  You must not read, watch, or listen to any news media account or commentary about the case or anything to do with it.  The case must be decided by you solely and exclusively on the evidence that will be received in the case and on my instructions as to the law that applies. If any juror is exposed to any outside information, please notify me immediately.

[Court Notes: Ninth Circuit Model Instruction No. 1.16; the parties stipulated to this instruction.]

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**INSTRUCTION NO. 14**

**NO TRANSCRIPT AVAILABLE**

I urge you to pay close attention to the trial testimony as it is given.  During deliberations you will not have a transcript of the trial testimony.

[Court Notes: Ninth Circuit Model Instruction No. 1.17; the parties stipulated to this instruction.]

1

**INSTRUCTION NO. 15**

**TAKING NOTES**

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you.  When you leave, your notes should be left in the courtroom.  No one will read your notes.

Although the jury will have all the admitted exhibits during deliberation, you may want to note exhibit numbers in your notes if you think that will aid your memory.  You will be given an index of exhibits at the end of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.

[Court Notes: Ninth Circuit Model Instruction No. 1.18 (modified); the parties stipulated to this instruction, and the Court has added minor modifications.]

United States District Court
Northern District of California

**INSTRUCTION NO. 16**

**QUESTIONS TO WITNESSES BY JURORS DURING TRIAL**

Only the lawyers and I are allowed to ask questions of witnesses.  A juror is not permitted to ask questions of witnesses.  If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

If you have a question about the evidence being presented, you may pass a note to the Court.  The Court may then share that note with the attorneys.  Please understand that the rules of evidence may not permit a particular question, and I cannot guarantee that your question will be answered.

[Court Notes: Ninth Circuit Model Instruction No. 1.19; the parties stipulated to this instruction. The Court has modified the instruction.]

**INSTRUCTION NO. 17**

**BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be

[Court Notes: Ninth Circuit Model Instruction No. 1.20; the parties stipulated to this instruction.]

1

**INSTRUCTION NO. 18**

2

**OUTLINE OF TRIAL**

3      Trials proceed in the following way: First, each side may make an opening statement.  An

4  opening statement is not evidence.  It is simply an outline to help you understand what that party

5  expects the evidence will show.  A party is not required to make an opening statement.

6      The plaintiff will then present evidence, and counsel for the defendant may cross-examine.

7  Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

8      After the evidence has been presented, I will instruct you on the law that applies to the case

9  and the attorneys will make closing arguments.

10     After that, you will go to the jury room to deliberate on your verdict.

11

12  [Court Notes: Ninth Circuit Model Instruction No. 1.21; the parties stipulated to this instruction.]

United States District Court
Northern District of California

23

United States District Court
Northern District of California

## II. INSTRUCTIONS DURING TRIAL

### INSTRUCTION NO. 19

### CAUTIONARY INSTRUCTION

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

[ALTERNATIVE 1 (in open court): if you think that you might have done so, please let me know now by raising your hand. [Wait for a show of hands]. I see no raised hands; however, if you would prefer to talk to the court privately in response to this question, please notify a member of the court's staff at the next break. Thank you for your careful adherence to my instructions.]

[ALTERNATIVE 2 (during voir dire with each juror, individually): Have you learned about or shared any information about this case outside of this courtroom? . . . Thank you for your careful adherence to my instructions.]

1    [Court Notes: Ninth Circuit Model Instruction No. 2.0; the parties stipulated to this instruction.]

**INSTRUCTION NO. 20**

**(IF NEEDED) STIPULATIONS OF FACT**

The parties have agreed to certain facts that will be read to you.  You must therefore treat these facts as having been proved.


[Court Notes: Ninth Circuit Model Instruction No. 2.2; the parties stipulated to this instruction.]

**INSTRUCTION NO. 21**

**(IF NEEDED) DEPOSITIONS IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

[Court Notes: Ninth Circuit Model Instruction No. 2.4; the parties stipulated to this instruction. The parties have not indicated that they intend to use deposition testimony, as required in the Pretrial Conference Statement.  Accordingly, this instruction will only be read under extenuating circumstances warranting the use of deposition testimony in lieu of live testimony.]

**INSTRUCTION NO. 22**

**(IF NEEDED) TRANSCRIPT IN ENGLISH**

You are about to hear a recording that has been received in evidence.  Please listen to it very carefully.  Each of you has been given a transcript of the recording to help you identify speakers and as a guide to help you listen to the recording.  However, bear in mind that the recording is the evidence, not the transcript.  If you hear something different from what appears in the transcript, what you heard is controlling.  After the recording has been played, the transcript will be taken from you.


[Court Notes: Ninth Circuit Model Instruction No. 2.5; the parties stipulated to this instruction.]

United States District Court
Northern District of California

United States District Court
Northern District of California

# INSTRUCTION NO. 23

## EXPERT OPINION

You have heard testimony from expert witnesses, who testified to opinions and the reasons for their opinions.  This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness] these witnesses.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's [specialized knowledge, skill, experience, training, or education,], the reasons given for the opinion, and all the other evidence in the case.

[Court Notes: Ninth Circuit Model Instruction No. 2.13; the parties stipulated to this instruction.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**INSTRUCTION NO. 24**

**(IF NEEDED) CHARTS AND SUMMARIES RECEIVED IN EVIDENCE**

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the testimony or other admitted evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

[Court Notes: Ninth Circuit Model Instruction No. 2.15; the parties stipulated to this instruction.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**INSTRUCTION NO. 25**

**(IF NEEDED) CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

[Court Notes: Ninth Circuit Model Instruction No. 2.14.]

III.    **CLOSING INSTRUCTIONS (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT END OF CASE)**

**INSTRUCTION NO. 26**
**TRANSITION INSTRUCTION / DUTY OF JURY**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.  They will also be displayed on your screens as I read them.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

Plaintiffs N.G. and N.I.G. assert claims against Officers Tom Tran, Mark Hall, and Cedric Tagorda for negligence, assault, and battery.

The Court will now explain the substantive law applicable to the Claims brought in this action.

[Court Notes: Ninth Circuit Model Instructions No. 1.4; the parties stipulated to this instruction; the Court rearranged the order this instruction appears in for logical consistency.]

1

2

3

**INSTRUCTION NO. 27**

**NEGLIGENT USE OF FORCE BY LAW ENFORCEMENT OFFICER IN ARREST OR**

**OTHER SEIZURE — ESSENTIAL FACTUAL ELEMENTS**

4    A law enforcement officer may use reasonable force to restrain or overcome resistance by

5   a person when the officer has reasonable cause to believe that person poses a threat to himself or

6   others.  However, the officer may use only that degree of force necessary to restrain or overcome

7   resistance by the person.  Even if the officer is mistaken, a person being restrained has a duty not

8   to use force to resist the officer unless the officer is using unreasonable force.

9    Plaintiffs N.G. and N.I.G. claim that Defendants Tom Tran, Mark Hall, or Cedric Tagorda

10  were negligent in using unreasonable force to restrain or overcome resistance by Ivan Gutzalenko.

11  To establish this claim, N.G. and N.I.G. must prove all of the following:

12    1. That Defendants Tom Tran, Mark Hall, or Cedric Tagorda used force to restrain or

13  overcome resistance by Ivan Gutzalenko;

14    2. That the amount of force used by Defendants Tom Tran, Mark Hall, or Cedric Tagorda

15  was unreasonable;

16    3. That Ivan Gutzalenko was harmed; and

17    4. That Defendants Tom Tran, Mark Hall, or Cedric Tagorda's use of unreasonable force

18  was a substantial factor in causing Ivan Gutzalenko's harm.

19    In deciding whether Defendants Tom Tran, Mark Hall, or Cedric Tagorda used

20  unreasonable force, you must consider the totality of the circumstances to determine what amount

21  of force a reasonable officer in Defendants Tom Tran, Mark Hall, or Cedric Tagorda's position

22  would have used under the same or similar circumstances.

23    "Totality of the circumstances" means all facts known to the officer at the time, including

24  the conduct of Defendants Tom Tran, Mark Hall, or Cedric Tagorda, and Ivan Gutzalenko, leading

25  up to the use of force.  Among the factors to be considered are the following:

26    1. Whether Ivan Gutzalenko reasonably appeared to pose an immediate threat to the safety

27  of Defendants Tom Tran, Mark Hall, or Cedric Tagorda, himself, or others;

28    2. Whether Ivan Gutzalenko was actively resisting the officers' restraint;

United States District Court
Northern District of California

33

1        3. Defendants Tom Tran, Mark Hall, or Cedric Tagorda's tactical conduct and decisions

2  before using force on Ivan Gutzalenko; and

3        4. The availability of less intrusive alternatives to the force employed.

4

5      [Court Notes: City Defendants proposed this instruction.  The proposed instruction accurately

6  tracks CACI No. 440, which sets forth the essential elements for a negligence claim arising from a

7  law enforcement officer's use of nondeadly force.  The instruction correctly states the governing

8  legal principles, identifies the elements Plaintiffs must prove, and frames the inquiry in terms of

9  objective reasonableness under the totality of circumstances.

10

11     The Court has modified the instruction to accurately reflect the facts of this case.  References to

12  arrest or crimes, and the final paragraph, are omitted based on the Court's summary judgment

13  order and City Defendants' concession that "While Decedent was not accused of having

14  committed any serious felony offenses, the Officers' actions had nothing to do with the crimes of

15  which Decedent was accused."  *See* Summary Judgment Order (Dkt. 108) at 11 n.10; City

16  Defendant's Reply in Support of Summary Judgment (Dkt. 95) at 6.  The Court accordingly uses

17  the word "restrain."  References to self-harm as a basis for non-deadly force are supported by the

18  commentary to CACI No. 3020, cross-referenced by the CACI No. 440 commentary.  *See* CACI

19  No. 3020, Comment ("[W]e assume that the officers could have used some reasonable level of

20  force to try to prevent [decedent] from taking a suicidal act.") (quoting *Glenn v. Wash. Cnty.*, 673

21  F.3d 864, 872 (9th Cir. 2011)).  Finally, the Court includes an instruction that jurors may consider

22  less intrusive alternatives to the force employed, as part of the totality of circumstances inquiry.

23  *See Rice v. Morehouse*, 989 F.3d 1112, 1121–22 (9th Cir. 2021).]

United States District Court
Northern District of California

**INSTRUCTION NO. 28**

**STANDARD OF CARE**

A peace officer is negligent if they fail to use the skill and care that a reasonably careful law enforcement officer would have used in similar circumstances.  This level of skill, knowledge, and care is sometimes referred to as "the standard of care."

[Court Notes: CACI No. 600; parties have stipulated to this instruction.  The Court has modified this instruction to match the factual context of this case.  The Court has omitted the second paragraph in the parties' stipulated instruction, pursuant to the CACI No. 600 commentary, as the standard of care may be established without expert testimony.  *See Allgoewer v. City of Tracy*, 207 Cal.App.4th 755, 765 (Cal. Ct. App. 2012) ("[T]here is nothing about the particular use of force in this case that was so far removed from the comprehension of a lay jury as to necessitate expert opinion testimony on the applicable standard of conduct or on what amount of force was reasonable under the circumstances that confronted the officers . . . .").]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

United States District Court
Northern District of California

19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 29**

**BATTERY BY LAW ENFORCEMENT OFFICER**

Plaintiffs claim that Defendants Tom Tran, Mark Hall, or Cedric Tagorda harmed Ivan Gutzalenko by using unreasonable force to restrain him or overcome his resistance. To establish this claim, Plaintiffs must prove all of the following:

1. A Defendant intentionally touched Ivan Gutzalenko or caused Ivan Gutzalenko to be touched;

2. That Defendant used unreasonable force on Ivan Gutzalenko;

3. That Ivan Gutzalenko did not consent to the use of that force;

4. That Ivan Gutzalenko was harmed; and

5. That Defendant's use of unreasonable force was a substantial factor in causing Ivan Gutzalenko's harm.

A law enforcement officer may use reasonable force to restrain or overcome the resistance of a person when the officer has reasonable cause to believe that the person has committed a crime, is unable to care for or poses a danger to themselves. Even if the officer is mistaken, a person being restrained or detained has a duty not to use force to resist the officer unless the officer is using unreasonable force.

In deciding whether Officers Tom Tran, Mark Hall, or Cedric Tagorda used unreasonable force, you must consider the totality of the circumstances and determine what amount of force a reasonable law enforcement officer in Defendant's position would have used under the same or similar circumstances.

"Totality of the circumstances" means all facts known to the officer at the time, including the conduct of Defendants Tom Tran, Mark Hall, and Cedric Tagorda, and of Ivan Gutzalenko, leading up to the use of force. You should consider, among other factors, the following:

(a) Whether Ivan Gutzalenko reasonably appeared to pose an immediate threat to the safety of Defendants, himself, or others;

(b) Whether Ivan Gutzalenko was actively resisting restraint;

36

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(c) Defendants Tom Tran, Mark Hall, or Cedric Tagorda's tactical conduct and decisions before using force on Ivan Gutzalenko; and

(d) The availability of less intrusive alternatives to the force employed.

[Court Notes: CACI No. 1305A; the instruction has been modified to accurately reflect the facts of this case.  References to arrest or crimes, and the final paragraph, are omitted based on the Court's summary judgment order and City Defendants' concession: "While Decedent was not accused of having committed any serious felony offenses, the Officers' actions had nothing to do with the crimes of which Decedent was accused."  *See* Summary Judgment Order (Dkt. 108) at 11 n.10; City Defendant's Reply in Support of Summary Judgment (Dkt. 95) at 6.  The Court accordingly uses the word "restrain."  References to self-harm as a basis for non-deadly force are supported by the commentary to CACI No. 3020, cross-referenced by the CACI No. 440 commentary.  *See* CACI No. 3020, Comment ("[W]e assume that the officers could have used some reasonable level of force to try to prevent [decedent] from taking a suicidal act.") (quoting *Glenn v. Wash. Cnty.*, 673 F.3d 864, 872 (9th Cir. 2011)).  The Court includes an instruction that jurors may consider less intrusive alternatives to the force employed, as part of the totality of circumstances inquiry.  *See Rice v. Morehouse*, 989 F.3d 1112, 1121–22 (9th Cir. 2021).]]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## INSTRUCTION NO. 30

## ASSAULT BY LAW ENFORCEMENT OFFICER

If you find that Defendant Officers Tom Tran, Mark Hall, or Cedric Tagorda used unreasonable force, you may also determine whether Defendants committed assault.

To establish this claim of assault, Plaintiffs must prove all of the following:

1. That Defendants Tom Tran, Mark Hall, or Cedric Tagorda acted with an intent to cause unreasonably harmful or unreasonably offensive contact;

2. That Ivan Gutzalenko reasonably believed that he was about to be touched in an unreasonably harmful or an unreasonably offensive manner.

A touching is offensive if it offends a reasonable sense of personal dignity.

[Court Notes: CACI No. 1301.  The Court has modified the pattern instruction on assault to apply to the law enforcement context.  Under California law, a finding of assault requires a finding of unreasonable force.  *E.g.*, *Murchison v. Cnty. of Tehama*, 69 Cal.App.5th 867, 898 (Cal. Ct. App. Sept. 30, 2021) (requiring proof of unreasonable force for assault claim against officer to survive); *Finley v. City of Oakland*, 2006 WL 269950, at \*13–14 (N.D. Cal. Feb. 2, 2006) (While *Edson* addressed the tort of battery and did not specifically mention assault, the reasoning used by that court to find that a plaintiff must show unreasonable force when alleging battery against a police officer applies equally to an assault claim."); *Nelson v. City of Davis*, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010), *aff'd*, 685 F.3d 867 (9th Cir. 2012) ("Turning first to assault and battery, it is clear that an assault and battery claim against a police officer requires that unreasonable force be established."); *see also Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1274–75 (Cal. Ct. App. 1998) (holding in the context of a battery claim against law enforcement officers that the standard mirrors the section 1983 standard and that "Plaintiff must prove unreasonable force as an element of the tort [of battery].").

38

The parties dispute whether an assault claim survives after Mr. Gutzalenko's death and can be brought by his children.  The Court determines that Plaintiffs' assault claim is viable for trial, and the Court is thus inclined to instruct the jury as to assault.

California Code of Civil Procedure § 377.20(a) states: "Except as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period."  Section 377.30 states that "[a] cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, . . . and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest."  Cal. Code Civ. Proc. § 377.30.  Plaintiffs' Second Amended Complain is explicit that Plaintiffs N.G. and N.I.G. bring the claim "as co-successors in interest" for their father, Mr. Gutzalenko.  Dkt. 49 ¶¶ 3–4.  Plaintiffs filed the requisite Declarations of Successors in Interest, under penalty of perjury.  Dkt. 14–15; *see* Cal. Code Civ. Proc. § 377.32 (requiring a decedent's successor in interest to file an affidavit or declaration under penalty of perjury attesting to their status as a successor in interest).

Both California and federal district courts have repeatedly affirmed the rights of successors in interest to bring claims on behalf of decedents, including assault claims.  *See, e.g.*, *Saurman v. Peter's Landin Prop. Owner, LLC*, 103 Cal.App.5th 1148, 1164–65 (Cal. Ct. App. 2024) ("Under California law, a 'successor in interest has standing to bring *any causes of action* that the decedent himself could have asserted.") (emphasis added) (quoting *Estate of Sanchez v. Cnty. of Stanislaus*, 2023 WL 7612399, at *29 (E.D. Cal. Nov. 14, 2023); *Bowoto v. Chevron Corp.*, 2007 WL 4224593, at *4 (N.D. Cal. Nov. 28, 2007) (allowing survival claim for assault to proceed); *Nixon in Interest of Moore v. Buck*, 2019 WL 6620504, at *5–6 (C.D. Cal. Sept. 11, 2019) (refusing to dismiss assault claim raised by decedent's successor in interest); *see also Stoddward-Nunez v. City of Hayward*, 2018 WL 1116737, at *2, 6–7 (N.D. Cal. Mar. 1, 2018) (allowing amendment to add decedent's estate as plaintiff where complaint with an assault claim had sufficiently put defendants on notice that claims were being brought on the estate's behalf).

1

2          Defendants indicated at the pretrial conference that binding Ninth Circuit authority dictates

3   that assault causes of action terminate upon death.  In support of this position, Defendants cited

4   *Heikkila v. Barber*, 308 F.2d 558 (9th Cir. 1962).  There are several problems with this argument.

5   Most critically, the holding in *Heikkila* was specific to causes of action arising under federal law:

6   "A cause of action which is *given by a federal statute*, if no specific provision is made by act of

7   Congress for its survival, survives or not according to the principles of common law."  *Id.* at 561

8   (emphasis added).  At the time *Heikkila* was decided, the general Anglo-American common law

9   test for assessing whether a tort survived death was "whether the injury on which the cause of

10  action was based affected property rights [in which case it survived], or affected the person alone

11  [in which case it did not survive]."  *Id.*  Critically, *Heikkila* was not an assault or wrongful death

12  case.  It involved a claim, arising under federal statute, seeking to hold the defendant in contempt

13  for wrongfully deporting the plaintiff.  *Id.* at 559, 561.  Thus, the Ninth Circuit did not apply state

14  common law.  Instead, the source of confusion appears to arise from the court's dicta, in which the

15  court used an example of a "victim of assault" and stated that "what happened to [Heikkila]

16  *resembles* in all respects the sort of personal injury which the victim of assault, false

17  imprisonment, or wrongful arrest may suffer; — in all such cases, there is no survival."  *Id.* at

18  561–62.  Again, this analysis was informed by longstanding Anglo-American common law

19  principles.  *See id.* at 561; *Derdiarian v. Futterman Corp.*, 223 F. Supp. 265, 267–68 (S.D.N.Y.

20  1963).  California's survival statutes, Cal. Code Civ. Proc. § 377.10, *et seq.*, were enacted in 1992

21  and they explicitly preserve the right of successors of interest to bring a survival action.  No

22  exceptions appear in the statutes or case law indicating that assault is excepted from this general

23  statutory framework.

24

25          The issue of whether a state law claim survives the death of a party is a matter of

26  substantive law governed by state law under *Erie* and its progeny.  *See, e.g.*, *Casa Nido P'ship v.*

27  *Kwon*, 2024 WL 1421259, at *2 (N.D. Cal. Apr. 2, 2024) (Chen, J.) ("Generally, state substantive

28  law governs whether a state law claim survives the death of a party."); *Oatridge v. Future Motion,*

40

1    *Inc.*, 2025 WL 41935, at *1 (N.D. Cal. Jan. 6, 2025) (holding that state law governs whether a

2    state law claim survives the death of the party, and proceeding to apply section 377.20 to hold that

3    plaintiff's claims were not extinguished by death); *Palmer v. Cognizant Tech. Sols. Corp.*, 2021

4    WL 6496844, at *1 (C.D. Cal. Dec. 10, 2021) ("Whether a claim survives the death of a party

5    turns on substantive law.").   Thus, the Court applies California law governing the survivability of

6    Plaintiffs' state common law claims.  *Mason & Dixon Intermodal, Inc. v. Lapmaster Intern. LLC*,

7    632 F.3d 1056, 1060 (9th Cir. 2011) ("When a district court . . . hears state law claims based on

8    supplemental jurisdiction, the court applies state substantive law to the state law claims."); *Bird v.*

9    *Lewis & Clark Coll.*, 303 F.3d 1015, 1023 (9th Cir. 2002) (applying *Erie* principles in

10   supplemental jurisdiction matter); *Charles O. Bradley Trust v. Zenith Cap. LLC*, 2005 WL

11   1030218, at *3 n.2 (N.D. Cal. May 3, 2005) (same).  Accordingly, *Heikkila* is not dispositive, and

12   the Court finds itself in accord with the cases above holding that assault claims survive.]

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**JURY INSTRUCTION NO. 31**

2

**INTERNAL POLICIES**

3        During trial, you heard testimony regarding certain policies of the City of Richmond Police

4    Department which were in effect at the time of the incident.

5        A police department's internal policies and regulations do not create the legal standard of

6    care in a civil case.

7        You may, however, consider such policies for the limited purpose of evaluating the

8    information available to the officers, their training and awareness of risks, and whether their

9    conduct was reasonable under the circumstances.

10

11    [Court Notes: The Court adopts a modified version of the proposed instruction.  *See, e.g.*, *Lehto v.*

12        *City of Oxnard*, 171 Cal.App.3d 285, 295 (Cal. Ct. App. 1985) ("Departmental or municipal

13        policy directives may prescribe what conduct is expected of police personnel under particular

14        circumstances but a deviation from those directives can only serve as a basis for administrative

15    action.  They cannot create a duty to individual citizens."); *Maddox v. City of L.A.*, 792 F.3d 1408,

16        1417 (9th Cir. 1986) (excluding evidence of disciplinary measures taken against officer after use

17    of a choke hold).  The instruction has been modified by the Court to clarify to the jury that, while

18        internal policies might not establish the standard of care, they may be considered by jurors as

19    evidence bearing on the reasonableness of officers' conduct and foreseeability or notice of risks.

20    *See, e.g.*, *Smith v. Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (holding in excessive use of force

21    context that jury could rely on evidence of police training to determine whether alternative holds

22    were reasonable); *Scott v. Henrich*, 394 F.3d 689, 703 (9th Cir. 2005) (holding in excessive force

23        context that guidelines and policies "are germane to the reasonableness inquiry in an excessive

24        force claim"); *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1164 (9th Cir. 2020); *Jones v. City of*

25    *L.A.*, 2006 WL 8434686 (C.D. Cal. Oct. 24, 2006) (relying on LAPD training standards in ruling

26        on summary judgment motion concerning alleged negligence); *Scott v. Henrich*, 39 F.3d 912,

27        915–16 (9th Cir. 1994); *Hernandez v. Hodges*, 2023 WL 5336845, at *11 (N.D. Cal. Aug. 17,

28                                          2023).]

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**INSTRUCTION NO. 32**

**NO TEAM LIABILITY**

A public employee, including a police officer, is not liable for harms caused by someone else's actions.  They are liable only if their own actions, or actions directed by them, were a cause of the harm.

[Court Notes: The Court adopts City Defendants' proposed instruction based on Government Code § 820.8, with modifications to avoid confusing the jury.  *See, e.g. Khan v. City of L.A.*, 753 F. Supp. 3d 997, 1023 (C.D. Cal. Oct. 7, 2024) ("A municipal officer is generally not liable for an injury caused by the act or omission of another person, unless that injury is proximately caused by the officer's own wrongful act or omission.  However, a supervising municipal officer may be liable for the acts or omissions of his subordinates if the supervisor directs or personally cooperates in them."); *Ortega v. City of Oakland*, 2008 WL 4532550, at *15 (N.D. Cal. Oct. 8, 2008) (same).]

1

**INSTRUCTION NO. 33**

2

**SCOPE OF EMPLOYMENT — PEACE OFFICER'S MISUSE OF AUTHORITY**

3      Plaintiffs claim that Defendants Tom Tran, Mark Hall, or Cedric Tagorda were acting with

4  the scope of their employment when Ivan Gutzalenko was harmed.

5      The conduct of a peace officer is within the scope of their employment as a peace officer if

6  all of the following are true:

7      (a)  The conduct occurs while the peace officer is on duty as a peace officer;

8      (b)  The conduct occurs while the peace officer is exercising their authority as a peace

9  officer; and

10      (c)  The conduct results from the use of their authority as a peace officer.

11

12      [Court Notes: CACI No. 3721 (modified).  The Court has replaced "Plaintiffs must prove that"

13  from the CACI form instruction to "Plaintiffs claim that," in order to reduce jury confusion.  The

14  scope of employment instruction is relevant only to vicarious liability — it is not a necessary

15  element of any of Plaintiffs' claims.  *See* Joint Clarifying Stipulation (Dkt. 164) at 5–6

16  (Defendants stating that they are "involved to the extent Plaintiffs were to prevail and those

17  entities, as the employers of the alleged tortfeasors, are required to satisfy any potential

18  judgment").]

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**INSTRUCTION NO. 34**

**INTRODUCTION TO TORT DAMAGES**

If you decide that Plaintiffs have proved their claim against Defendants, you also must decide how much money will reasonably compensate plaintiffs for the harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by Defendants' wrongful conduct, even if the particular harm could not have been anticipated.

Plaintiffs do not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

[Court Notes: CACI No. 3900; the parties stipulated to this instruction.]

1

2

**INSTRUCTION NO. 35**

**WRONGFUL DEATH (DEATH OF AN ADULT)**

3     If you decide that Plaintiffs N.G., and N.I.G, have proved their claim against any of the

4  Defendants for the death of Ivan Gutzalenko, you also must decide how much money will

5  reasonably compensate N.G., and N.I.G, for the death of Ivan Gutzalenko. This compensation is

6  called "damages."

7     Plaintiffs N.G., and N.I.G have the burden of proving damages by a preponderance of the

8  evidence.  Plaintiffs do not have to prove the exact amount of these damages. However, you must

9  not speculate or guess in awarding damages.

10     The damages claimed by N.G., and N.I.G, fall into two categories called economic

11  damages and noneconomic damages. You will be asked to state the two categories of damages

12  separately on the verdict form.

13     N.G., and N.I.G claim the following **economic damages:**

14     1. The financial support, if any, that Ivan Gutzalenko would have contributed to the family

15  during either the life expectancy that Ivan Gutzalenko had before his death or the life expectancy

16  of Plaintiffs N.G. and N.I.G., whichever is shorter;

17     2. The loss of gifts or benefits that N.G., and N.I.G would have expected to receive from

18  Ivan Gutzalenko;

19     3. Funeral and burial expenses; and

20     4. The reasonable value of household services that Ivan Gutzalenko would have provided.

21  Your award of any future economic damages must be reduced to present cash value.

22     N.G., and N.I.G also claim the following **noneconomic damages**:

23     1. The loss of Ivan Gutzalenko's love, companionship, comfort, care, assistance,

24  protection, affection, society, moral support; and

25     2. The loss of Ivan Gutzalenko's training and guidance.

26     No fixed standard exists for deciding the amount of noneconomic damages. You must use

27  your judgment to decide a reasonable amount based on the evidence and your common sense. For

28  these noneconomic damages, determine the amount in current dollars paid at the time of judgment

that will compensate N.G., and N.I.G for those damages. This amount of noneconomic damages should not be further reduced to present cash value because that reduction should only be performed with respect to future economic damages.

In determining N.G., and N.I.G's loss, do not consider:

1. N.G., and N.I.G's grief, sorrow, or mental anguish;

2. Ivan Gutzalenko's pain and suffering; or

3. The poverty or wealth of N.G., and N.I.G

In computing these damages, consider the losses suffered by all plaintiffs and return a verdict of a single amount for all plaintiffs. I will divide the amount among the plaintiffs.

[Court Notes: CACI No. 3921; the parties stipulate to the instruction.  The Court modified this instruction to reduce redundancy with the general damages instruction proposed by the parties, and to instruct jurors that Plaintiffs bear the burden of proving damages by a preponderance of the evidence.]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INSTRUCTION NO. 36

## DAMAGES BEFORE DEATH

If you decide that Plaintiffs N.G. and N.I.G. have proved their claim of negligence, assault or battery against Officers Tom Tran, Mark Hall, or Cedric Tagorda, you must also decide the amount of damages that Ivan Gutzalenko sustained before death and that he would have been entitled to recover because of the Defendant's conduct.

Plaintiff N.G. and N.I.G. may recover the following damages:

The pain or suffering Ivan Gutzalenko suffered before his death.

You may not award damages for any loss for Ivan Gutzalenko's shortened life span attributable to his death.

[Court Notes: CACI No. 3919 (modified). The Court removed all references to punitive damages from the form instruction, as punitive damages are not recoverable in this action. Damages for pain or suffering are recoverable in a survival action in actions like this one commencing on or after January 1, 2022. *See* Cal. Code Civ. Proc. § 377.34(b). The Court has modified the instruction to accurately reflect the facts of the case.]

1

**INSTRUCTION NO. 37**

2

**DAMAGES FROM MULTIPLE DEFENDANTS**

3      In this case, Plaintiffs N.G. and N.I.G. seek damages from Defendant Officers Tom Tran,

4  Mark Hall, and Cedric Tagorda for alleged negligence, assault, and battery.  You must determine

5  the liability of each defendant to Plaintiffs separately.

6      If you determine that one or more defendants are liable to Plaintiffs for damages, you will

7  be asked to find Plaintiffs' damages in total.

8      In deciding on the total amount of damages, consider only Plaintiffs' claimed losses. Do

9  not attempt to divide the monetary damages between or among the defendants. The allocation of

10  responsibility for payment of damages among multiple Defendants found liable is to be done by

11  the court after you reach your verdict.

12

13      [Court Notes: CACI No. 3933 (modified).  This instruction and modifications are intended

14  to minimize juror confusion and the risk of double recovery for overlapping torts.]

**INSTRUCTION NO. 38**

**CAUSATION: MULTIPLE CAUSES**

A person's wrongful conduct may combine with another factor to cause harm.  If you find that Defendant Officers Tom Tran, Mark Hall, or Cedric Tagorda's alleged negligence, assault, and/or battery was a substantial factor in causing Plaintiffs' harm, then each defendant whose conduct was a substantial factor in causing the harm is responsible for the harm.

Defendants cannot avoid responsibility just because some other person, condition, or event was also a substantial factor in causing Plaintiffs' harm.

[Court Notes: CACI No. 431 (modified); the Court proposes this instruction for legal accuracy and has modified it to accurately reflect the facts of this case and for juror clarity.  The Court has modified this instruction to be inclusive of all relevant claims, not just negligence.]

**INSTRUCTION NO. 39**

**CAUSATION: SUBSTANTIAL FACTOR**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of the harm.

[Court Notes: CACI No. 430; the Court proposes this instruction for legal accuracy and juror clarity.]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 40A**

**APPORTIONMENT OF RESPONSIBILITY — IVAN GUTZALENKO**

This instruction applies only if you find any of Defendant Officers Tom Tran, Mark, Hall or Cedric Tagorda were negligent and that negligence was a substantial factor in causing Plaintiffs' harm.  If you so find, you must consider Defendants' claim that Ivan Gutzalenko's own negligence contributed to Plaintiffs' harm. To succeed on this claim, Defendants must prove by a preponderance of the evidence both of the following:

1. That Ivan Gutzalenko was negligent; and

2. That Ivan Gutzalenko's negligence was a substantial factor in causing Plaintiffs' harm.

If you find that the negligence of more than one person, including any one of Defendants Tom Tran, Mark Hall, or Cedric Tagorda, and that of Ivan Gutzalenko, was a substantial factor in causing Plaintiffs' harm, you must then decide how much responsibility each has by assigning percentage of responsibility to each person listed on the verdict form.  The percentages must total 100 percent.

You will make a separate finding of Plaintiffs' total damages, if any.  In determining an amount of damages, you should not consider any person's assigned percentage of responsibility.

[Court Notes: CACI No. 406 (modified).  The Court will give Instruction No. 40B instead of Instruction No. 40A if Defendants prove Damon Richardson's fault at trial by substantial evidence.  *Wilson v. Ritto*, 105 Cal.App.4th 361, 367 (Cal. Ct. App. 2003).]

52

1
2

**JURY INSTRUCTION NO. 40B**

**APPORTIONMENT OF RESPONSIBILITY — OTHER ACTORS**

3    This instruction applies only if you find any of Defendant Officers Tom Tran, Mark Hall

4  or Cedric Tagorda were negligent and that negligence was a substantial factor in causing

5  Plaintiffs' harm.  If you so find, you must consider Defendants' claim that Ivan Gutzalenko's own

6  negligence and/or the fault of Paramedic Damon Richardson also contributed to Plaintiffs' harm.

7    As to Ivan Gutzalenko, Defendants must prove by a preponderance of the evidence both of

8  the following:

9    1.  That Ivan Gutzalenko was negligence; and

10    2.  That Ivan Gutzalenko's negligence was a substantial factor in causing Plaintiffs' harm.

11    As to Paramedic Damon Richardson, Defendants must prove by a preponderance of the

12  evidence both of the following:

13    1.  That Paramedic Damon Richardson was at fault; and

14    2.  That the fault of Paramedic Damon Richardson was a substantial factor in causing

15  Plaintiffs' harm.  Fault is defined in Instruction No. 41 which follows.

16    If you find that the negligence and/or fault of any one of Defendant Officers Tom Tran,

17  Mark Hall, or Cedric Tagorda, and Ivan Gutzalenko and/or Paramedic Damon Richardson, were

18  substantial factors in causing Plaintiffs' harm, you must then decide how much responsibility each

19  has by assigning percentages of responsibility to each person listed on the verdict form.  The

20  percentages must total 100 percent.

21    You will make a separate finding of Plaintiffs' total damages, if any.  In determining an

22  amount of damages, you should not consider any person's assigned percentage of responsibility.

23

24    [Court Notes: CACI No. 406 (modified).  The Court will give this instruction if Defendants prove

25    Damon Richardson's fault at trial by substantial evidence.  *See, e.g.*, *Wilson v. Ritto*, 105

26    Cal.App.4th 361, 367 (Cal. Ct. App. 2003) ("A defendant may attempt to reduce his or her share

27    of liability for noneconomic damages by seeking to add nonparty joint tortfeasors.  But unless

28    there is substantial evidence that an individual is at fault, there can be no apportionment of

United States District Court
Northern District of California

53

1   damages to that individual."); *Scott v. C.R. Bard, Inc.*, 231 Cal.App.4th 763, 785 (Cal. Ct. App.

2   2014) (same); *Allphin v. Peter K. Fitness LLC*, 78 F. Supp. 3d 987, 992 (N.D. Cal. 2015) ("Where,

3   as here, Defendants seek to reduce their liability by apportioning fault to a nonparty joint

4   tortfeasor who is a treating physician, Defendants must show 'substantial evidence' that the

5   physician is also at fault.").]

1

2

3

United States District Court
Northern District of California

JURY INSTRUCTION NO. 41

**(IF SUBSTANTIAL EVIDENCE FOUND) DETERMINING FAULT BY PARAMEDIC**

**DAMON RICHARDSON**

For purposes of the previous instruction on apportionment of responsibility, you must determine that Paramedic Damon Richardson is at fault if Defendants prove by a preponderance of the evidence all of the following:

1.  That Ivan Gutzalenko was harmed;

2.  That Paramedic Damon Richardson's conduct was a substantial factor in causing Ivan Gutzalenko's harm;

3.  That Paramedic Damon Richardson could not have reasonably believed that the administration of Versed had to be done immediately in order to preserve the life or health of Ivan Gutzalenko; and

4.  That Ivan Gutzalenko was conscious or capable of giving consent, and Paramedic Damon Richardson did not reasonably believe that administration of Versed should be undertaken immediately and that there was insufficient time to obtain informed consent by Gutzalenko or a person authorized to give such consent for the patient.

[Court Notes: this instruction is a modified version of CACI Nos. 530A (medical battery) and 554 (emergency consent defense).  The Court will give this instruction alongside Instruction No. 41 if Defendants prove Damon Richardson's fault at trial by substantial evidence.  *See Wilson v. Ritto*, 105 Cal.App.4th 361, 367 (Cal. Ct. App. 2003).  The Court has removed the element requiring a finding that Richardson performed a procedure without Gutzalenko's consent, because the parties do not dispute that Gutzalenko did not give consent.  The Court has also removed references to qualified immunity under Health & Safety Code § 1799.106, as that provision only applies to immunize paramedics from civil damages, not a finding of contributory fault.  *See* Cal. Health & Safety Code § 1799.106(a).]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### INSTRUCTION NO. 42

### DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views. It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Perform these duties fairly and impartially.  Do not allow personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases, to influence you.  You should also not be influenced by any person's race, color, religion, national ancestry, or gender, sexual orientation, profession, occupation, celebrity, economic circumstances, or position in life or in the community.

Do not be afraid to examine any assumptions you or other jurors have made which are not based on the evidence presented at trial.  Please do not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be — that is entirely up to you.

It is your duty to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so.  During your deliberations, you should not hesitate to reexamine your own views and change your opinion if you become persuaded that it is wrong.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

[Court Notes: Ninth Circuit Model Instruction No. 3.1; the Court has modified the parties'
stipulated instruction to include language about unconscious bias.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 43**

**CONSIDERATION OF EVIDENCE — CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on

these instructions, I remind you that you must not be exposed to any other information

about the case or to the issues it involves. Except for discussing the case with your fellow jurors

during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with

you in any way about the merits of the case or anything to do with it. This includes discussing the

case in person, in writing, by phone[, tablet, computer, or any other means], via email, via text

messaging, or any internet chat room, blog, website or application, including but not limited to

Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.

This applies to communicating with your family members, your employer, the media or press, and

the people involved in the trial. If you are asked or approached in any way about your jury service

or anything about this case, you must respond that you have been ordered not to discuss the matter

and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case

or anything to do with it; do not do any research, such as consulting dictionaries, searching the

Internet, or using other reference materials; and do not make any investigation or in any other way

try to learn about the case on your own. Do not visit or view any place discussed in this case, and

do not use Internet programs or other devices to search for or view any place discussed during the

trial. Also, do not do any research about this case, the law, or the people involved—including the

parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to

read or hear anything touching on this case in the media, turn away and report it to me as soon as

possible.

These rules protect each party's right to have this case decided only on evidence that has

been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy

of their testimony is tested through the trial process. If you do any research or investigation

outside the courtroom, or gain any information through improper communications, then your

verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings [, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

[Court Notes: Ninth Circuit Model Instruction No. 3.2; the parties stipulated to this instruction.]

**INSTRUCTION NO. 44**

**EVIDENCE IN ELECTRONIC FORMAT**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the Courtroom Deputy. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the Courtroom Deputy, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with Courtroom Deputy present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

1

2       [Court Notes: Ninth Circuit Model Instruction No. 2.16 (modified); the parties stipulated to this

3       instruction; the Court rearranged the order this instruction appears in for logical consistency.]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 45**

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

[Court Notes: Ninth Circuit Model Instruction No. 3.3; the parties stipulated to this instruction.]

1

2

**INSTRUCTION NO. 46**

**RETURN OF VERDICT**

3

4

5

6

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

7

8

[Court Notes: Ninth Circuit Model Instruction No. 3.5; the parties stipulated to this instruction.]

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**INSTRUCTION NO. 47**

**POST-DISCHARGE INSTRUCTION**

Now that the case has been concluded, some of you may have questions about the confidentiality of the proceedings. Now that the case is over, you are free to discuss it with any person you choose. By the same token, however, I would advise you that you are under no obligation whatsoever to discuss this case with any person.

[If you do decide to discuss the case with anyone, I would suggest you treat it with a degree of solemnity in that whatever you do decide to say, you would be willing to say in the presence of the other jurors or under oath here in open court in the presence of all the parties.]

[Finally, always bear in mind that if you do decide to discuss this case, the other jurors fully and freely stated their opinions with the understanding they were being expressed in confidence.

Please respect the privacy of the views of the other jurors.]

[Finally, if you would prefer not to discuss the case with anyone, but are feeling undue pressure to do so, please feel free to contact the courtroom deputy, who will notify me, and I will assist.]

[Court Notes: Ninth Circuit Model Instruction No. 3.9; the parties stipulated to this instruction; the Court rearranged the order this instruction appears in for logical consistency.]